Michael S. Lazaroff (Admitted *Pro Hac Vice*, New York State Bar No. 2801579)
RIMÔN P.C.
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com

Daniel F. Lula (California State Bar No. 227295)
RIMÔN P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Tel: (617) 963-0419
Fax: (213) 375-3811
daniel.lula@rimonlaw.com

Robert A. Cocchia (California State Bar No. 172315)
RIMON P.C.
3579 4th Avenue
San Diego, CA 92103
Tel: (858) 348-4383
Fax: (213) 375-3811
robert.cocchia@rimonlaw.com

*Attorneys for Plaintiffs Nina Vikhrieva and Sergey Leshkov*

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA VIKHRIEVA and SERGEY LESHKOV,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>STEMEDICA CELL TECHNOLOGIES, INC.; ZIUZHITANG CO., LTD.; ZHUHAI HENGQIN JIUZHITANG YONGHE QIHANG FUND; JIUZHITANG MAKER (BEIJING) CELL TECHNOLOGY CO., LTD.; MAYNARD A. HOWE; ROGER J. HOWE; DAVID HOWE; NIKOLAI I. TANKOVICH; DIRK P. O'HARA; SIMON GUO; CRAIG W. CARLSON; MICHAEL K. STEINHAUSER; SANOSTEM GLOBAL LLC; DUNIYA SANOSTEM INC.; AND SHIVINDER S. DEOL,<br><br>　　　　　　　Defendants. | Case No.: 3:25-cv-00459-BAS-SBC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS BY EMAIL ON DEFENDANTS ZIUZHITANG CO., LTD., ZHUHAI HENGQIN JIUZHITANG YONGHE QIHANG FUND, JIUZHITANG MAKER (BEIJING) CELL TECHNOLOGY CO., LTD., AND SIMON GUO**<br><br>**[Fed. Rules Civ. P. 4(f)(3)]**<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**<br><br>**Date:   July 25, 2025**<br>**Judge: Hon. Cynthia A. Bashant** |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................................................  1

II.  FACTUAL BACKGROUND .......................................................  4

    A.   The Plaintiffs and Summary of Defendants' Wrongdoing ..............  4

    B.   The Defendants ..............................................................  4

    C.   Plaintiffs' Prior Communications With JZT And Its Counsel ........  6

    D.   The Commencement Of This Action And Plaintiffs' Allegations ..  7

    E.   Plaintiffs' Attempted Service On JZT ............................................  9

III. LEGAL ARGUMENT ................................................................  10

    A.   FRCP Rule 4(f) ..........................................................  10

    B.   Email Service On Defendants In China Is Permissible Under Rule 4(f) .......................................................................................  12

    C.   Service By Email To The Individuals And Entities Here Comports With Due Process ............................................................................  13

IV.  CONCLUSION ..............................................................................  17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assef v. Does 1-10*,
  No. 15-CV-01960-MEJ, 2016 WL 1191683 (N.D. Cal. Mar. 28, 2016) ............................................................................. 12

*Brown v. China Integrated Energy, Inc.*,
  285 F.R.D. 560 (C.D. Cal. 2012) ....................................... 14

*Eagles Nest Outfitters, Inc. v. Taomore, Inc., et. al.*,
  No. CV 23-466-GW-EX, 2023 WL 11814256 (C.D. Cal. Feb. 24, 2023) .................................................................................. 15

*F. Fin. Grp., LLC v. President, Fellows of Harvard Coll.*,
  199 F.R.D. 24 (D. Me. 2001) .............................................. 13

*Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd.*, No. 2:24-cv-07118-CAS-PDX, 2024 WL 5413653 (N.D. Cal. 2024) ................................................................................. 12

*Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co.*,
  No. 18-CV-00297-BAS-BGS, 2019 WL 246562 (S.D. Cal. Jan. 17, 2019) (Bashant, J.) ................................................... 11, 12, 13, 15

*GSV Futures LLC v. Casmain L.P.*,
  No. 22-cv-05449-LB, 2022 WL 16856361 (N.D. Cal. Nov. 10, 2022) .................................................................................. 16

*Hawkins v. Bank of Am., N.A.*,
  No. 17-CV-01954-BAS-AGS, 2018 WL 1616941 (S.D. Cal. Apr. 4, 2018) .......................................................................... 14, 15, 16

*Kohler Co. v. Sweethome*,
  No. 2:23-cv-06889-MCS-SSC, 2024 WL 3055473 (C.D. Cal. Jan. 16 2024) ........................................................................... 12, 16

*Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*,
  No. 16-cv-00669-YGR, 2017 WL 1378532 (N.D. Cal. Apr. 11, 2017) .................................................................................. 15

*Q Industries, Inc. v. O'Reilly Auto., Inc.*,
No. 2:22-cv-03791-HDV-PVCx, 2023 WL 6852025 (C.D. Cal.
Sept. 8, 2023) .................................................................................................. 15

*Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech.
Co., LTD.*, No. 22-cv-03054-JSC, 2022 WL 4596622 (N.D. Cal.
July 11, 2022) ................................................................................................. 16

*Richmond Techs., Inc. v. Aumtech Bus. Sols.*,
No. 11–CV–02460–LHK, 2011 WL 2607158 (N.D. Cal. July 1,
2011) ................................................................................................................ 15

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ............................................................. 11, 13, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
Nos. M 07–1827 SI, C 09–1115 SI, MDL. No. 1827, 2009 WL
4874872 (N.D. Cal. Oct. 6, 2009) ................................................................... 13

*Todd Reed, Inc. v. Sergey Grishin Enter., LLC*,
No. 2:21-cv-00766-JWH-AFMx, 2021 WL 5277442 (C.D. Cal.
Apr. 6, 2021) ................................................................................................... 15

*Viral DRM LLC v. Margarita*,
No. 3:24-cv-00747-JSC, 2024 WL 5318835 (N.D. Cal. May 31,
2024) ................................................................................................................ 12

*Wang v. Ehang Holdings Ltd.*,
No. 20-CV-00569-BLF, 2020 WL 11891323 (N.D. Cal. June 29,
2020) ............................................................................................................. 9, 11

*Williams–Sonoma Inc. v. Friendfinder Inc.*,
No. C-06–06572 JSW, 2007 WL 1140639 (N.D. Cal. Apr. 17,
2007) ................................................................................................................ 12

**Other Authorities**

Fed. R. Civ. P. 4(f) ............................................................................... 10, 12

Fed. R. Civ. P. 4(f)(1) ................................................................................ 11

Fed. R. Civ. P. 4(f)(2) ................................................................................ 11

Fed. R. Civ. P. 4(f)(3) .......................................................................... *passim*

iii

Plaintiffs Nina Vikhrieva and Sergey Leshkov (together, "Plaintiffs") respectfully submit this memorandum of law in support of their Motion For an Order Authorizing Alternative Service via Email of the First Amended Complaint ("FAC") and Summons on Defendants: (1) Ziuzhitang Co., Ltd. ("JZT Parent"); (2) Zhuhai Hengqin Jiuzhitang Yonghe Qihang Fund ("JZT Fund"); (3) Jiuzhitang Maker (Beijing) Cell Technology Co., Ltd. ("JZT Maker" together with JZT Parent and JZT Fund, the "JZT Entities"); and (4) the JZT Entities' agent, Simon Guo (collectively with the JZT Entities, "JZT"). The accompanying Declaration of Michael S. Lazaroff, dated June 23, 2025 ("MSL Decl."), contains as attachments relevant exhibits ("Ex. __") and other information.

## I.     INTRODUCTION

Pursuant to Rule 4(f)(3), this Court has broad discretion to order service on foreign defendants, like JZT here, through alternative methods not prohibited by international agreement and reasonably calculated to put defendant on notice about the pending U.S. litigation. Here, Plaintiffs seek to serve JZT by email to some or all of: (a) United States Counsel, Greg Olson (at greg@olsonesq.com), who submitted to Plaintiffs' counsel seven times over three plus years a tolling agreement and six (6) subsequent amendments regarding this case, all of which were signed and binding upon JZT ("US Counsel"); (b) Chinese counsel for the JZT Entities for other matters related to the allegations in the FAC, Zhenzhen Yu (at yuzhenzhen@cn.kwm.com) ("JZT Chinese Counsel") from the international law firm of Kings and Woods Mallesons who discussed settlement with Plaintiffs for the JZT Entities and who separately represented to Plaintiffs' counsel that "the Jiuzhitang parties are currently in the process of engaging legal counsel for this potential dispute"; (c) current United States counsel for defendant Stemedica in this case, Ajay Gupta (at ag@socal.law) ("Stemedica's Counsel") who has access to Stemedica and, logically, to Stemedica's board of directors, including JZT's board members; (d) JZT Fund's and JZT Parent's officer, Zhiwei He (at hezhiwei@nldholdings.com) who is

a Stemedica board member (FAC ¶¶ 41, 45, 47) and who engaged in settlement discussions with Plaintiffs regarding the matters in this case on behalf of the JZT Entities; (e) JZT Parent's Secretary of the Board, Chenxiao Han, at hancx@hnjzt.com ("JZT Parent's Board Secretary"); (f) JZT Parent's Stock Affair Representative, Huang Ke, at dshbgs@hnjzt.com ("JZT Parent's Stock Affair Representative"); and (g) publicly available email addresses for JZT Maker at market@jztmaker.com and hr@jztmaker.com ("JZT Maker Email Addresses").

More importantly, JZT has been aware of this dispute for more than four years and had a copy of a draft of the original complaint since at least 2021. Specifically, Plaintiffs and most of defendants in this matter signed a tolling agreement with Plaintiffs in 2021 and six subsequent amendments during the course of a three plus year period that were each signed and binding upon JZT. Additionally, Plaintiffs discussed global settlement as to all defendants (including JZT) with US Counsel a number of times between 2020 and 2024. Plaintiffs similarly discussed settlement with JZT Chinese Counsel and JZT's officer and Stemedica's board member, Zhiwei He. As such, JZT knew about this dispute and Plaintiffs' anticipated filing of this action before the Tolling Agreement's February 28, 2025 expiration date.

Furthermore, JZT likely knows about this action through other defendants who have been served. For example, JZT has three representatives on Stemedica's board of directors who are also officers of JZT. As such, Stemedica's Counsel is on notice of the FAC and, likely, already provided the FAC to Stemedica's directors, including the JZT-appointed directors and JZT officers, and thus JZT.

Further, defendant Nikolai Tankovich (who was served and filed a motion to dismiss) is an advisor of JZT Maker. As alleged in the FAC, JZT Parent has dominion and control over JZT Maker and JZT Fund, so notice to one of the JZT Entities is effectively notice to all of them. And, Simon Guo has acted as an agent of the JZT Entities. Thus, it is clear that JZT is already on notice about this case.

1    After commencing this action, Plaintiffs emailed the Summons and original

2    complaint to US Counsel and JZT Chinese Counsel.  US Counsel responded by

3    saying he did not represent anyone.  And JZT Chinese Counsel did not respond at all,

4    although she had previously stated that JZT was in the process of retaining litigation

5    counsel for this case.

6    Plaintiffs also tried to serve Mr. Guo in California and Ohio at addresses that

7    were discovered through publicly available sources and process of service

8    investigation but found that he was no longer there.  Plaintiffs were also provided

9    information that Mr. Guo may no longer reside in the United States and could be

10    located somewhere in Asia.

11    As a result, Plaintiffs investigated initiating service on JZT under the Hague

12    Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil

13    or Commercial Matters (the "Hague Convention") to which China is a signatory but

14    were advised that such service was expected to take an unreasonably long time (up

15    to two years) and would be costly.

16    After filing the FAC, Plaintiffs again sent an email with the FAC and the

17    Summons to both US Counsel and JZT Chinese Counsel.  JZT Chinese Counsel

18    responded by saying she did not represent any defendants in this action.  US Counsel

19    has not responded to date.

20    In light of the above, JZT should not be allowed to evade service and put the

21    case on hold for two years by strategically imposing an undue burden on Plaintiffs

22    and forcing them to serve through the Hague Convention, when JZT is already aware

23    of this action.

24    Accordingly, the Court should grant Plaintiffs' motion for alternative service

25    by email to:  (a) US Counsel; (b) JZT Chinese Counsel; (c) Stemedica's Counsel; (d)

26    Zhiwei He (JZT officer and JZT-appointed member of Stemedica's board); (e) JZT

27    Parent's Board Secretary; (f) JZT Parent's Stock Affair Representative; and (g) JZT

28    Maker's Email Addresses.

## II.    **FACTUAL BACKGROUND**

### A. The Plaintiffs and Summary of Defendants' Wrongdoing

Plaintiffs are individuals who are investors and shareholders of CardioCell LLC ("CardioCell"), a global biotech company focused on the research and commercialization of therapeutic cardiovascular indications using stem cells. FAC ¶¶ 1-2. Plaintiffs invested more than $20 million in CardioCell as a result of defendants' false statements, actions, and omissions. *See*, *e.g.*, *id*. ¶¶ 2, 8-11, 176, 419-426.

For context, CardioCell is the owner of an exclusive license for said cardiovascular indications, as granted by defendant Stemedica Cell Technologies, Inc. ("Stemedica"). *Id*. ¶ 6. CardioCell successfully completed Phase IIa clinical trials establishing the safety and efficacy of a multi-billion-dollar therapy for chronic heart failure and was on a clear path of completing Phase IIb/III clinical trials and commercializing therapeutic products. *Id*. ¶ 1. Some of Defendants fraudulently induced Plaintiffs to invest more than $20 million in CardioCell. *Id.* ¶¶ 419-426. However, defendants, including JZT, then took various actions to prevent CardioCell from commercializing the technology by, among other things, depriving CardioCell of stem cells needed for the completion of the clinical trials (including by improperly providing them to other entities and/or for use in patient paid trials in other countries) and compromising CardioCell's efforts to raise funds, which were critical for its survival. *Id*. ¶¶ 2-4. As a result, JZT and the other defendants caused tremendous harm to Plaintiffs, including the loss of their investment and valuable business opportunities. *Id*. ¶ 34-35.

### B. The Defendants

Defendants in this case include JZT, Stemedica, certain of Stemedica's current and/or former directors  (*i.e.*, Maynard A. Howe, Roger J. Howe, David Howe, Nikolai I. Tankovich, Dirk P. O'Hara, and Craig W. Carlson), Stemedica's CEO

- 4 -

(Michael K. Steinhauser) and the entities to which Stemedica fraudulently transferred its assets (*e.g.,* SanoStem Global LLC and Duniya SanoStem Inc.) and those who aided that transfer (*e.g.,* Michael K. Steinhauser and Shivinder S. Deol). FAC ¶¶ 41-65.

Defendant JZT Parent is a Chinese publicly traded company focused on the development and manufacturing of Chinese drugs and has more than $300 million in annual revenues. *See* website at: http://www.marketscreener.com/quote/stock/JIUZHITANG-CO-LTD-9059375/news/Jiuzhitang-Co-Ltd-Reports-Earnings-Results-for-the-Full-Year-Ended-December-31-2024-49458105 (last accessed on June, 23 2025).

JZT Parent has been acting through its alter egos – defendant JZT Fund, defendant JZT Maker, and through its agent defendant Simon Guo. FAC ¶¶ 42-53, 59. Indeed, JZT Parent created JZT Fund and JZT Maker to invest in Stemedica and utilize Stemedica's stem cell technology. *Id.* ¶ 43. JZT Parent, JZT Fund, and JZT Maker have a unity of ownership and interest as well as overlapping management, employees, and facilities. *Id.* ¶¶ 44-53. JZT Parent exercises complete dominion and control over JZT Fund and JZT Maker. *Id.* ¶ 53. In addition, at JZT Parent's direction, JZT Fund and JZT Maker routinely sent its managers, lawyers, and auditors to Stemedica's facility in San Diego for monitoring and auditing Stemedica's business. *Id.* ¶¶ 48, 52.

Defendant Simon Guo is an agent of the JZT Entities and has acted under their dominion and control. *Id.* ¶ 59. Specifically, at JZT Parent's direction, JZT Fund engaged defendant Simon Guo (who upon information and belief was based in California at the time) to negotiate with CardioCell terms of a sublicense agreement for the cardiovascular indications and other potential business deals under false pretenses. *Id.* ¶¶ 281-285. The JZT Entities and Stemedica also appointed Simon Guo to CardioCell's board so that he can monitor CardioCell and participate in its

business decisions at the JZT Entities' direction and for the JZT Entities' benefit. *Id.* ¶¶ 48, 275.

Plaintiffs attempted to serve Simon Guo at his last two known addresses in the United States that they could identify, one in California and one in Ohio, but that service failed. Exs. A-B.[1] Plaintiffs received information that Mr. Guo is possibly located outside the U.S. in Asia. MSL Decl. ¶ 6. Plaintiffs tried again to serve Mr. Guo with the FAC and the Summons at the last known address in the United States (in Ohio) and that service also failed. *Id.*

Defendant Nikolai Tankovich, who is represented by counsel here and filed a motion to dismiss, is an advisor of JZT Maker. Ex. D.

**C. Plaintiffs' Prior Communications With JZT And Its Counsel**

Starting in 2020, Plaintiffs and JZT among others discussed this dispute and possible settlement. Finally, on or around June 24, 2021, Plaintiffs and defendants (including JZT) entered into a Tolling Agreement (Ex. D) regarding the dispute in this action (as set forth in a draft complaint, attached as an exhibit to the Tolling Agreement) to preserve the status quo of Plaintiffs' claims. FAC ¶ 410. The parties, including JZT, subsequently entered into six amendments to the Tolling Agreement. FAC ¶¶ 411-417. The Sixth Amendment to the Tolling Agreement, entered into as of February 29, 2024, extended the tolling period to February 28, 2025. FAC ¶ 417; Ex. E.

To that end, Plaintiffs' counsel communicated with US Counsel who assisted with negotiating global settlement and submitted to Plaintiffs the signed Tolling Agreement and six amendments, including JZT signatures. Ex. F.

JZT Chinese Counsel was also involved in settlement negotiations. Specifically, in 2023, JZT's Chinese Counsel and JZT's officer and appointed member to Stemedica's board, Zhiwhei He, attended a conference call with

---

[1] "Ex. __" refers to the exhibits attached to the MSL Decl.

Plaintiffs' counsel regarding potential resolution of the case as to the JZT Entities. MSL Decl. ¶ 12, Ex. G.  Notably, JZT Chinese Counsel states on her LinkedIn page that she "Represented Jiuzhitang Co., Ltd. [JZT Parent] in its acquisition of Stemedica Cell Technologies, Inc."  Ex. H.

On September 27, 2024, after Plaintiffs had been unable to settle with JZT for several years, Plaintiffs' counsel emailed JZT Chinese Counsel advising her about Plaintiffs' intent to commence this action due to the unsuccessful settlement attempts and attaching a draft complaint.  Ex. I.  On October 4, 2024, Ms. Yu responded to the email stating: "I have received the draft complaint.  I am, however, not representing the Jiuzhitang parties in this matter.  The Jiuzhitang parties are currently in the process of engaging legal counsel for this potential dispute." *Id*.  Thus, it is clear that JZT Chinese Counsel has access to JZT and that JZT is aware of this action.

Around the same time, Plaintiffs' counsel similarly communicated with Stemedica's Counsel (who had by then replaced US Counsel as counsel to Stemedica).  Ex. J.  The involvement of Stemedica's Counsel in this case undoubtedly provides him with access to JZT (as Stemedica's significant shareholder) and the JZT-appointed Stemedica directors, Zhiwei He (a JZT officer), Liangbin Zhang (JZT Officer), and Yansong Gao (JZT officer) (FAC ¶¶ 41-46), who likely voted regarding Stemedica's recent asset sale alleged in the FAC (FAC ¶¶ 30-33, 398-402).

## D.  The Commencement Of This Action And Plaintiffs' Allegations

After the parties were unable to reach settlement, Plaintiffs commenced this action on February 27, 2025 by filing the original complaint (Dkt. 1) ("Original Complaint").  In response, some Defendants filed answers and motions to dismiss.

On May 30, 2025, Plaintiffs filed the FAC.  Dkt. 32.

On May 31, 2025, Defendants Shivinder Deol, Suniya Danostem, and Sanostem Global filed Answers.  Dkt. 33-36.

On June 13, 2025, Defendants Roger Howe, Maynard Howe, Craig Carlson, Nikolai Tankovich, Dirk O'Hara, David Howe, and Michael Steinhauser filed motions to dismiss. Dkt. 37-39.

In the FAC, Plaintiffs again sought to redress JZT's egregious wrongdoing and recover for the substantial harm caused by JZT's multiple bad acts, including aiding and abetting the Stemedica directors' breaches of fiduciary duty and participating in defendants' RICO enterprise in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). FAC ¶¶ 34-35.

Plaintiffs alleged, among other things, that JZT knowingly and substantially assisted in the Stemedica Directors' breaches of fiduciary duty and the defendants' RICO enterprise by, among other things: (i) confirming the Stemedica Directors' misrepresentations that JZT would provide new business deals to CardioCell; (ii) directing Stemedica to prioritize stem cell deliveries to JZT and accepting stem cell supplies with the knowledge that CardioCell needed the same stem cells to complete the clinical trials; (iii) encouraging the Stemedica Directors not to answer investors' questions about stem cell availability to CardioCell required to complete the clinical trials; (iv) refusing to provide (on Stemedica's behalf) the stem cell manufacturing protocols to CardioCell; and (v) encouraging the Stemedica Directors not to disclose Stemedica and JZT's plan was to deprive CardioCell of funds and stem cells and prevent the completion of the clinical trials and product commercialization. *Id*. ¶¶ 419-530.

Plaintiffs also alleged that JZT participated in the RICO enterprise by intentionally and directly compromising CardioCell's potential deal with the investor WuXi by refusing to provide the intellectual property for which CardioCell had exclusive license. Specifically, JZT, on behalf of Stemedica, refused to provide to CardioCell the stem cell manufacturing protocols and know-how, claiming that only Stemedica and JZT had the ability to manufacture and brazenly stating that "[n]either Stemedica nor [JZT] Maker will give up our business secret to CMO." *Id*. ¶ 358. As

- 8 -

a result, the deal with WuXi did not close, and CardioCell lost the funding critical for its survival. *Id*. All of this lead to the destruction of Plaintiffs' investments and potential profits.

### E. Plaintiffs' Attempted Service On JZT

After filing the Original Complaint, on March 3, 2025, Plaintiffs emailed the Summons and Original Complaint to US Counsel (who had previously represented Stemedica) and asked him to accept service on defendants' behalf. Ex. K. However, Mr. Olson responded that he did "not represent any of these parties." *Id*.

Similarly, on March 3, 2025, Plaintiffs' counsel emailed the Summons and Original Complaint to Stemedica's Counsel and asked him to accept service on behalf of Stemedica and any other defendants he would be representing. Ex. J. Mr. Gupta did not accept service as requested (although he later appeared in the case on behalf of Stemedica). Dkt. 12. As a result, Plaintiffs had to serve Stemedica formally through a process server.

On March 3, 2025, Plaintiffs' counsel also emailed the Summons and Original Complaint to JZT Chinese Counsel and asked her to accept service on JZT's behalf. Ex. I. However, Ms. Yu did not respond to this email.

As described above, Plaintiffs also tried to serve Mr. Guo through US Counsel and through a process server. But these attempts were unsuccessful.

Thus, Plaintiffs were unable to serve JZT. The JZT Entities are in China which is a signatory to the Hague Convention. However public records and legal authority demonstrate that "service via the Hague Convention in China is time consuming (it often takes over six months) and often ineffective." *See, e.g., Wang v. Ehang Holdings Ltd*., No. 20-CV-00569-BLF, 2020 WL 11891323, at *3 (N.D. Cal. June 29, 2020) (granting motion for alternative service). Here too, Plaintiffs were provided an estimate that service pursuant to the Hague Convention would be time-consuming (up to two years) and costly ($15,000-$20,000). MSL Decl. ¶ 22.

Plaintiff found the following email addresses for two executives of JZT Parent in a public filing (by translating the first page of the filing from Chinese to English) as follows: (i) hancx@hnjzt.com – JZT Parent's Board Secretary, Chenxiao Han; and (ii) dshbgs@hnjzt.com – JZT Parent's Stock Affair Representative, Huang Ke. Ex. L.

Plaintiffs also located the JZT Maker Email Addresses on JZT Maker's website in the "Contact Us" section. Ex. M.

After filing the FAC, Plaintiffs again sent an email with the FAC and the Summons to both US Counsel and JZT Chinese Counsel. Exs. N-O. US Counsel has not responded to date. MSL Decl. ¶ 20. JZT Chinese Counsel responded by saying she did not represent any defendants in this action. Ex. O.

To prevent JZT from putting the case on hold for two years, wasting valuable resources, and improperly using the Hague Convention as a shield to accepting service, when JZT clearly has notice of this matter, Plaintiffs are hereby submitting to the Court this motion for alternative service by email to the various proper individuals and entities identified herein.

As demonstrated below, such service is reasonably calculated to put JZT on proper notice of this action and should be ordered by the Court.

### III.   LEGAL ARGUMENT

#### A. FRCP Rule 4(f)

Rule 4(f) of the Federal Rules of Civil Procedure provides that a plaintiff may serve an individual located outside of the United States as follows:

(f) Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague

- 10 -

Convention on the Service Abroad of Judicial and Extrajudicial
Documents;

(2) if there is no internationally agreed means, or if an international
agreement allows but does not specify other means, by a method that is
reasonably calculated to give notice []; or

(3) by other means not prohibited by international agreement, as the
court orders.  Fed. R. Civ. P. 4(f)(3).

Under Rule 4(f)(3), this Court can authorize service on JZT, by any alternative
method, which is not prohibited by international agreement.  *See id*.  "As obvious
from its plain language, service under Rule 4(f)(3) must be (1) directed by the court;
and (2) not prohibited by international agreement.  No other limitations are evident
from the text. In fact, as long as court-directed and not prohibited by an international
agreement, service of process ordered under Rule 4(f)(3) may be accomplished in
contravention of the laws of the foreign country."  *Rio Props., Inc. v. Rio Int'l
Interlink,* 284 F.3d 1007, 1014 (9th Cir. 2002).

Rule 4(f)(3) is "neither a last resort nor extraordinary relief" but "merely one
means among several which enables service of process on an international
defendant."  *Id.* at 1015.  The Ninth Circuit thus rejects the contention that Rule
4(f)(3) can only be utilized if other methods of service have been shown to be unduly
burdensome.  *See Rio Props.,* 284 F.3d at 1016 (finding that Rule 4(f)(3) does not
require "attempted service by all feasible alternatives before service under Rule
4(f)(3)").  "Rule 4(f)(3) is an equal means of effecting service of process under the
Federal Rules of Civil Procedure" because "court-directed service under Rule 4(f)(3)
is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)".  *Id.*  Thus,
"Plaintiffs are not required to attempt service through the Hague Convention" before
moving for alternative service by email.  *Fourte Int'l Ltd. BVI v. Pin Shine Indus.
Co.*, No. 18-CV-00297-BAS-BGS, 2019 WL 246562, at *2 (S.D. Cal. Jan. 17, 2019)
(Bashant, J.); *see also Wang*, 2020 WL 11891323, at *3320) ("Plaintiff is entitled to

- 11 -

provide alternative service without first considering the Hague Convention");
*Factory Direct Wholesale, LLC v. Henglin Home Furnishings Co., Ltd.,* No. 2:24-cv-07118-CAS-PDX, 2024 WL 5413653, at *3 (N.D. Cal. 2024) (Plaintiff "is not required to pursue other methods of service before moving for alternative service").

### B. Email Service On Defendants In China Is Permissible Under Rule 4(f)

In this Circuit, courts have found that email service is proper under Rule 4(f)(3) in those countries which are signatories to the Hague Convention because the Hague Convention does not explicitly prohibit service by email. Thus, email service in China does "not violate an international agreement." *Viral DRM LLC v. Margarita,* No. 3:24-cv-00747-JSC, 2024 WL 5318835, at *2 (N.D. Cal. May 31, 2024); *Kohler Co. v. Sweethome,* No. 2:23-cv-06889-MCS-SSC, 2024 WL 3055473, at *1 (C.D. Cal. Jan. 16 2024) ("[if] Defendant is a Chinese entity that will receive the proposed email service in China, service by email is not prohibited by international agreement."); *see also Fourte,* 2019 WL 246562, at *2 (finding that the Hague Convention does not preclude email service in China).

This is true for other countries who are also signatories to the Hague Convention. *See, e.g.,* *Williams–Sonoma Inc. v. Friendfinder Inc.,* No. C-06–06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (permitting service by email in various countries who are signatories to the Hague Convention because the Hague Convention does not prohibit email service); *Assef v. Does 1-10,* No. 15-CV-01960-MEJ, 2016 WL 1191683, at *3–4 (N.D. Cal. Mar. 28, 2016) (authorizing alternative service via email under Rule 4(f)(3) where defendants were "likely based in either Singapore or Australia").

This Court thus has broad and unfettered discretion to order alternative service by email to JZT as described herein.

## C. Service By Email To The Individuals And Entities Here Comports With Due Process

The Ninth Circuit has explained that "[e]ven if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process." *Rio Props.,* 284 F.3d at 1007, 1015. In other words, service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.; see also Fourte*, 2019 WL 246562, at *3 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950)); *F. Fin. Grp., LLC v. President, Fellows of Harvard Coll.*, 199 F.R.D. 24, 24-25 (D. Me. 2001) (authorizing service on a defendant who resided in Russia by service upon his New York attorney despite the attorney's objection that he was not authorized to accept such service); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, Nos. M 07–1827 SI, C 09–1115 SI, MDL. No. 1827, 2009 WL 4874872, at *4 (N.D. Cal. Oct. 6, 2009) (permitting service on defendants' U.S. counsel where the record indicated that foreign defendants had consulted U.S. counsel regarding the lawsuit).

Here, the request service clearly comports with due process.

*First,* US Counsel for three plus years represented defendant Stemedica and was a go-between for global settlement negotiations between Plaintiffs and most defendants, including JZT. US Counsel also obtained on seven occasions during those three plus years the signatures binding each of JZT on a tolling agreement and six amendments. There is no doubt that US Counsel knows how to communicate with JZT and apprise them of this action (which they already know about as described above). US Counsel only told Plaintiffs' counsel that he no longer represented Stemedica or any other defendant and could not communicate with JZT and other defendants as it became clear that this action would be filed.

*Second,* JZT Chinese Counsel discussed settlement for the JZT Entities directly with Plaintiffs' counsel and Zhiwei He. She also informed Plaintiffs' counsel

1   that the JZT Entities were in the process of obtaining local counsel for this matter.

2   She further represented JZT Parent during its acquisition of Stemedica.  She clearly

3   knows how to communicate with JZT and apprise it of this action.

4        The involvement of US Counsel and JZT Chinese Counsel here is similar to

5   that in *Hawkins*, where defendant's U.S. attorney sought to settle the dispute before

6   Plaintiffs filed the complaint.  This Court astutely observed in *Hawkins* that the

7   attorney "was in contact with [defendant] regarding Plaintiff's dispute, particularly

8   given [defendant's attorney] representations regarding his authority to propose a

9   settlement" and that "[a]lthough the record shows that [defendant's attorney]

10  disavowed that he was authorized to accept service of any complaint related to the

11  dispute, this disavowal does not defeat a finding that alternative service on a

12  defendant's U.S. attorney comports with due process."  *Id.* at *4; *see also Brown v.*

13  *China Integrated Energy, Inc.,* 285 F.R.D. 560, 566 (C.D. Cal. 2012) ("Due process

14  does not require that the individuals served on behalf of foreign defendants have

15  represented them or been authorized to accept service on their behalf.  Instead, [t]he

16  reasonableness and hence the constitutional validity of any chosen method may be

17  defended on the ground that it is in itself reasonably certain to inform those

18  affected.") (internal quotation marks and citation omitted).

19       The same is true here with regard to US Counsel and JZT Chinese Counsel.

20  Both have access to JZT and can easily notify JZT about this case.

21       *Third,* Stemedica's current counsel has appeared and filed an answer to the

22  Original Complaint.  Three of Stemedica's directors were appointed by JZT, all of

23  whom are JZT officers.  Stemedica's counsel clearly has access to JZT through his

24  client, Stemedica, as Stemedica's board of directors includes JZT-appointed board

25  members.  As such, Stemedica's Counsel have access to and can notify JZT about

26  this case.

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN ORDER
AUTHORIZING ALTERNATIVE SERVICE

CASE NO.: 3:25-CV-000459-BAS-SBC

*Fourth,* Zhiwei He is a JZT officer who discussed settlement with Plaintiffs' counsel on behalf of the JZT Entities. He too clearly can apprise JZT about this action.

*Fifth*, JZT Parent's Board Secretary and JZT Parent's Stock Affair Representative are both officers of JZT Parent. They too clearly can apprise JZT about this action.

*Sixth*, the JZT Maker Email Addresses are those presented on the JZT Maker website to contact them. This is clearly a way to apprise the JZT Entities (including their agent, Simon Guo) of this action.

Accordingly, service by email to those described above comports with due process.

Indeed, courts in this circuit have held that this type of service is appropriate. For example, courts have held that alternative service may be made pursuant to Rule 4(f)(3) via email to U.S. counsel related to a foreign entity or individual even if such counsel is not authorized to accept service. *See, e.g.*, *Q Industries, Inc. v. O'Reilly Auto., Inc.,* No. 2:22-cv-03791-HDV-PVCx, 2023 WL 6852025, at *3 (C.D. Cal. Sept. 8, 2023) ("Court authorizes service of process on Test Rite International by email to Test-Rite Product's counsel of record"); *Eagles Nest Outfitters, Inc. v. Taomore, Inc., et. al.,* No. CV 23-466-GW-EX, 2023 WL 11814256, at *1-3 (C.D. Cal. Feb. 24, 2023) (ordering alternative service for "United States counsel" for Chinese resident "using electronic mail"); *Todd Reed, Inc. v. Sergey Grishin Enter., LLC,* No. 2:21-cv-00766-JWH-AFMx, 2021 WL 5277442, at *1-3 (C.D. Cal. Apr. 6, 2021) (authorizing alternative service via email on US lawyer in different case); *Fourte*, 2019 WL 246562, at *3 (ordering alternative service via email to attorney for defendants in related arbitration and making special appearance to contest jurisdiction); cf. *Hawkins v. Bank of Am., N.A.*, No. 17-CV-01954-BAS-AGS, 2018 WL 1616941, at *3 (S.D. Cal. Apr. 4, 2018) (authorizing alternative service on US counsel for defendant); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11–CV–

- 15 -

02460–LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Service upon a foreign defendant's United States-based counsel is a common form of service ordered under Rule 4(f)(3)"); *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.,* No. 16-cv-00669-YGR, 2017 WL 1378532, at *4 (N.D. Cal. Apr. 11, 2017) ("Courts in the Ninth Circuit have ordered service through United States-based counsel even when counsel has refused to accept service on the ground that they do not represent the international defendants.").

Additionally, email service on publicly available email addresses or officers or directors has also been found to be appropriate. *See, e.g., Kohler Co. v. Sweethome,* No. 2:23-cv-06889-MCS-SSC, 2024 WL 3055473, at *2 (C.D. Cal. Jan. 16, 2024) (authorizing email service on Chinese company at public company support and service emails available on the internet); *Restoration Hardware, Inc. v. Sichuan Wei Li Tian Xia Network Tech. Co., LTD.,* No. 22-cv-03054-JSC, 2022 WL 4596622, at *3 (N.D. Cal. July 11, 2022) (same); *GSV Futures LLC v. Casmain L.P.,* No. 22-cv-05449-LB, 2022 WL 16856361, at *2 (N.D. Cal. Nov. 10, 2022) (ordering email service on general manager among others).

Plaintiffs are thus confident that email service to US Counsel and JZT Chinese Counsel will be sufficient to provide reasonable notice to JZT that comports with due process, particularly since, as explained above, JZT likely already knows about this action. However, if the Court deems it helpful and/or necessary, Plaintiffs can also serve some or all of the remaining entities and individuals to fully ensure that JZT receives the required notice.

Given Plaintiffs' attempt to serve JZT, the burdensome delay and cost of service via the Hague Convention, and the likelihood that JZT already knows about this action, this is precisely the situation that warrants alternative service under Rule 4(f)(3). *See Rio Props.,* 284 F.3d at 1016; *Hawkins*, 2018 WL 1616941, at *3. Indeed, not ordering alternative service under these circumstances will be

burdensome and prejudicial to Plaintiffs.    The Court should not reward JZT's apparent strategic attempt to evade service and delay Plaintiffs' recovery.

Accordingly, the Court should grant Plaintiffs' motion for alternative service.

## IV.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order authorizing Plaintiffs to serve defendants Ziuzhitang Co., Ltd., Zhuhai Hengqin Jiuzhitang Yonghe Qihang Fund, Jiuzhitang Maker (Beijing) Cell Technology Co., Ltd., and Simon Guo, by emailing the Summons and FAC to some or all of: (1) U.S. Counsel, Greg Olson, at greg@olsonesq.com; (2) JZT Chinese Counsel, Zhenzhen Yu, at yuzhenzhen@cn.kwm.com; (3) Stemedica's Counsel, Ajay Gupta, at ag@socal.law; (4) Zhiwei He, at hezhiwei@nldholdings.com; (5) JZT Parent's Board Secretary, Chenxiao Han, at hancx@hnjzt.com; (6) JZT Parent's Stock Affair Representative, Huang Ke, at dshbgs@hnjzt.com; and (7) the JZT Maker Email Addresses, at market@jztmaker.com and hr@jztmaker.com.

Dated: June 23, 2025

RIMÔN P.C.

By: */s/ Michael S. Lazaroff*
Michael S. Lazaroff
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com
(admitted *Pro Hac Vice*)

Daniel F. Lula
2029 Century Park East
Suite 400N
Los Angeles, CA 90067
Tel: (617) 963-0419
Fax: (213) 375-3811
daniel.lula@rimonlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert Cocchia
RIMON P.C.
3579 4th Avenue
San Diego, CA 92103
Tel: (858) 348-4383
Fax: (213) 375-3811
robert.cocchia@rimonlaw.com

*Attorneys for Plaintiffs*
*Nina Vikhrieva and Sergey Leshkov*

- 18 -