1   Michael S. Lazaroff (Admitted *Pro Hac Vice*, New York State Bar No. 2801579)
    RIMÔN P.C.
2   400 Madison Avenue, Suite 11D
    New York, NY 10017
3   Tel: (646) 738-4151
    Fax: (212) 363-0270
4   michael.lazaroff@rimonlaw.com

5   Daniel F. Lula (California State Bar No. 227295)
    RIMÔN P.C.
6   2029 Century Park East, Suite 400N
    Los Angeles, CA 90067
7   Tel: (617) 963-0419
    Fax: (213) 375-3811
8   daniel.lula@rimonlaw.com

9   Robert A. Cocchia (California State Bar No. 172315)
    RIMÔN P.C.
10  3579 4th Avenue
    San Diego, CA 92103
11  Tel: (858) 348-4383
    Fax: (213) 375-3811
12  robert.cocchia@rimonlaw.com

13  *Attorneys for Plaintiffs Nina Vikhrieva and Sergey Leshkov*

14  **IN THE UNITED STATES DISTRICT COURT**
    **SOUTHERN DISTRICT OF CALIFORNIA**

15

16  NINA VIKHRIEVA and SERGEY LESHKOV,                    Case No.: 3:25-cv-00459-BAS-SBC

17                          Plaintiffs,                   **PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST**

18  v.                                                    **AMENDED COMPLAINT OF DEFENDANTS MAYNARD HOWE,**

19  STEMEDICA CELL TECHNOLOGIES,                          **NIKOLAI TANKOVICH, CRAIG**
    INC.; ZIUZHITANG CO., LTD.;                           **CARLSON, ROGER HOWE, AND**
20  ZHUHAI HENGQIN JIUZHITANG                             **DIRK O'HARA**
    YONGHE QIHANG FUND;
21  JIUZHITANG MAKER (BEIJING)
    CELL TECHNOLOGY CO., LTD.;                            **Judge: Hon. Cynthia A. Bashant**
22  MAYNARD A. HOWE; ROGER J.                             **Hearing Date: August 8, 2025**
    HOWE; DAVID HOWE; NIKOLAI I.
23  TANKOVICH; DIRK P. O'HARA;
    SIMON GUO; CRAIG W. CARLSON;
24  MICHAEL K. STEINHAUSER;                               **NO ORAL ARGUMENT UNLESS**
    SANOSTEM GLOBAL LLC; DUNIYA                           **ORDERED BY THE COURT**
25  SANOSTEM INC.; AND SHIVINDER
    S. DEOL,
26
                            Defendants.
27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   RELEVANT FAC ALLEGATIONS ................................................ 4

    A.    Defendants And Their Fraudulent Scheme............................. 4

    B.    Defendants Induced Plaintiffs' Investment By Making False And Misleading Statements Directly To Plaintiffs.......................... 5

    C.    Defendants Made Affirmative Statements To Conceal Ther Fraud ..... 5

    D.    Defendants' Fraudulent Enterprise Spanned More Than Two Decades And Targeted Multiple Unsuspecting Investors ................... 7

III.  LEGAL STANDARD ................................................................... 9

IV.   LEGAL ARGUMENT ................................................................. 9

    A.    Plaintiffs' RICO Claims Are Timely ...................................... 9

        1.    The RICO Claims Are Not Time-Barred ..................... 9

        2.    The Question Of When Plaintiffs Should Have Known About The Injury Is Not Proper On A Motion To Dismiss ..... 12

        3.    The Limitations Period Is Tolled Due To Fraudulent Concealment .......................................................... 14

    B.    Plaintiffs Sufficiently State RICO Claims ............................ 15

        1.    Plaintiffs Sufficiently Allege RICO Standing ............ 16

        2.    Plaintiffs Sufficiently Allege Proximate Causation ..... 18

        3.    Plaintiffs Sufficiently Allege Underlying Fraud ......... 20

        4.    Plaintiffs Sufficiently Allege A RICO Pattern ........... 20

    C.    The Court Has Subject Matter Jurisdiction Over the State Law Claims ................................................................................ 21

    D.    Plaintiffs' Fraud and Fiduciary Duty Claims Are Timely ...... 21

    E.    Plaintiffs' State Law Claims Are Sufficiently Stated ........... 22

        1.    Plaintiffs State A Claim For Fraudulent Inducement.... 22

        2.    Plaintiffs State A Claim For Fraudulent Concealment.... 24

        3.    Plaintiffs State Breach Of Fiduciary Duty Claims ....... 24

i                                         3:25-cv-00459-BAS-SBC

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

        4.      Plaintiffs State An Aiding And Abetting Fraudulent Transfer Claim...........................................................................................24

        5.      Plaintiffs State A Claim For Fraud-Based Unjust Enrichment 25

V.     CONCLUSION ..............................................................................25

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS
MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ........................................................................................ 9

*In re Am. Int'l Grp., Inc.*,
    965 A.2d 763 (Del. Ch. 2009) ...................................................................... 22

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ...................................................................................... 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................ 9

*Borrego Community Health Foundation v. Inland Valley Investments, LLC*,
    No. 21-cv-01417-AJB-AGS, 2023 WL 2518844 (S.D. Cal. Mar. 13, 2023) ................................................................................................... 9, 11

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008) ...................................................................................... 19

*Burnett v. Rowzee*,
    No. SA CV 07-641DOCANX, 2007 WL 2735682 (C.D. Cal. Aug. 28, 2007) ..................................................................................................... 17

*In re Caremark Int'l Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ...................................................................... 13

*Cohen v. Trump*,
    13–cv–2519–GPC–WVG, 2014 WL 690513 (S.D. Cal. Feb. 21, 2014) ........................................................................................................... 12

*Cosmonova, LLC v. BioFilm, Inc.*,
    763 F. Supp. 3d 1157 (S.D. Cal. 2025) ........................................................ 25

*Flamengos Invs., LLC v. Brookwood Cap. Partners LLC*,
    No. 1:22-CV-489, 2025 WL 1069284 (S.D. Ohio Apr. 9, 2025) .................. 21

3:25-cv-00459-BAS-SBC
PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS
MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797 (2005)................................................................................22

*Frasco v. FLO Health, Inc., et al.*,
  No. 3:21-cv-00757-JD, 2022 WL 21794391 (N.D. Cal. June 6, 2022).....................................................................................................13

*Gatz v. Ponsoldt*,
  925 A.2d 1265 (Del. 2007)........................................................................17

*Gianelli v. Schoenfeld*,
  No. 221CV0477JAMKJNPS, 2021 WL 5154163 (E.D. Cal. Nov. 5, 2021)......................................................................................................12

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996)..............................................................10, 12

*H.J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989)............................................................................20, 21

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010)........................................................................................19

*Hinesley v. Oakshade Town Ctr.*,
  135 Cal. App. 4th 289 (2005)....................................................................23

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005)......................................................13

*Jolly v. Eli Lilly & Co.*,
  44 Cal. 3d 1103 (1988)..............................................................................22

*Just Film, Inc. et al. v. Merchant Services, Inc.*,
  No. C 10–1993 CW, 2010 WL 4923146 (N.D. Cal. Nov. 29, 2010).................17

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017)..................................................................19

*KZ Capital General Trading LLC v. Petrossov*,
  No. 2020-0750-PAF, 2022 WL 293011 (Del.Ch. Jan. 31, 2022)....................17

*Lebanon Cnty. Employees' Ret. Fund v. Collis*,
  287 A.3d 1160 (Del. Ch. 2022)................................................................22

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ........................................................................ 19

*Maiz v. Virani*,
   253 F.3d 641 (11th Cir. 2001) ........................................................ 17

*Maye v. Online Land Sales LLC*,
   No. 2:23-CV-00173-DAD-CKD, 2024 WL 382294 (E.D. Cal. Feb.
   1, 2024) ...................................................................................... 9, 14

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004) .......................................................... 25

*MD Helicopters, Inc. v. Aerometals, Inc.*,
   No. 2:16-cv-02249-TLN-AC, 2021 WL 978953 (E.D. Cal. Mar. 16,
   2021) ........................................................................................ 10, 12

*Medimpact Healthcare Systems, Inc. v. IQVIA Inc.*,
   No. 19cv1865-GPC(LL), 2020 WL 5064253 (S.D. Cal. Aug. 27,
   2020) .............................................................................................. 19

*Merck & Co. v. Raynolds*,
   559 U.S. 633 (2010) ........................................................................ 12

*Murguia v. Langdon*,
   61 F.4th 1096 (9th Cir. 2023) ........................................................... 9

*Natomas Gardens Investment Group, LLC v. Sinadinos*,
   No. CIV. S–08–2308 .......................................................................... 17

*Painters & Allied Trades Dist. Council 82 Health Care Fund v.
   Takeda Pharms. Co. Ltd.*,
   943 F.3d 1243 (9th Cir. 2019) ......................................................... 19

*Petrus v. New York Life Ins. Co.*,
   No. 14-cv-2268-BAS-JMA, 2016 WL 1255812 (S.D. Cal. Mar. 31,
   2016) .............................................................................................. 13

*Phan v. Best Foods, Int'l Inc.*,
   No. C 14–0888 RS, 2014 WL 1677526 (N.D. Cal. April 28, 2014) ................. 16

*Pincay v. Andrews*,
   238 .3d 1106, 1110 (9th Cir. 2001) .................................................. 11

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS
MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

*Raya v. Barka*,
No. 19-CV-2295-WQH-AHG, 2022 WL 901557 (S.D. Cal. Mar. 28, 2022) ................................................................................ 14, 24

*Rosenthal v. Great W. Fin. Sec. Corp.*,
14 Cal. 4th 394 (1996) ........................................................................ 23

*Skye Orthobiologics, LLC v. CTM Biomedical, LLC*,
No. CV-203444-DMGPVCX, 2021 WL 6104163 (C.D. Cal. Aug. 30, 2021) .............................................................................................. 15

*Sparling v. Hoffman Const. Co.*,
864 F.2d 635 (9th Cir. 1988), *abrogated by Smith v. Spizziri,* 601 U.S. 472 (2024) .................................................................................... 18

*Stitt v. Williams*,
919 F.2d 516 (9th Cir.1990) ................................................................ 9

*Swafford v. Int'l Bus. Machines Corp.*,
408 F. Supp. 3d 1131 (N.D. Cal. 2019) ............................................. 23

*Turrey v. Vervent, Inc.*,
No. 20-CV-0697 DMS (AHG), 2023 WL 3028079 (S.D. Cal. Apr. 20, 2023) .................................................................................. 10, 11, 12

*Turrey v. Vervent, Inc.*,
No. 20-cv-697-DMS-AHG, 2025 WL 622612 (S.D. Cal. Feb. 26, 2025) ..................................................................................................... 12

*Uthe Tech. Corp. v. Aetrium Inc.*,
739 F. App'x 903 (9th Cir. 2018) ....................................................... 18

*Vera v. REL-BC, LLC*,
66 Cal. App. 5th 57 (2021) .......................................................... 13, 22

*In re Wells Fargo Insurance Marketing and Sales Practices Litig.*,
No. SAML 17-02797 AG, 2018 WL 9536803 (C.D. Cal. Dec. 14, 2018) ....................................................................................................... 9

**Statutes**

10 Del. C. § 8106 (a) ................................................................................. 22

18 U.S.C. § 1961(1) ................................................................................... 18

18 U.S.C. § 1961(5) ........................................................................................20

18 U.S.C. § 1962(c) ..................................................................................2, 9, 15

18 U.S.C. § 1962(d) ..................................................................................2, 9, 15

28 U.S.C. § 1367(a) .......................................................................................21

Cal. Civ. Code 3439.01(b) ...............................................................................25

Cal. Civ. Code 3439.01(c) ...............................................................................25

Cal. Civ. Code 3439.04(a) ...............................................................................24

Cal. Civ. Code § 3439.09 (a)(1) .......................................................................22

Cal. Civ. Code § 3439.09 (a)(2) .......................................................................22

Cal. Civ. Proc. Code § 338(d) ..........................................................................22

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS
MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

1  Plaintiffs Nina Vikhrieva and Sergey Leshkov (together, "Plaintiffs")
2  respectfully submit this memorandum of law in support of their opposition to the
3  motion to dismiss Plaintiffs' First Amended Complaint ("Motion" or "Mot.") of
4  defendants Maynard Howe, Nikolai Tankovich, Craig Carlson, Roger Howe, and
5  Dirk O'Hara (collectively, "Defendants").[1]

6  **I.  INTRODUCTION**

7  The Motion should be denied.  The clear and detailed allegations in the 100-
8  page First Amended Complaint ("FAC") are more than sufficient to plausibly allege
9  all of Plaintiffs' claims against these Defendants and detail their actions and schemes
10  to fraudulently induce and then destroy Plaintiffs' investments.

11  Plaintiff Nina Vikhrieva is a doctor and a researcher.  Plaintiff Sergey Leshkov
12  is a medical equipment distribution expert.  Plaintiffs are business partners and
13  international investors focused on transformative health technology, like defendant
14  Stemedica's stem-cell technology. Plaintiffs were introduced to Stemedica by their
15  trusted friend, defendant Nikolai Tankovich.

16  Unbeknownst to Plaintiffs, Tankovich and defendants Stemedica founders,
17  Roger Howe and Maynard Howe, used Stemedica's technology as bait to
18  fraudulently induce Plaintiffs to invest $20 million in Stemedica's subsidiaries,
19  including CardioCell LLC ("CardioCell"), by promising to commercialize multi-
20  billion-dollar stem cell products using Stemedica's stem cells for clinical trials.
21  However, they never intended to fulfill their promises.  Rather than spending time,
22  effort, money, and stem cells on clinical trials and product commercialization, these
23  individuals and the other defendants, including the Stemedica executives, Craig

---

24

25  [1]  Defendant Michael K. Steinhauser filed a belated joinder to this Motion (Dkt. 40)
26  and a separate motion to dismiss (Dkt. 39).  Defendant David Howe filed a separate
    motion to dismiss and joinder (Dkt. 37).  Plaintiffs concurrently submit opposition
27  briefs to those motions.  Other defendants have filed answers to the FAC (Dkt. 33-
28  34). Others have not responded and a motion for alternative service against JZT and
    Simon Guo was filed (Dkt. 44).  This brief focuses on the moving Defendants.

Carlson, Dirk O'Hara, and David Howe misappropriated Plaintiffs' funds and destroyed Plaintiffs' investments by *inter alia*:  (i) diverting stem cells from the clinical trials to a controversial but highly lucrative medical tourism in Mexico with recruited U.S. patients; (ii) selling Stemedica stem cells for quick profits to entities in Mexico, China, and Kazakhstan; and (iii) failing to provide promised funds and resources to CardioCell.

Defendants' scheme spanned many years, targeted multiple victims (including Plaintiffs) and consisted of 20 different repeated predicate acts and wrongdoing.  In essence, the scheme involved a pattern of using legitimate intellectual property and stem-cell technologies as a bait to entice unsuspecting investors and then eliminate the investors by claiming unsuccessful investments, while using the stem cells for quick profits (instead of clinical trials), and retaining the technologies as a bait for the next round of fraud.  Astoundingly, despite raising close to $200 million, Stemedica failed to commercialize a single product in two decades.

This scheme and wrongdoing specifically targeted and harmed Plaintiffs by fraudulently inducing and intentionally destroying their $20 million investment. Plaintiffs thus sufficiently allege claims against Defendants for:  (a) violations of RICO under 18 U.S.C. §§ 1962(c) and 1962(d); (b) fraudulent inducement; (c) breach of fiduciary duty; (d) aiding and abetting a breach of fiduciary duty; (e) fraudulent concealment; (f) aiding and abetting fraudulent transfer; and (g) unjust enrichment.

Defendants mischaracterize Plaintiffs' claims and the alleged damages in order to argue that: (a) the RICO claims are not timely because Plaintiffs should have known about their injury before the limitations period; (b) Plaintiffs lack standing to bring RICO claims because their claims are derivative and Plaintiffs have not plausibly alleged proximate causation; (c) Plaintiffs failed to allege fraud because statements about the technology were true; (d) Plaintiffs did not plausibly allege a pattern of racketeering for the RICO claims; (e) the fraud and fiduciary duty claims are untimely; (f) Plaintiffs fail to plausibly state claims for fraudulent inducement,

fraudulent concealment, breach of fiduciary duty, fraudulent transfer, and unjust enrichment.  Defendants are wrong on all points.

*First*, Plaintiffs allege the RICO claims are timely.  It is undisputed that the limitations period for RICO claims is four years, that there is a tolling agreement as of June 24, 2021, and that Plaintiffs commenced this action before the tolling agreement's expiration date.  Defendants do not claim that Plaintiffs actually knew of their injury, the destruction of their investment through Defendants' scheme, prior to June 24, 2017, but rather that Plaintiffs should have investigated and known.  This is wrong.  Plaintiffs explicitly allege they did not suspect their potential injury until July 2018 (when the critical need for stem cells and funds first arose) and did not know about the actual injury until September 2019 (when a critical payment was not made and the injury was sustained).

Moreover, the question of when Plaintiffs should have known about their injury is a factual issue not appropriate on a motion to dismiss.  Plaintiffs' allegations about Defendants' bad acts are irrelevant because Defendants persuaded Plaintiffs those acts were not problematic, which constitutes fraudulent concealment tolling the limitations period.  Further, the knowledge of isolated bad acts did not reveal the fraud against Plaintiffs and did not put Plaintiffs on notice that Defendants intended to destroy multi-billion-dollar products and wipe out Plaintiffs' investment.  Importantly, Plaintiffs alleged that, even after July 2018, Defendants made false promises.  Plaintiffs' RICO claims and the other fraud-based claims are thus timely.

*Second*, Plaintiffs have standing to bring direct claims against Defendants for the intentional destruction of their $20 million investment as a result of Defendants' actions targeting Plaintiffs directly and individually and inducing them to invest in multiple subsidiaries and then to roll all of their interest into CardioCell by entering into an Equity Exchange Agreement.  Plaintiffs' injuries are thus further distinct from those of CardioCell.  The fact that CardioCell has claims does not deprive Plaintiffs of their direct claims, particularly, where, like here, Defendants' use of CardioCell

was part of the scheme.  For these reasons, Plaintiffs' claims are direct claims.

*Third,* the fraud here was about Defendants' intentions and promises, and not about the technology's potential.  Plaintiffs plausibly allege a direct relationship between their injury and Defendants' wrongdoing, which is more than sufficient to meet the flexible proximate causation standard.

*Fourth,* the 100-page FAC, detailing over 20 repeated predicate acts over more than ten years, is sufficient to plausibly allege a pattern of racketeering.

*Finally,* the remaining state law claims and their elements are all plausibly alleged.  These claims are timely and direct just like the RICO claims. The allegations explain the various factual issues incorrectly raised by Defendants.  And this Court has recently denied motions to dismiss unjust enrichment claims (like those here). .

Accordingly, the Court should deny Defendants' Motion.  And, if the Court grants any part of the Motion, Plaintiffs should be permitted to replead.

## II.    RELEVANT FAC ALLEGATIONS

### A. Defendants And Their Fraudulent Scheme

Defendants Roger Howe, Maynard Howe and Nikolai Tankovich were Stemedica executives and Stemedica-appointed members of CardioCell's board in the relevant time period.  FAC ¶¶ 54-55, 57.  They made false statements to Plaintiffs to initially induce them to invest in Stemedica subsidiaries, including CardioCell (*id.* ¶¶ 419-426) and later to roll all of their interest in the subsidiaries into CardioCell as to facilitate Plaintiffs' elimination.  *Id.* ¶¶ 427-439.  This was part of Defendants' fraudulent scheme to entice investors and misappropriate their investments.  *Id.* ¶¶ 488-515.  The Howe brothers and Tankovich also concealed the fraud from Plaintiffs by making false statements to prevent Plaintiffs from discovering the truth.  *Id.* ¶¶ 454-465.  Defendants Dirk O'Hara and Craig Carlson were Stemedica executives and Stemedica-appointed members of CardioCell's board in the relevant time period (*id.* ¶¶ 58-60), who also participated in this fraudulent scheme.  *See, e.g., id.* ¶¶ 488-515.

## B. Defendants Induced Plaintiffs' Investment By Making False And Misleading Statements Directly To Plaintiffs

The Howe brothers and Nikolai Tankovich induced Plaintiffs directly to invest $20 million in CardioCell and other Stemedica subsidiaries.  *Id.*  ¶¶ 419-426. Specifically, during various in-person meetings and phone calls in 2013 and 2014, they represented to Plaintiffs that:  (i) CardioCell had the exclusive worldwide license for the cardiovascular indication and stem cell manufacturing know-how; (ii) CardioCell had $35 million of stem cells at its disposal and did not have to manufacture any stem cells for the duration of the clinical trials; (iii) CardioCell was projected to generate billions of dollars upon the commercialization of the cardiovascular product; and (iv) Stemedica would contribute cash to CardioCell to fund the clinical trials as Stemedica's purported negotiations would result in successful business partnerships and new investments.  *Id.* ¶¶ 144-151, 421.

The Howe brothers and Tankovich made these misrepresentations with the intent to destroy CardioCell and wipe out Plaintiffs, by not honoring their commitments.  *Id.* ¶¶ 10, 422-424.  Plaintiffs justifiably relied on these statements and invested $20 million.  *Id.* ¶ 425.  As a direct and proximate result of Defendants' fraudulent acts, Plaintiffs lost their entire investment.  *Id.* ¶426.  The Howe brothers and O'Hara made similar statements in 2018 to induce Plaintiffs to roll their interest in other Stemedica subsidiaries into CardioCell to further facilitate Plaintiffs' elimination and the destruction of their investment.  *Id.* ¶¶ 218-269, 427-439.

## C. Defendants Made Affirmative Statements To Conceal Ther Fraud

Plaintiffs had no reason to doubt Defendants' promises to work with CardioCell on completing the clinical trials and commercializing the technology, including by providing stem cells and funding.  *Id.* ¶ 153.  On the contrary, Plaintiffs understood the stem-cell technology and realized the value of CardioCell's upcoming therapeutic products, which had the potential to change people's lives and generate billions of dollars.  *Id.* ¶ 152.  Plaintiffs' trust in the technology further solidified

when CardioCell completed the 2016 Phase IIa CHF clinical trial and generated unprecedented clinical data with Plaintiffs' initial $5M investment. *Id.* ¶ 96.

However, Plaintiffs had no way of knowing that Defendants planned to deprive CardioCell of stem cells and funds and compromise the 2018 Phase IIb clinical trial, which was critical for the product commercialization and CardioCell's survival. *Id.* ¶¶ 99, 157. Given the groundbreaking studies, CardioCell would have been able to complete the clinical trial and succeed but for Defendants' actions. *Id.* ¶ 99, 109.

Between 2014 and 2017, the Howe brothers and Tankovich continued to represent that Stemedica would provide stem cells and funds to CardioCell. *Id.* ¶ 176. In 2016, Tankovich represented to Leshkov that Stemedica and its subsidiaries still were a great investment and that, if Leshkov bought 200,000 Stemedica shares from Tankovich, Leshkov could easily double his investment. *Id.* ¶ 177. In 2017, when Leshkov raised concerns about Stemedica's promise to contribute funds, Tankovich falsely stated that all subsidiaries had tremendous value. *Id.* ¶ 178. To prevent Leshkov from taking any action, Tankovich also falsely stated that the subsidiaries were so valuable that Tankovich's Wall Street friend could sell Leshkov's stake in "a flash." *Id.* Because Leshkov considered Tankovich a personal friend, he trusted Tankovich implicitly. *Id.* ¶ 179. Tankovich's repeated affirmative statements thus dispelled any doubt that CardioCell would succeed. *Id.*

Plaintiffs had no reason to believe that Defendants intended to destroy CardioCell and Plaintiffs' investment by depriving it of funds and stem cells. *Id.* ¶¶ 180, 125-128. Each time Plaintiffs raised concerns about funds and stem cells, the Howe brothers and Tankovich promised Plaintiffs that Stemedica would fund CardioCell upon receiving money from investors. *Id.* ¶ 181. However, when CardioCell's need for critical funds and stem cells arose in the summer of 2018, Defendants failed to fulfill their promise. *Id.* ¶¶ 181, 125-128. As such, the first time Plaintiffs had a reason to suspect that their investment may be potentially destroyed was in July 2018, when Plaintiffs realized that Stemedica may not contribute stem

1  cells and funds for the clinical trial. *Id*. ¶ 182.

2       After July 2018, Defendants continued to conceal their fraudulent actions and

3  intent to destroy Plaintiffs' investment.  On September 6, 2018, Stemedica's CEO,

4  Craig Carlson, emailed CardioCell's CEO, Sergey Sikora, falsely representing that

5  Stemedica would meet 77% of CardioCell's stem cell request by end of May 2019.

6  *Id*. ¶ 127.  Carlson did not fulfill his promise.  *Id*. ¶ 128.

7       Similarly, Defendants continued to promise they would help fund

8  CardioCell's upcoming clinical trial.  To that end, in January 2019, Stemedica and

9  CardioCell entered into a Sublicense Agreement, pursuant to which CardioCell

10 agreed to sublicense its Chinese cardiovascular rights to Stemedica for use by JZT.

11 *Id*. ¶ 23.  Stemedica again agreed to provide the funds that CardioCell needed to

12 complete its clinical trials.  *Id*.  Stemedica failed to make the $250,000 payment on

13 September 24, 2019, as promised.  *Id*. ¶ 289.  Clearly, Plaintiffs would not have

14 invested in CardioCell if they knew Defendants' plan to destroy CardioCell by

15 depriving it of the funds, stem cells, and know-how.  *Id*.  ¶ 155.  Defendants' fraud

16 and continuous concealment of the fraud thus caused tremendous harm to Plaintiffs,

17 including the loss of Plaintiffs' investment.  *Id*. ¶¶ 34-35.

18 ### D. Defendants' Fraudulent Enterprise Spanned More Than Two Decades
19 ### And Targeted Multiple Unsuspecting Investors

20      Since its inception in 2003, Stemedica has raised close to $200 million. FAC

21 ¶ 393. Despite this staggering investment amount, Stemedica has commercialized

22 zero stem-cell products. This is because, instead of commercializing products and

23 expanding the business, which takes effort and resources, Defendants (with their

24 coconspirators) concocted a fraudulent enterprise for quick and easy profits,

25 including participating in medical tourism in Mexico and selling stem cells

26 internationally. *Id.* ¶¶ 488-515.

27      Defendants' fraudulent enterprise was structured in a way that used

28 Stemedica's valuable technologies and promises to commercialize multi-billion-

dollar stem cell products as bait for unsuspecting investors and then misappropriate the investments and eliminate the investors under false pretenses while keeping the technology as a bait for the next round of investors.  *Id*.  ¶ 494.

Defendants employed this pattern of fraudulent activity against Plaintiffs. Between 2013 and 2025, the Howe brothers, Tankovich and/or their coconspirators: (i) participated in multiple acts of mail and wire fraud, extortion and bribery, (ii) caused Plaintiffs to invest $20 million under false pretenses, give up their interest and veto power in various valuable Stemedica subsidiaries and exchange their subsidiaries' shares for CardioCell shares, and (iii) repeatedly caused Stemedica to breach contracts with CardioCell in furtherance of a scheme to wipe out Plaintiffs' investment while retaining the technology.  *See*, *e.g., id*.  ¶¶ 5, 488-515.

As detailed herein, Plaintiffs only discovered the fraudulent scheme in July 2018 when the need for stem cells arose, and Plaintiff had a reason to suspect that Stemedica may not supply stem cells for CardioCell's clinical trial. FAC ¶¶ 15, 409. Defendants continued to falsely promise funds and stem cells.  *Id*. ¶¶ 23, 127-128, 289.  Then, in September 2019, when Stemedica actually failed to make the promised critical $250,000 clinical trial payment, Plaintiffs knew Defendants would act to destroy their investment.  *Id*. ¶ 289.

The parties signed a Tolling Agreement in June 2021, which was extended six times, resulting in a tolling period from June 24, 2021 to February 28, 2025.  *Id*. ¶¶ 410-418.  Plaintiffs filed the original complaint on February 27, 2025, prior to the end of the tolling period.  Dkt. 1.  Plaintiffs subsequently supplemented their allegations and filed the FAC on May 30, 2025.  Dkt. 32.  Defendants filed a motion to dismiss the FAC on June 13, 2025.  Dkt. 38.  At the parties' request, the Court subsequently extended the deadlines for Plaintiff's opposition to July 17, 2025, and Defendants' reply to August 1, 2025.  Dkt. 45.  Plaintiffs are filing this opposition in accordance with the Court's order.

## III.   LEGAL STANDARD

On a motion to dismiss, a complaint needs only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To assess plausibility, "the court must take all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023). As demonstrated below, Plaintiffs sufficiently and plausibly pleaded facts to state all claims against Defendants.

## IV.   LEGAL ARGUMENT

### A.  Plaintiffs' RICO Claims Are Timely

#### 1.  The RICO Claims Are Not Time-Barred

Plaintiffs plausibly allege that their RICO claims under 18 U.S.C. § 1962(c) (claim 9) and 18 U.S.C. § 1962(d) (claim 10) are timely. The statute of limitation for a RICO claim is four years. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) (RICO claim timely). The Ninth Circuit follows the "injury discovery" rule, which provides that a RICO claim accrues when a plaintiff knows or should have known about their injury. *See, e.g.*, *Stitt v. Williams,* 919 F.2d 516, 525 (9th Cir.1990) ("The limitations period [for civil RICO] begins to run when a plaintiff knows or should know of the injury which is the basis for the action."); *see also Borrego Community Health Foundation v. Inland Valley Investments, LLC,* No. 21-cv-01417-AJB-AGS, 2023 WL 2518844, at *3 (S.D. Cal. Mar. 13, 2023) (RICO claims timely); *Maye v. Online Land Sales LLC*, No. 2:23-CV-00173-DAD-CKD, 2024 WL 382294, at *5 (E.D. Cal. Feb. 1, 2024), *report and recommendation adopted*, No. 223CV00173DADCKD, 2024 WL 755809 (E.D. Cal. Feb. 23, 2024) (same); *In re Wells Fargo Insurance Marketing and Sales Practices Litig.,* No. SAML 17-02797 AG, 2018 WL 9536803, at *3 (C.D. Cal. Dec. 14, 2018) (same).

Further, the Ninth Circuit recognizes a "second part of the 'injury discovery'

rule" that is called the "separate accrual rule" which provides that "a cause of action accrues when new overt acts occur within the limitations period, even if a conspiracy was formed and other acts were committed outside the limitations period." *Grimmett v. Brown*, 75 F.3d 506, 510-512 (9th Cir. 1996) (citation omitted); *see also Turrey v. Vervent, Inc.*, No. 20-CV-0697 DMS (AHG), 2023 WL 3028079, at *2, *3 (S.D. Cal. Apr. 20, 2023) ("The separate accrual rule requires 'new and independent acts' which involve 'new and accumulating injury.' []. Each collection effort by Defendants was a distinct choice constituting a new and independent act, and each monetary collection allegedly inflicted new injury. The Court, therefore, need not decide which event triggers the limitations period for Plaintiffs because all alleged events fall within the Class timeframe."); *MD Helicopters, Inc. v. Aerometals, Inc.,* No. 2:16-cv-02249-TLN-AC, 2021 WL 978953, at *6 (E.D. Cal. Mar. 16, 2021) ("Ninth Circuit has also adopted the 'separate accrual rule,' under which "a new cause of action accrues for each new and independent injury, even if the RICO violation causing the injury happened more than four years ago.") (cleaned up).

Here, the FAC alleges that Plaintiffs' injury was that their multi-million-dollar investment was destroyed. FAC ¶¶ 3, 53, 366, 494, 505, 514. Plaintiffs were not aware of this potential injury until July 2018 when they realized that Defendants (through Stemedica) were "not planning to provide the funds and stem cells necessary for the critical clinical trials and instead [were] prioritizing delivery of stem cells to other companies." *Id.* ¶¶ 15, 182, 409. The FAC also alleges that, notwithstanding that realization, after July 2018, Defendants continued to mislead Plaintiffs and promise funds and stem cells. *Id.* ¶¶ 23, 127-128, 289. The FAC is clear that Defendants actually caused harm leading to the destruction of Plaintiffs' investment in September 2019, when Stemedica failed to make the promised $250,000 clinical trial payment, which was critical for CardioCell's survival. *Id.* ¶ 289. Thus, the first time Plaintiffs had a reason to suspect they might suffer the damage of the complete destruction of their investment was in July 2018. This belief was concretized in

September 2019. The FAC also clearly alleges that there was a binding tolling agreement between Plaintiffs and Defendants that was effective from June 24, 2021 through February 28, 2025. *Id.* ¶¶ 410-418. The original complaint was filed on February 27, 2025. ECF 1. Thus, in order to be timely, the RICO claim needs to have accrued on June 24, 2017, or later. The FAC alleges accrual in either July 2018 or September 2019. Either way, the claims are timely. *See, e.g., Borrego,* 2023 WL 2518844, at *3 (the complaint "read with the required liberality, plausibly shows that the RICO claim is not time barred, the Court declines to dismiss this claim on statute of limitations grounds."); *see also Turrey*, 2023 WL 3028079, at *3.

Defendants nevertheless incorrectly argue that since Plaintiffs knew of some of Defendants' wrong acts before the limitations period, they should have investigated those acts and discovered the injury, which Defendants incorrectly claim is the "diminution in value of their investment." Mot. 7. Defendants are wrong. First, the injury alleged by Plaintiffs is not the "diminution" or fluctuation in value of Plaintiffs' investment but, the destruction of the investment. FAC ¶¶ 3, 53, 366, 505. Second, Defendants failed to meet the standard, which requires knowledge of the injury and not knowledge of wrongful acts. Third, the allegations are clear that until July 2018, Defendants represented they would honor their commitments to Plaintiffs' investment. *See, e.g., id.* ¶¶ 176-180. Plaintiffs thus allege they had no reason to believe Defendants were conspiring to destroy their investment until July 2018 at the earliest. *Id.* ¶ 182.

Defendants cite no case finding a RICO claim untimely in a similar situation, and certainly not a motion to dismiss. In fact, unlike here, their cited cases involve plaintiffs who knew about the injury. *See, e.g., Evans v. Ariz. Cardinals Football Club, LLC,* 761 App'x 701, 703 (9th Cir. 2019) ("[P]laintiffs knew, or should have known, of their primary business injury—that their careers had been 'cut short'— when their respective playing careers ended. All seven RICO plaintiffs alleged that their careers ended prematurely after suffering significant physical injuries."); *Pincay*

*v. Andrews,* 238 .3d 1106, 1110 (9th Cir. 2001) (Plaintiff received "written disclosure of [the] purported injury."); *Grimmett,* 75 F.3d at 511 (Plaintiff "concedes" that "she knew of her injury" prior to the limitations period.).

In any event, the Ninth Circuit applies the "separate accrual rule" and Plaintiffs have alleged many predicate acts causing injury in 2018-2020. *See, e.g.*, FAC ¶¶ 203-316, 503. These predicate acts that injured Plaintiffs are sufficient under the separate accrual rule to preserve the RICO claims (if necessary). *See, e.g., Gianelli v. Schoenfeld*, No. 221CV0477JAMKJNPS, 2021 WL 5154163, at *2 (E.D. Cal. Nov. 5, 2021) (granting "leave to amend to assert any RICO claims based on acts occurring after [] 2016, that fall within RICO's 'separate accrual rule'"); *see also Turrey*, 2023 WL 3028079, at *2; *MD Helicopters,* 2021 WL 978953, at *6 ("Plaintiff alleges numerous specific instances of mail fraud that arguably fall within the statute of limitations under the separate accrual rule").

Thus, Plaintiffs' RICO allegations are not barred by the Statute of Limitations.

## 2. The Question Of When Plaintiffs Should Have Known About The Injury Is Not Proper On A Motion To Dismiss

Defendants argue that the claims are not timely because Plaintiffs should have known about the fraud before July 2018. Mot. 7-12. However, Defendants ignore the binding law that "'[T]he question of whether a plaintiff knew or should have become aware of a [RICO] fraud' is ordinarily left to the jury." *Cohen v. Trump,* 13–cv–2519–GPC–WVG, 2014 WL 690513, at *5 (S.D. Cal. Feb. 21, 2014) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co*., 431 F.3d 353, 365 (9th Cir.2005)); *see also Turrey v. Vervent, Inc.,* No. 20-cv-697-DMS-AHG, 2025 WL 622612, at *3 (S.D. Cal. Feb. 26, 2025) (same); *Merck & Co. v. Raynolds,* 559 U.S. 633 (2010) ("The question of when the plaintiff should have discovered the injury is a factual question not usually appropriate for resolution on a motion to dismiss."). Courts in the Ninth Circuit routinely hold that whether a plaintiff was on inquiry notice is a question of fact not usually appropriate or a motion to dismiss. *See, e.g.*,

*Petrus v. New York Life Ins. Co.*, No. 14-cv-2268-BAS-JMA, 2016 WL 1255812, at *7 (S.D. Cal. Mar. 31, 2016) (whether plaintiff was on inquiry notice is a question of fact not resolvable at the pleading stage); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1026 (S.D. Cal. 2005) (inquiry notice is a two-step, fact-specific analysis" that "cannot be determined on a pre-discovery motion to dismiss"). Further, "statute of limitations disputes are 'rarely appropriate for resolution at the motion to dismiss stage.'" *Frasco v. FLO Health, Inc., et al.,* No. 3:21-cv-00757-JD, 2022 WL 21794391, at *2 (N.D. Cal. June 6, 2022).

Here, Plaintiffs allege that they were not aware that Defendants had fraudulently induced them to invest or that Defendants planned to destroy CardioCell and wipe out Plaintiffs' investment until at least July 2018, when the need for stem cells and funds arose for the first time. FAC ¶¶ 15, 409. Moreover, the allegation of bad acts (i.e., supplying some stem cells to others, not meeting certain milestones, and failure of certain potential business deals) did not mean that Defendants would actually cause Stemedica to fail to supply stem cells for the critical clinical trial and otherwise destroy multi-billion-dollar products, especially given Defendants' repeated promises to the contrary. Cf. *Vera v. REL-BC, LLC*, 66 Cal. App. 5th 57, 69 (2021) ("The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected *or should have suspected* that an injury was caused by wrongdoing."). In sum, Plaintiffs have clearly alleged that they could not have known about Defendants' intentions and plans. In fact, even after July 2018, defendant Craig Carlson continued to represent that Stemedica "would meet 77% of CardioCell's request in approximately nine months by end of May 2019." FAC ¶ 127.

Defendants' Delaware case (*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 964 (Del. Ch. 1996)) about the duties of directors to oversee corporate operations is not relevant to the determination of when Plaintiffs here should have been aware of their loss under the "injury discovery" rule, and Defendants cite no

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS
MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA

case showing its relevance to the injury discovery rule.  Thus, Plaintiffs sufficiently allege they did not know and could not have known their injury before July 2018.

### 3.  The Limitations Period Is Tolled Due To Fraudulent Concealment

Finally, Plaintiffs' claims are timely since the FAC alleges fraudulent concealment which tolls the limitations period.  FAC ¶¶ 454-465.  Indeed, the FAC alleges that Plaintiffs diligently inquired about bad acts, but Defendants fraudulently concealed their scheme and prevented Plaintiffs from discovering the truth.  This fraudulent concealment is yet another reason to deny the Motion.  *Id.*

The Ninth Circuit has held that the statute of limitations "may be tolled if the defendant fraudulently concealed the existence of a cause of action in such a way that the plaintiff, acting as a reasonable person, did not know of its existence."  *Maye*, 2024 WL 382294, at *4 (finding that the RICO claim was timely and holding that "the complaint adequately pleads defendants' affirmative acts to mislead plaintiff in support of their alleged fraudulent concealment of the civil RICO claim"); *see also Raya v. Barka*, No. 19-CV-2295-WQH-AHG, 2022 WL 901557, at *18 (S.D. Cal. Mar. 28, 2022) (allegations of "sufficient facts to support an inference that fraudulent concealment tolled the statute of limitations until January 2019, when Plaintiff allegedly became aware of the fraudulent nature of the 401(k) Plan document [].").

Here, Plaintiffs (like the plaintiffs in *Raya* and *Maye*) allege sufficient facts detailing Defendants' false statements, which were designed to mislead Plaintiffs and prevent them from discovering that Defendants planned to destroy CardioCell and wipe out Plaintiffs' investment.  *See, e.g.*, FAC ¶¶ 176-180, 454-465.

Indeed, the FAC alleges that Plaintiffs inquired about bad acts but Defendants fraudulently concealed the truth.  *See, e.g.*, FAC ¶ 12 (After the Astra Zeneca deal did not materialize and Stemedica did not contribute funds to CardioCell, the Howe brothers and Nikolai Tankovich "continued to assure Plaintiffs that Stemedica would help fund CardioCell's clinical trials and provide stem cells as promised"); *id.* ¶¶ 376-377 (After Plaintiffs raised concerns about the Tiara action, Roger Howe and

Nikolai Tankovich stated that "the allegations were baseless and that the lawsuit would be dismissed"); *id*. ¶ 463 ("When Defendants' bad acts started coming to light in July 2018 and CardioCell's CEO confronted Defendants about their failure to provide stem cells for CardioCell's clinical trials, Defendants made affirmative statements that the stem cells will be provided and that CardioCell and Plaintiffs had nothing to worry about."). Defendants' fraudulent concealment as alleged in the FAC thus tolled the limitations period, and the RICO claims are timely.

## B. Plaintiffs Sufficiently State RICO Claims

To state a claim under Section 1962(c), a plaintiff must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, No. CV-203444-DMGPVCX, 2021 WL 6104163, at *2 (C.D. Cal. Aug. 30, 2021) (denying a motion to dismiss a RICO claim where plaintiff alleged fraudulent diversion of clients). Section 1962(d) prohibits conspiracy to violate subsection (c). *See* 18 U.S.C. § 1962(d).

Here, Plaintiffs allege (1) Defendants' conduct in creating (2) a fraudulent enterprise structured in a way that showed (3) a pattern of (4) racketeering activity, involving at least 20 repeated predicate acts (including mail and wire fraud, extortion and bribery) and otherwise improperly using Stemedica's technologies and falsely promising to commercialize multi-billion-dollar stem cell products as a bait for investors and then misappropriating the investments, and eliminating the investors under false pretenses, while keeping the valuable technology as a bait for the next round of new investors. FAC ¶¶ 488-506 (18 U.S.C. § 1962(c)). Plaintiffs also allege that Defendants raised close to $200 million through the fraudulent enterprise but did not commercialize a single product. *Id*. ¶¶ 1-6, 393. Plaintiffs further allege that Defendants conspired to commit said violations. *Id*. ¶¶ 507-515 (18 U.S.C. § 1962(d)). Plaintiffs thus sufficiently pleaded their RICO claims.

Defendants argue that Plaintiffs fail to state RICO claims because it did not plausibly allege: (a) standing; (b) proximate cause; (c) the underlying fraud; and (d)

a RICO pattern.  Defendants are wrong on all points as explained below.

### 1.  Plaintiffs Sufficiently Allege RICO Standing

Defendants argue that Plaintiffs have not plausibly alleged standing to assert their RICO claims because Plaintiffs' alleged injury was derivative of injuries to CardioCell. Mot. 13-15.  This argument fails.  Plaintiffs allege that Defendants were injured because the RICO enterprise fraudulently enticed them to invest $20 million dollars under false pretenses, misappropriate their funds and then eliminate them. *See, e.g.*, FAC ¶¶ 2, 4, 5, 494.  The FAC is replete with specific allegations about actions taken towards Plaintiffs specifically.  *See, e.g.*, *id.* ¶¶ 419-439, 454-465.  The allegation is that CardioCell itself was set up as investor bait to raise millions of dollars.  *See, e.g., id.* ¶¶ 5, 12, 143, 158, 241, 342, 494.  Plaintiffs were enticed not just to invest but also as individuals to enter an Equity Exchange Agreement with defendant Stemedica which was part of Defendants' scheme.  *Id.* ¶¶ 218-269. Plaintiffs' injuries were direct and independent of those suffered by CardioCell as summarized, for example, in paragraph 35 of the FAC:

> Plaintiffs were directly damaged by Defendants' actions because Defendants manipulated Plaintiffs in a unique way and caused them to increase their investment to $20 million by creating the impression that Plaintiffs were investing in a diverse portfolio of four Stemedica subsidiaries, each focused on different stem cell indication and different multi-billion-dollar product, including cardiovascular and skin therapeutic products. Defendants subsequently persuaded Plaintiffs that it was in Plaintiffs' best interest to roll all of their interest into CardioCell by exchanging their subsidiaries' shares for CardioCell shares. Defendants then collapsed CardioCell and eliminated Plaintiffs from the picture. Importantly, before Plaintiffs invested in CardioCell, CardioCell had no funds, so Plaintiffs' investment was the one used to establish CardioCell and generate the valuable clinical data and launch the clinical trials. No other CardioCell shareholder was targeted, manipulated, and damaged like Plaintiffs. *Id.* ¶ 35.

These allegations are sufficient to plausibly allege standing for a direct and independent claim. *See, e.g., Phan v. Best Foods, Int'l Inc.,* No. C 14–0888 RS, 2014

WL 1677526, at *5 (N.D. Cal. April 28, 2014) (plaintiff had standing for RICO claim where injury is "unique to plaintiff in particular"); *see also Just Film, Inc. et al. v. Merchant Services, Inc.,* No. C 10–1993 CW, 2010 WL 4923146, at *15 (N.D. Cal. Nov. 29, 2010) (shareholders had standing to bring individual RICO claim); *Gatz v. Ponsoldt*, 925 A.2d 1265, 1278 (Del. 2007) (shareholders can assert direct claims if they are harmed uniquely and individually); *KZ Capital General Trading LLC v. Petrossov*, No. 2020-0750-PAF, 2022 WL 293011, at *6 (Del.Ch. Jan. 31, 2022) (shareholder claims, alleging economic and control dilution, can be asserted directly); *Maiz v. Virani*, 253 F.3d 641, 655 (11th Cir. 2001) ("simply because the plaintiff is a shareholder of a corporation, it does not necessarily follow that he lacks standing to seek RICO damages in his own right.").

The fact that CardioCell was used as investor bait by Defendants to harm Plaintiffs does not provide Defendants with a shield from claims by Plaintiffs. In an analogous case, *Burnett v. Rowzee*, No. SA CV 07-641DOCANX, 2007 WL 2735682 (C.D. Cal. Aug. 28, 2007), the court found: "Plaintiffs have standing to assert their individual claims for the money they invested in the PIPES Ponzi scheme via Harvest Income. Harvest Income was not a legitimate LLC, but simply a vehicle through which Harvey solicited investments in the PIPES Ponzi scheme." *Id.* at *9. Here, too, CardioCell was a vehicle through which Defendants solicited investments as part of their scheme. Accepting Defendants' argument and shielding Defendants from their fraudulent scheme by a formality would create a perverse situation, which would defeat the rule's intended purpose.

While Plaintiffs' injuries are clearly distinct from injuries suffered by CardioCell, it is certainly the case that CardioCell also has independent claims against Defendants. However, "the mere presence of an injury to the corporation does not necessarily negate the simultaneous presence of an individual injury." *Natomas Gardens Investment Group, LLC v. Sinadinos,* No. CIV. S–08–2308 FCD/KJM, 2009 WL 1363382, at *12 (E.D. Cal. May 12, 2009) (standing for RICO

claim because they had a "distinct" injury and were "uniquely situated" to bring their claims).    Here, Plaintiffs allege: (i) a fraudulently induced $20 million dollar investment that is independent of any claim by CardioCell; (ii) Defendant's fraudulent actions directed against Plaintiffs; and (iii) a fraudulently induced Equity Exchange Agreement signed by Plaintiffs.    In these circumstances, Plaintiffs have more than plausibly alleged RICO standing.

The cases cited by Defendants are different from this action in that they have no specific acts targeting the plaintiffs, no independent injury, and no fraudulently induced signed contracts.    *See, e.g., Uthe Tech. Corp. v. Aetrium Inc.*, 739 F. App'x 903, 906 (9th Cir. 2018) (summary judgement case where the court found no standing as plaintiff's claim "was based on a derivative injury, namely that the Conspirators stole [Plaintiff's] customers and thus harmed [Plaintiff's] business, thereby reducing the value of [Plaintiff's] stock, and harming [Plaintiff] itself when [Plaintiff] sold its shares"); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640–41 (9th Cir. 1988), *abrogated by Smith v. Spizziri,* 601 U.S. 472 (2024) (no standing where plaintiffs – guarantors of bonds – alleged only "a fraud on the corporation," and no "distinct" injury, and no "special relationship" as to plaintiffs).

### 2. Plaintiffs Sufficiently Allege Proximate Causation

Defendants argue that Plaintiffs have not alleged proximate causation because they allege that Defendants' acts destroyed both CardioCell and Plaintiffs' investment.  Mot. 15-16.  Defendants are wrong.  There is no question that Plaintiffs sufficiently allege proximate causation for the RICO claims.  *See, e.g.*, FAC ¶ 505 ("As a direct and proximate result of Defendants' pattern of racketeering activities and violations of 18 U.S.C. § 1961(1), Plaintiffs have been injured in their business and property at least in that Plaintiffs lost their $20 million investment."); *see also id.* ¶¶ 506, 514, 515.  The FAC also contains extensive allegations about the various predicate acts that caused the destruction of Plaintiffs' investment.  *See, e.g., id.* ¶¶ 488-506.  These allegations are sufficient to plausibly allege proximate causation.

The Supreme Court has held that proximate causation for a RICO claim exists if there is "some" direct relation between the injury asserted and the injurious conduct alleged and not where such connection is "attenuated" to the extent that the loss could have resulted from "other factors." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459, 465 (2006). The Supreme Court further exemplified the "flexible" nature of the standard when holding that "plaintiff asserting a RICO claim predicated on mail fraud need not [even] show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008). Thus, "the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 133 (2014). It "demand[s] ... some direct relation between the injury asserted and the injurious conduct alleged." *Medimpact Healthcare Systems, Inc. v. IQVIA Inc.,* No. 19cv1865-GPC(LL), 2020 WL 5064253, at *24 (S.D. Cal. Aug. 27, 2020) (proximate causation sufficiently alleged); *see also Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1259 (9th Cir. 2019) (proximate causation as damages "are not too far removed" from Defendant's actions). Plaintiffs thus sufficiently allege proximate causation given the relatively low flexible pleading standard and the FAC detailing how Defendants' actions and scheme resulted in Plaintiffs' $20 million loss.

Defendants' cited cases agree as they too stand for the proposition that proximate causation for RICO claims should be found unless the link is "too remote," "purely contingent," or "indirect," which is not the case here. *See e.g.*, *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 11 (2010) (no proximate causation because the conduct directly causing the harm to city was distinct from the conduct giving rise to the alleged predicate acts of fraud)); *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1119 (9th Cir. 2017) (no proximate causation where two processors relied on the

misrepresentations and went on to improperly debit class members' bank accounts without permission, but the account at issue was not even debited).

### 3. Plaintiffs Sufficiently Allege Underlying Fraud

Defendants also argue that there was no fraud because the alleged false statements about the technology were true. Mot. 16-18. This argument is wrong as Plaintiffs alleged that Defendants' statements were false "not because their intellectual property was worthless and had no potential, but because Defendants intended to induce the investment under false pretenses and then systematically destroy [the subsidiaries] by depriving them of resources while retaining their valuable intellectual property." FAC ¶¶ 10, 150-151, 164-165, 168, 222-223.

### 4. Plaintiffs Sufficiently Allege A RICO Pattern

Finally, Defendants argue that Plaintiffs did not allege a pattern of racketeering activity. Mot. 18-19. Defendants are wrong again. A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years …." 18 U.S.C. § 1961(5). A pattern also requires the showing of a relationship between the predicates, and continuity (either of past, closed-ended activity or open-ended future activity), rather than sporadic activity. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Here, Plaintiffs allege that Defendants employed the same pattern of fraudulently targeting investors committing at least 20 predicate acts over ten plus years, some of which were in 2018-2021. FAC ¶¶ 371-380, 488-515. Plaintiffs also allege that those acts were related and had the common goal of enticing and defrauding investors. *See, e.g.*, *id*. ¶¶ 502-503. This plausibly alleges closed-end continuity. *See, e.g., Carey v. J.A.K.'s Puppies, Inc.*, 763 F. Supp. 3d 952, 989 (C.D. Cal. 2025) (allegations of "related predicate acts demonstrating a long-term scheme to defraud" over 22 months sufficient).

Plaintiffs also allege Defendants' more recent false statements to investors and 2025 transfer of Stemedica's assets to a third party to avoid liability and continue to

defraud under a new brand, clearly indicate a threat of continued open-ended activity, particularly in conjunction with the allegations about the Tiara action. *Id.* ¶¶ 271-280, 381-407; *see also Flamengos Invs., LLC v. Brookwood Cap. Partners LLC*, No. 1:22-CV-489, 2025 WL 1069284, at *5 (S.D. Ohio Apr. 9, 2025) (denying motion to dismiss a RICO claim and finding an open-ended pattern of racketeering, where defendants defrauded investors to purchase properties at inflated prices and then used the proceeds to buy new ones, allowing the open-ended scheme to be repeated, and where two other actions with similar allegations against Defendants bolstered the RICO claim).

Defendants' own cited case supports Plaintiffs' position, because the Supreme Court there found that petitioners could prove that the multiple predicates constitute a pattern of racketeering activity in that they were related by a common purpose and occurred with some frequency in the last 6 years, just like Defendants' wrongful acts had a common purpose of defrauding unsuspecting investors and had continued for the last 10 years. *See H.J.*, 492 U.S. at 250. Thus, Plaintiffs sufficiently alleged a pattern of racketeering activity.

## C. The Court Has Subject Matter Jurisdiction Over the State Law Claims

Because the Court has original Article III jurisdiction over Plaintiffs' federal RICO claims, and those claims are sufficiently pleaded, the Court also has supplemental subject matter jurisdiction to hear the state law claims, which arise from the same facts underlying the RICO claims. *See* 28 U.S.C. § 1367(a).

## D. Plaintiffs' Fraud and Fiduciary Duty Claims Are Timely

Defendants argue incorrectly that the "fraud and fiduciary duty claim" are barred by the statute of limitations because Plaintiffs had inquiry notice of these claims between 2013 and 2017. Mot. 20. The Motion is unclear which claims Defendants argue are barred. Plaintiffs assert no claim for "fraud" but rather claims for fraudulent inducement and concealment. No matter which claims they reference, Defendants make the same failed arguments they made against the RICO claims.

Thus, Plaintiffs incorporate herein their response regarding the RICO claims. *See supra* at IV.A.1. In sum, Plaintiffs: (i) discovered Defendants' scheme (including the fraudulent acts and fiduciary breaches) and the injury flowing from it in either July 2018 or September 2019; (ii) tolled the limitations period through a June 2021 tolling agreement with six amendments with the tolling period ending on February 28, 2025, and (iii) commenced this action before the end of the tolling period.

Plaintiffs' claims are timely because Plaintiffs did not know about the injury until less than three years prior to the tolling period (i.e., the shortest relevant limitations period). Any fraud-based claims under California law would have a 3-year period from discovery (*see* Cal. Civ. Proc. Code § 338(d)) while the fraudulent transfer related claims have a 4-year limitations period from the transfer (*see* Cal. Civ. Code § 3439.09 (a)(1)-(2)). The limitations period for fiduciary duty claims is three years under Delaware law (*see* 10 Del. C. § 8106 (a); *Lebanon Cnty. Employees' Ret. Fund v. Collis*, 287 A.3d 1160, 1219 (Del. Ch. 2022) (equitable tolling for breach of fiduciary duty is available in cases of illegality); *In re Am. Int'l Grp., Inc.*, 965 A.2d 763, 812 (Del. Ch. 2009) (Equitable tolling where a plaintiff "has reasonably relied upon the competence and good faith of a fiduciary. No evidence of actual concealment is necessary in such a case.").

The cases cited by Defendants do not help them as the injury there (unlike here) was discovered within the limitations period. *See Fox v. Ethicon Endo-Surgery, Inc.,* 35 Cal. 4th 797 (2005) (limitations period began when Plaintiff had a reason to suspect that "her injury resulted from a defective product"); *Jolly v. Eli Lilly & Co.,* 44 Cal. 3d 1103, 1110 (1988) (same); *Vera*, 66 Cal. App. 5th at 69 (the rule is that Plaintiffs should have suspected injury and not wrongdoing).

### E. Plaintiffs' State Law Claims Are Sufficiently Stated

#### 1. Plaintiffs State A Claim For Fraudulent Inducement

Under California law, the elements of fraud are: (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its

falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Hinesley v. Oakshade Town Ctr.*, 135 Cal. App. 4th 289, 294-295 (2005). "Fraud in the inducement is a subset of the tort of fraud. It occurs when the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract [like the contract for Plaintiffs' investment here] is formed, which, by reason of the fraud, is voidable." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996). Here, Plaintiffs allege all of the elements of the fraudulent inducement claims, including fraudulent inducement to invest in CardioCell and to enter into the Equity Exchange Agreement (claims 1 and 2). FAC ¶¶ 419-439.

Defendants argue there is no fraud here as Defendants' statements about the technology's potential were true. Mot. 21. As detailed *supra* at IV.B.3, Defendants are incorrect because the alleged fraud was Defendants' false promises they were going to provide stem cells, invest in CardioCell, and try to develop it into a successful company, when they really intended to destroy CardioCell. FAC ¶ 10.

Defendants next argue that there is no adequate allegation of damages since Defendants' false statements did not cause Plaintiffs' damage. Mot. 21-22. Defendants mischaracterize Plaintiffs' claims. The fraud was that, at all times, Defendants intended to destroy Plaintiffs' investment, which did happen and damage Plaintiffs. This is quintessentially fraudulent inducement, as Plaintiffs' "consent is induced by fraud" and leads to a voidable investment. *See Rosenthal*, 14 Cal. 4th at 415. Defendants cite no case to support this argument.

Finally, Defendants argue that it was not reasonable for Plaintiffs to rely on Defendants' statements when entering into the Equity Exchange Agreement. Mot. 22. But, Plaintiffs did allege reliance, and the question of reasonable reliance is a factual inquiry not proper on a motion to dismiss. *See Swafford v. Int'l Bus. Machines Corp.*, 408 F. Supp. 3d 1131, 1146–47 (N.D. Cal. 2019) ("the reasonableness of the reliance is ordinarily a question of fact" appropriate for a jury).

### 2. Plaintiffs State A Claim For Fraudulent Concealment

Plaintiffs sufficiently allege a claim for fraudulent concealment (claim 5). FAC ¶¶ 454-465. Defendants only make various factual arguments to speculate what did and did not happen after July 2018, when Plaintiffs realized for the first time that Defendants may not supply stem cells and funds to CardioCell. Defendants miss the point. Plaintiffs allege that Defendants continuously concealed their intent to wipe out Plaintiffs, and that, even after July 2018, Defendants continued to mislead and confuse. *See supra* at II.C., IV.A.3. Defendants' factual argument that the July 2018 discovery put Plaintiffs on notice not to enter into the subsequent Equity Exchange Agreement is contradicted by Plaintiffs' allegations that Defendants continued to make false statements that they would contribute funds and stem cells, which is why the concealment tolls the limitations period. *See Raya*, 2022 WL 901557, at *17.

### 3. Plaintiffs State Breach Of Fiduciary Duty Claims

Plaintiffs sufficiently alleged a claim for breach of fiduciary duty (claim 3) and aiding and abetting breach of fiduciary duty (claim 4). FAC ¶¶ 440-453. Defendants do not address the claim's elements but argue the same erroneous derivative versus direct claim argument as they did against the RICO claims. Plaintiffs restate herein their response to that argument explaining why it is wrong. *See supra* at IV.B.1.

### 4. Plaintiffs State An Aiding And Abetting Fraudulent Transfer Claim

Plaintiffs sufficiently and plausibly stated a claim for aiding and abetting intentional fraudulent transfer against the Howe brothers and Nikolai Tankovich (claim 10). FAC ¶¶ 480-487. Defendants do not address the claim's elements but only argue that Plaintiffs do not have standing to assert this claim as they are not creditors. Mot. 24-25. Defendants are wrong. Plaintiffs are Stemedica's creditors as they have legal claims against Stemedica about which Defendants have known since June 2021 when they signed the Tolling Agreement (Dkt. 1, 32). *See also* Cal. Civ. Code 3439.04(a) ("transfer made or obligation incurred by a debtor

is voidable as to a creditor"); Cal. Civ. Code 3439.01(c) ("Creditor" means "a person that has a claim".); Cal. Civ. Code 3439.01(b) ("Claim" means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."). The statute clearly includes legal claims even if disputed and not reduced to judgment. Plaintiffs thus have standing to bring a fraudulent transfer claim against Stemedica and a claim for aiding and abetting Stemedica's fraudulent transfer against Defendants.

### 5. Plaintiffs State A Claim For Fraud-Based Unjust Enrichment

Plaintiffs sufficiently plead a fraud-based unjust enrichment claim (claim 12), seeking restitution for the damage caused by Defendants' fraudulent conduct. FAC ¶¶ 525-530. Defendants argue that under California law, there is no such cause of action. Mot. 25. Defendants are incorrect. This Court recently denied a motion to dismiss a similar claim. *See Cosmonova, LLC v. BioFilm, Inc.*, 763 F. Supp. 3d 1157, 1171 (S.D. Cal. 2025) ("Given that the case law is unsettled, the Court DENIES Defendant's motion to dismiss as to Plaintiff's unjust enrichment claim"); *see also McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004) ("[R]restitution may be awarded where the defendant [] obtained a benefit from the plaintiff by fraud [].").

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss Plaintiffs' First Amended Complaint. If the Court grants any part of the Motion, Plaintiffs should be permitted to replead.

Dated: July 17, 2025

RIMÔN P.C.

By: */s/ Michael S. Lazaroff*
Michael S. Lazaroff
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com
(admitted *Pro Hac Vice*)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniel F. Lula
2029 Century Park East
Suite 400N
Los Angeles, CA 90067
Tel: (617) 963-0419
Fax: (213) 375-3811
daniel.lula@rimonlaw.com

Robert Cocchia
RIMON P.C.
3579 4th Avenue
San Diego, CA 92103
Tel: (858) 348-4383
Fax: (213) 375-3811
robert.cocchia@rimonlaw.com

*Attorneys for Plaintiffs*
*Nina Vikhrieva and Sergey Leshkov*

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT OF DEFENDANTS
MAYNARD HOWE, NIKOLAI TANKOVICH, CRAIG CARLSON, ROGER HOWE, AND DIRK O'HARA