Michael S. Lazaroff (Admitted *Pro Hac Vice*, New York State Bar No. 2801579)
RIMÔN P.C.
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com

Daniel F. Lula (California State Bar No. 227295)
RIMÔN P.C.
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
Tel: (617) 963-0419
Fax: (213) 375-3811
daniel.lula@rimonlaw.com

Robert A. Cocchia (California State Bar No. 172315)
RIMÔN P.C.
3579 4th Avenue
San Diego, CA 92103
Tel: (858) 348-4383
Fax: (213) 375-3811
robert.cocchia@rimonlaw.com

Attorneys for Plaintiffs Nina Vikhrieva and Sergey Leshkov

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NINA VIKHRIEVA and SERGEY LESHKOV,<br><br>Plaintiffs,<br><br>v.<br><br>STEMEDICA CELL TECHNOLOGIES, INC.; ZIUZHITANG CO., LTD.; ZHUHAI HENGQIN JIUZHITANG YONGHE QIHANG FUND; JIUZHITANG MAKER (BEIJING) CELL TECHNOLOGY CO., LTD.; MAYNARD A. HOWE; ROGER J. HOWE; DAVID HOWE; NIKOLAI I. TANKOVICH; DIRK P. O'HARA; SIMON GUO; CRAIG W. CARLSON; MICHAEL K. STEINHAUSER; SANOSTEM GLOBAL LLC; DUNIYA SANOSTEM INC.; AND SHIVINDER S. DEOL,<br><br>Defendants. | Case No.: 3:25-cv-00459-BAS-SBC<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MICHAEL K. STEINHAUSER'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>**Judge: Hon. Cynthia A. Bashant**<br>**Hearing Date: August 8, 2025**<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ..................................................................................................1

II.  RELEVANT FAC ALLEGATIONS ....................................................................4

   A.   Defendants And Their Fraudulent Scheme............................................4

   B.   Defendants' Fraudulent Enterprise Spanned More Than Two Decades And Targeted Multiple Unsuspecting Investors ....................4

   C.   Defendant Steinhauser Assisted With The Fraudulent Transfer Of Stemedica's Assets To SanoStem..........................................................5

   D.   This Action ............................................................................................8

III. LEGAL STANDARD ...........................................................................................9

IV.  LEGAL ARGUMENT ........................................................................................10

   A.   Plaintiffs Have Plausibly Alleged That There Was A Fraudulent Transfer ................................................................................................10

   B.   Plaintiffs Plausibly Stated A Claim For Aiding And Abetting Fraudulent Transfer Against Steinhauser ...........................................12

V.   CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aghaian v. Minassian*,
 59 Cal. App. 5th 447 (2020) ............................................................................. 13, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ................................................................................................ 9

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ................................................................................................ 9

*In re ECOtality, Inc. Sec. Litig.*,
 No. 13-03791, 2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ........................... 12

*Englewood Lending,* No. EDCV 09-223-VAP (OPx), 2009 WL
 10670409 (C.D. Cal. Jul. 6, 2009) ......................................................................... 9

*Filip v. Bucurenciu*,
 129 Cal. App. 4th 825 (2005) ............................................................................... 10

*In re HVI Cat Canyon, Inc.*,
 658 B.R. 558 (C.D. Cal. 2024) ............................................................................... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018) ................................................................................ 11

*Murguia v. Langdon*,
 61 F.4th 1096 (9th Cir. 2023) ................................................................................. 9

*Neubronner v. Milken*,
 6 F.3d 666 (9th Cir. 1993) ...................................................................................... 9

*Sgro v. Danone Waters of N. Am., Inc.*,
 532 F.3d 940 (9th Cir. 2008) ................................................................................ 12

**Statutes**

Cal. Civ. Code § 3439.01(b) ...................................................................................... 10

Cal. Civ. Code § 3439.01(c) ...................................................................................... 10

Cal. Civ. Code § 3439.04(a) ...................................................................................... 10

Cal. Civ. Code § 3439.04(a)(1) ................................................................. 3, 12, 13, 14

California Uniform Voidable Transactions Act ............................................ 3, 10, 13

**Other Authorities**

Fed. R. Civ. Proc. 9(b) ............................................................................................ 9

Fed. R. Civ. Proc. 15(a)(3) ..................................................................................... 1

Plaintiffs Nina Vikhrieva and Sergey Leshkov (together, "Plaintiffs") respectfully submit this memorandum of law in support of their opposition to the motion to dismiss Plaintiffs' First Amended Complaint ("Motion" or "Mot.") of defendant Michael K. Steinhauser ("Steinhauser").[1]

## I. INTRODUCTION

The Motion should be denied. The clear and detailed allegations in the 100-page First Amended Complaint ("FAC") are more than sufficient to plausibly allege a claim against Steinhauser for aiding and abetting defendant Stemedica's 2025 intentional fraudulent transfer to SanoStem (as defined in the FAC) as part of a continuing RICO scheme to defraud investors.

Plaintiff Nina Vikhrieva is a doctor and a researcher. Plaintiff Sergey Leshkov is a medical equipment distribution expert. Plaintiffs are business partners and international investors focused on transformative health technology, like defendant Stemedica's stem-cell technology. Plaintiffs were introduced to Stemedica by their trusted friend, defendant Nikolai Tankovich.

Unbeknownst to Plaintiffs, Tankovich and defendants, Stemedica founders, Roger Howe and Maynard Howe used Stemedica's technology as bait to fraudulently induce Plaintiffs to invest $20 million in Stemedica's subsidiaries, including CardioCell LLC ("CardioCell"), by promising to commercialize multi-billion-dollar stem cell products using Stemedica's stem cells for clinical trials. However, they never intended to fulfill their promises. Rather than spending time, effort, money,

---

[1] Steinhauser also filed a Joinder (Dkt. 40) in the motion to dismiss of defendants Maynard Howe, Nikolai Tankovich, Craig Carlson, Roger Howe, and Dirk O'Hara ("Main Motion") (Dkt. 38). However, Steinhauser filed the Joinder on June 20, 2025, which was seven days after the June 13, 2025 deadline for responding to the May 30, 2025 First Amended Complaint under Rule 15(a)(3). *See* F. R. Civ. P. 15(a)(3) ("(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."). The Court should disregard or strike the untimely Joinder *sua sponte*, as Steinhauser filed the Joinder without seeking leave of Court and otherwise failed to show good cause for his delay. In case the Court does not strike the Joinder, Plaintiffs incorporate by reference their opposition to the Main Motion.

and stem cells on clinical trials and product commercialization, these individuals and the other defendants, including the Stemedica executives, Craig Carlson, and Dirk O'Hara, and David Howe misappropriated Plaintiffs' funds and destroyed their investments by *inter alia*: (i) diverting stem cells from the clinical trials to a controversial but highly lucrative medical tourism in Mexico with recruited U.S. patients; (ii) selling Stemedica stem cells for quick profits to entities in Mexico, China, and Kazakhstan; and (iii) failing to provide promised funds and stem cells to CardioCell.

Defendants' scheme spanned many years, targeted multiple victims (including Plaintiffs) and consisted of 20 different repeated predicate acts. In essence, the scheme involved a pattern of using legitimate intellectual property and stem-cell technologies to entice unsuspecting investors and then eliminate the investors by claiming unsuccessful investments, while using the stem cells for quick profits (instead of clinical trials), and retaining the technologies as bait for the next round of fraud. Despite raising close to $200 million, Stemedica failed to commercialize a single product in two decades. This scheme specifically targeted and harmed Plaintiffs by fraudulently inducing and intentionally destroying their $20 million investment.

Stemedica was aware of Plaintiffs' claims since at least 2021 when it signed the Tolling Agreement. In 2023, Roger and Maynard Howe hired Steinhauser, as Stemedica's CEO. Steinhauser proceeded to negotiate settling this dispute with Plaintiffs and then signed on Stemedica's behalf the fifth and sixth amendments to the parties' Tolling Agreement. However, Steinhauser stopped communicating with Plaintiffs and instead assisted with engineering and executing Stemedica's fraudulent transfer of all assets to defendant SanoStem. Steinhauser did so without providing notice to Plaintiffs, even though he knew they were waiting for a settlement update.

Plaintiffs later learned that Steinhauser was the Howe brothers' personal friend, who was hired by them to create the false impression of Stemedica's new and

independent management in order to entice new investors. Plaintiffs also learned that SanoStem and Shivinder Deol were insiders with prior ties to Stemedica, the Howe brothers, Tankovich, and Carlson. Astoundingly, after the transfer, SanoStem announced that Steinhauser was appointed as SanoStem's new CEO, indicating that the RICO enterprise essentially changed its brand name but retained the same wrongdoers.

Plaintiffs thus plausibly stated a claim for aiding and abetting an intentional fraudulent transfer against Steinhauser and other individual defendants under Cal. Civ. Code § 3439.04(a)(1) (Count VIII).

Steinhauser argues that Plaintiffs have no standing to assert fraudulent transfer claims because they are not Stemedica's creditors under the California Uniform Voidable Transactions Act ("UVTA"). Steinhauser is wrong. Under the UVTA, Plaintiffs are creditors because they are holders of unliquidated, unsecured claims against Stemedica even though disputed. Further, as demonstrated in Plaintiffs' opposition to the Main Motion, all of Plaintiffs' fraudulent transfer claims are well-supported and likely to succeed on the merits.

Steinhauser also argues that the claim against him should be dismissed because Plaintiffs purportedly admitted in the FAC that the asset transfer to SanoStem had not occurred. This too is wrong and simply ignores the allegations of a transfer including public statements and private emails about the transfer. In fact, Plaintiffs even cite to SanoStem's website, officially stating that SanoStem acquired all of Stemedica's assets and that Steinhauser became SanoStem's new CEO. The very document that Steinhauser claims shows an allegation of no transfer is an allegation about an email from SanoStem's chairman, defendant Shivinder Deol, that itself references the occurrence of a sale even though no money was yet paid. In any event, even if that email could infer that no transfer occurred, such factual question is not proper on a motion to dismiss.

Accordingly, the Court should deny Steinhauser's Motion.

## II.   RELEVANT FAC ALLEGATIONS

**A. Defendants And Their Fraudulent Scheme**

Defendants Roger Howe, Maynard Howe and Nikolai Tankovich were Stemedica executives and Stemedica-appointed members of CardioCell's board in the relevant time period. FAC ¶¶ 54-55, 57. They made false statements to Plaintiffs to initially induce them to invest in Stemedica subsidiaries, including CardioCell (*id.* ¶¶ 419-426) and later to roll all of their interest in the subsidiaries into CardioCell as to facilitate Plaintiffs' elimination. *Id.* ¶¶ 427-439. This was part of defendants' fraudulent scheme to entice investors and misappropriate their investments. *Id.* ¶¶ 488-515. The Howe brothers and Tankovich also concealed the fraud from Plaintiffs by making false statements to prevent Plaintiffs from discovering the truth. *Id.* ¶¶ 454-465. Defendants Dirk O'Hara and Craig Carlson were Stemedica executives and Stemedica-appointed members of CardioCell's board in the relevant time period (*id.* ¶¶ 58-60), who also participated in this fraudulent scheme. *See, e.g.*, *id.* ¶¶ 488-515.

**B. Defendants' Fraudulent Enterprise Spanned More Than Two Decades And Targeted Multiple Unsuspecting Investors**

Since its inception in 2003, Stemedica has raised close to $200 million. FAC ¶ 393. Despite this staggering investment amount, Stemedica has commercialized zero stem-cell products. This is because, instead of commercializing products and expanding the business, which takes effort and resources, defendants concocted a fraudulent enterprise for quick and easy profits, including participating in medical tourism in Mexico and selling stem cells internationally. *Id.* ¶¶ 488-515.

Defendants' fraudulent enterprise was structured in a way that used Stemedica's valuable technologies and promises to commercialize multi-billion-dollar stem cell products as bait for unsuspecting investors and then misappropriate the investments and eliminate the investors under false pretenses while keeping the technology as a bait for the next round of investors. *Id.* ¶ 494.

Defendants employed this pattern of fraudulent activity against Plaintiffs.

Between 2013 and 2025, the Howe brothers, Tankovich and/or their coconspirators: (i) participated in multiple acts of mail and wire fraud, extortion and bribery, (ii) caused Plaintiffs to invest $20 million under false pretenses, give up their interest and veto power in various valuable Stemedica subsidiaries and exchange their subsidiaries' shares for CardioCell shares, and (iii) repeatedly caused Stemedica to breach contracts with CardioCell in furtherance of a scheme to wipe out Plaintiffs' investment while retaining the technology. *See, e.g.*, *id*. ¶¶ 2-35, 488-515.

As detailed herein, Plaintiffs only discovered defendants' fraudulent scheme in July 2018 when the need for stem cells arose, and Plaintiff had a reason to suspect that Stemedica may not supply stem cells for CardioCell's clinical trial. FAC ¶¶ 15, 409. Defendants continued to falsely promise funds and stem cells. *Id*. ¶¶ 23, 127-128, 289. Then, in September 2019, when Stemedica actually failed to make the promised critical $250,000 clinical trial payment, Plaintiffs knew defendants would act to destroy their investment. *Id*. ¶ 289.

### C. Defendant Steinhauser Assisted With The Fraudulent Transfer Of Stemedica's Assets To SanoStem

The FAC alleges that Steinhauser is Stemedica's Chief Executive Officer and Interim Chairman of Stemedica's Board of Directors. FAC ¶ 61. Steinhauser has a close relationship with defendants Roger Howe and Maynard Howe and was hired by them in early 2023 to create the impression of a new management and continue their scheme. *Id*. Steinhauser also assisted the Howe brothers with the sale of Stemedica to SanoStem to escape liability to Plaintiffs and other creditors. *Id*.

Upon Steinhauser's appointment as Stemedica's CEO in 2023, Plaintiffs discussed allegations in the FAC with him (including that Stemedica did not have the right to communicate with the FDA on CardioCell's behalf without CardioCell's permission), and asked for his help in settling the parties' dispute, but he stopped communicating with Plaintiffs and instead participated in the sale of Stemedica's assets to SanoStem. *Id*.

Notably, although Steinhauser knew about Plaintiffs' claims against Stemedica and promised to keep them updated on Stemedica's plans, he did not notify Plaintiffs that Stemedica was selling its assets and did not respond to Plaintiffs' inquiries even though he knew that Stemedica's transfer to SanoStem would harm Plaintiffs. FAC ¶ 391. Steinhauser's conduct thus indicated that he was involved in and aided Stemedica's fraudulent transfer to SanoStem, by, among other things, failing to notify Plaintiffs about the upcoming sale, preparing and signing sale related documents as Stemedica's CEO, and advising Stemedica on how to evade Plaintiffs' claims in light of his blatant failure to notify Plaintiffs when they had explicitly asked him to do so. *Id*.

Plaintiffs only learned about Stemedica's potential sale as a result of a mass email sent to Stemedica's shareholders, including Plaintiff Leshkov, in September 2024 by Gerbsman Partners ("Gerbsman Email"). FAC ¶ 393. This email states, *inter alia*, that Gerbsman Partners has been retained by Stemedica "to solicit interest for the acquisition of all, or substantially all, of the assets of Stemedica." *Id*. The email also states: "The acquisition of Stemedica will enable immediate access to Stemedica's intellectual property, manufacturing protocols and CMC's, product inventory, manufacturing know-how and trade secrets, clinical trial data, and clinical trial IND approvals including, but not limited to, two FDA-approved Phase IIb/III clinical trial approvals: one for chronic ischemic stroke and one for chronic heart failure. To advance the Company's manufacturing and clinical trial strengths, Stemedica has raised approximately $190 million since its inception []." *Id*.

While the Gerbsman Email states that "[t]he Company has been unable to recover financially from the loss of income" from around 2020, it does not mention debt or potential legal claims at all. FAC ¶ 394. It does not even mention Plaintiffs' claims for which Stemedica had signed numerous tolling agreements. *Id*.

On October 22, 2024, Plaintiffs' counsel emailed Stemedica's corporate counsel representing Stemedica in connection with the potential sale, Ajay Gupta (at

Gupta Evans & Ayres, PC), and raised concerns about the lack of transparency in Stemedica's apparent attempt to sell its valuable assets with knowledge of Plaintiffs' claims. FAC ¶ 397. In that email, Plaintiffs' counsel requested information about the process involved in the sale of Stemedica, including information about due diligence, the winning bid and Stemedica's assets and valuation. *Id*. Gupta did not respond to Plaintiffs' email, suggesting that Stemedica was hiding its apparent fraudulent transfer of assets. *Id*.

Plaintiffs finally heard about Stemedica's sale on February 5, 2025, when SanoStem's chairman, Shivinder Deol, emailed Plaintiffs, stating: "Dear Nina and Sergey, Duniya SanoStem Inc (SanoStem) has fully acquired Stemedica's assets including all the IND." FAC ¶ 398. Plaintiffs later learned that SanoStem had a prior relationship with Stemedica since at least 2013. FAC ¶¶ 403-405.

Deol also included in the email a "Press Release Duniya SanoStem Inc. Acquires Stemedica Cell Technologies, Inc.," which stated: "Bakersfield, CA - February 4, 2025 - Duniya SanoStem Inc., a global biopharmaceutical company, is pleased to announce the full acquisition of Stemedica Cell Technologies, Inc., a government-licensed cGMP manufacturer of best-in-class Allogeneic (Donor) Adult Stem Cells and Stem Cell Factors." FAC ¶ 399.

Similarly, Duniya SanoStem's website (sanostem.com) announced the February 4, 2025 "full acquisition" in Stemedica, including the "FDA-approved Investigational New Drug (IND) applications for Acute Myocardial Infarction Chronic Heart Failure." FAC ¶ 31, Ex. A.

Duniya SanoStem's website also indicated that Stemedica's CEO, defendant Steinhauser, was appointed as SanoStem's CEO (FAC, Ex. D) and Stemedica's CMO, defendant Nikolai Tankovich, was appointed as SanoStem's scientific advisory (*id*., Ex. E), indicating that the purportedly new company, SanoStem, is being managed and advised by the same wrongdoers. FAC ¶ 32.

Plaintiffs were surprised that any company would be willing to acquire

Stemedica given defendants' elaborate fraudulent scheme and Plaintiffs' claims and draft complaint that should have been discovered in due diligence. FAC ¶ 400.

Moreover, Plaintiffs were astonished that SanoStem had allegedly purchased CardioCell's exclusive rights without CardioCell's permission despite the fact that CardioCell was the rightful owner of those rights. FAC ¶ 401. Plaintiffs thus replied to Deol's email discussing the draft complaint and claims (which Stemedica had seen) and the fact that CardioCell had exclusive rights for the cardiovascular indication, meaning that Stemedica could not have sold CardioCell's FDA applications to SanoStem. *Id*. Deol did not respond to Plaintiffs' email and did not reach out to discuss further or even acknowledge the response. *Id*.

Stemedica thus allegedly transferred all of its assets to Defendant SanoStem with the knowledge of Plaintiffs' claims. FAC ¶ 402. The main purpose of the transfer was to avoid liability to Plaintiffs and other Stemedica creditors. *Id*.

Because upon SanoStem's acquisition of Stemedica, SanoStem announced that Stemedica's Steinhauser was appointed as SanoStem's new CEO (FAC, Ex. D) and Stemedica's Nikolai Tankovich as SanoStem's scientific advisor, there is a substantial risk that Defendants in this case, including Steinhauser, would continue to commit fraudulent acts under the new SanoStem brand by enticing and defrauding new unsuspecting investors. FAC ¶ 403.

After commencing this action on February 27, 2025, Plaintiffs noticed that the sanostemglobal.com website disappeared from the internet. FAC ¶ 406. The Sanostem.com website now contains different versions of webpages attached to the original complaint. FAC ¶ 33.

**D. This Action**

The parties (including Stemedica) signed a Tolling Agreement in June 2021, which was extended six times, resulting in a tolling period from June 24, 2021 to February 28, 2025. *Id*. ¶¶ 410-418. Plaintiffs filed the original complaint on February 27, 2025, prior to the end of the tolling period. Dkt. 1. Plaintiffs

subsequently supplemented their allegations and filed the FAC on May 30, 2025. Dkt. 32. Defendants filed a motion to dismiss the FAC on June 13, 2025. Dkt. 38. At the parties' request, the Court subsequently extended the deadlines for Plaintiff's opposition to July 17, 2025, and Defendants' reply to August 1, 2025. Dkt. 45. Plaintiffs are filing this opposition in accordance with the Court's order.

### III. LEGAL STANDARD

On a motion to dismiss, a complaint needs only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To assess plausibility, "the court must take all factual allegations as true and draw all reasonable inferences in favor of the nonmoving party." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023).

Steinhauser cites to Rule 9(b) of the FRCP and suggests that Plaintiffs need to meet the heightened pleading standard for fraud. Mot. 4-5. However, "whether Rule 9(b) applies to actual fraudulent transfer claims is unclear." *In re HVI Cat Canyon, Inc.*, 658 B.R. 558, 582 (C.D. Cal. 2024). Even if Rule 9(b) did apply theoretically, there is an exception where, like here, "the facts constituting the circumstance of the alleged fraud are peculiarly within the defendant's knowledge or are readily obtainable by him." *Id.* (quoting *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993); *see also Englewood Lending,* No. EDCV 09–223–VAP (OPx), 2009 WL 10670409, at *5–6 (C.D. Cal. Jul. 6, 2009) (relaxing requirement because "the specific information relating to the purported fraudulent transfer lies" with the defendant). As demonstrated below, Plaintiffs sufficiently and plausibly pleaded facts to state their claim against Steinhauser.

## IV. LEGAL ARGUMENT

### A. Plaintiffs Have Plausibly Alleged That There Was A Fraudulent Transfer

Steinhauser claims that there can be no claim for aiding and abetting a fraudulent transfer because Plaintiffs have not alleged an actual fraudulent transfer. Mot. 5-6. His first argument is that Plaintiffs have not alleged they are creditors and thus have no standing. This is wrong. Under the UVTA, a "transfer made or obligation incurred by a debtor is voidable as to a creditor". Cal. Civ. Code § 3439.04(a). "Creditor" means "a person that has a claim." Cal. Civ. Code § 3439.01(c). And "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id*. § 3439.01(b). This clearly includes legal claims even if disputed and not reduced to judgment.

Here, Plaintiffs allege that they are Stemedica's creditors as they have legal claims against Stemedica, about which Stemedica has known since June 2021, when it signed the Tolling Agreement. FAC ¶¶ 466-472. *See Filip v. Bucurenciu*, 129 Cal. App. 4th 825, 829 (2005) (holding that UTVA "permits defrauded creditors to reach property in the hands of a transferee" and setting aside a fraudulent transfer, where a judgment creditor and his wife and daughter conspired to prevent creditor from collecting on the judgment, like here, where Stemedica transferred its assets to SanoStem to avoid paying for Plaintiffs' damage in this case). Steinhauser's *ipse dixit* declaration that Plaintiffs' claims are unfounded is irrelevant on a motion to dismiss. Mot. 7. Thus, Plaintiffs clearly have alleged that they are creditors and have standing to bring a fraudulent transfer claim. Further, as demonstrated in Plaintiffs' opposition to the Main Motion, all of Plaintiffs' fraudulent transfer claims are more than adequately pleaded.

Second, Steinhauser argues that Plaintiffs "admit" in the FAC that "no transfer

has occurred yet". Mot. 6-7. Steinhauser is wrong again and simply ignores the allegations in the FAC. The FAC cites SanoStem's official website announcing SanoStem's "full acquisition" in Stemedica. FAC ¶ 31, Ex. A. The FAC similarly cites to the February 5, 2025 email from SanoStem's Deol to Plaintiffs, stating: "Dear Nina and Sergey, Duniya SanoStem Inc (SanoStem) has fully acquired Stemedica's assets including all the IND." FAC ¶ 398. The same email attached a press release stating that Duniya SanoStem Inc. "is pleased to announce the full acquisition of Stemedica Cell Technologies, Inc." *Id.* ¶ 399. Additionally, Plaintiffs alleged that "Stemedica (as controlled by Defendants Roger Howe, Maynard Howe, Nikolai Tankovich, and Michael Steinhauser) transferred Stemedica and all of Stemedica's assets to Defendant SanoStem". *Id.* ¶¶ 470, 477. Thus, it is clear that Plaintiffs have alleged a transfer.

Steinhauser points to an allegation about an email from Defendant Shivinder Deol which states: "'no money has been paid to date. If **the sale** does get voided, that will mean eventually, no money will be transferred' in connection **with the sale of Stemedica to SanoStem**." *Id.* ¶ 407 (emphasis added). However, as is clear from the bolded language, this email and allegation clearly state that a sale has occurred which may get voided (presumably if this lawsuit is successful). The fact that the email says no money has yet been paid does not mean that the referenced sale that was publicly announced has not occurred.

In any event, even if the FAC contains some ambiguous allegations due to Deol's email (and it does not), resolving such factual issue is not proper on a motion to dismiss. *See, e.g., Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014–15 (9th Cir. 2018) (reversing dismissal because "[o]nce documents are incorporated into a complaint, a district court faces competing, often inconsistent versions of the facts. Although plaintiffs are ordinarily afforded the benefit of every favorable inference, the incorporation-by-reference doctrine can allow defendants to exploit that benefit for themselves…. Although incorporation by reference generally permits courts to

accept the truth of matters asserted in incorporated documents, we reiterate that it is improper to do so only to resolve factual disputes against the plaintiff's well-pled allegations in the complaint. The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage"); *see also Sgro v. Danone Waters of N. Am., Inc.*, 532 F.3d 940, 942, n. 1 (9th Cir. 2008) (finding it proper to consider a disability benefits plan referenced in complaint, but declining to accept the truth of the plan's contents where the parties disputed whether defendant actually implemented the plan according to its terms); *In re ECOtality, Inc. Sec. Litig.*, No. 13-03791, 2014 WL 4634280, at *3 (N.D. Cal. Sept. 16, 2014) (declining to assume the truth of incorporated documents where it "would mean assuming the truth of all of Defendants' allegedly false or misleading statements," which would make it "impossible ever to successfully plead a fraud claim").

Thus, Steinhauser's Motion should be denied as Plaintiffs have plausibly alleged that there was a fraudulent transfer and, therefore, have stated a claim for aiding and abetting intentional fraudulent transfer against Steinhauser under Cal. Civ. Code § 3439.04(a)(1) (Count VIII).

### B. Plaintiffs Plausibly Stated A Claim For Aiding And Abetting Fraudulent Transfer Against Steinhauser

As far as Plaintiffs can tell, Steinhauser makes no other argument in favor of dismissing the claim against him. This is likely because Plaintiffs have adequately stated a claim. Specifically, Plaintiffs allege that they are Stemedica's creditors as they have legal claims against Stemedica, about which Stemedica has known since June 2021, when it signed the Tolling Agreement. FAC ¶¶ 466-472. Plaintiffs further allege that, despite this knowledge, Stemedica transferred its assets, including CardioCell's valuable exclusive rights (which Stemedica did not even own) to SanoStem, an insider with prior ties to Stemedica. FAC ¶¶ 393-405. Plaintiffs thus allege that Stemedica transferred the assets to escape liability in this case, and that

the Court should void Stemedica's fraudulent transfer. FAC ¶¶ 466-472.

Plaintiffs further allege that Steinhauser knew about Plaintiffs' claims against Stemedica but nevertheless assisted with the fraudulent transfer. FAC ¶¶ 480-487. Specifically, Plaintiffs allege that Steinhauser was hired by the Howe brothers in early 2023 to create the impression of a new management and continue their fraudulent scheme and that he assisted with the sale of Stemedica to SanoStem to escape liability to Plaintiffs and other Stemedica creditors. *Id.* ¶ 61. Plaintiffs further allege that, upon Steinhauser's appointment as Stemedica's CEO in 2023, Plaintiffs discussed settling the parties' dispute with Steinhauser, but he stopped communicating with Plaintiffs and instead participated in the sale of Stemedica's assets to SanoStem. *Id*. The FAC also alleges that Steinhauser aided Stemedica's fraudulent transfer to SanoStem, by, among other things, failing to notify Plaintiffs about the upcoming sale, preparing and signing sale related documents as Stemedica's CEO, and advising Stemedica on how to evade Plaintiffs' claims in light of his blatant failure to notify Plaintiffs when they had explicitly asked him to do so. FAC ¶ 391.

Plaintiffs further alleged that the transfers were made with an "actual intent to hinder, delay or defraud." *Id.* ¶¶ 470, 483. Under the UVTA, a plaintiff needs to specify the existence of relevant "badges of fraud" such as: "(1) the debtor made the transfer to an 'insider'; (2) the debtor retained possession or control of the property after the transfer; (3) the debtor had been sued before making the transfer; (4) the debtor removed or concealed assets; (5) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; and (6) the transfer occurred shortly before or shortly after a substantial debt was incurred." *Aghaian v. Minassian*, 59 Cal. App. 5th 447, 456 (2020) (reversing the dismissal of fraudulent transfer claim under section 3439.04(a)(1) because "Shahen made the transfers to an 'insider,' namely, his wife [] and his son []" and that "he retained control of the two properties after the transfers" [and] plaintiffs had sued [] Shahen

before he made the transfers"). Importantly, none of these badges is determinative, and no minimum or maximum number of factors is required. *Aghaian*, 59 Cal. App. 5th at 456.

Here, Plaintiffs also allege badges of fraud. First, Plaintiffs allege that Stemedica transferred the assets to the insider SanoStem. Specifically, the FAC alleges that Plaintiffs were surprised that any company would be willing to acquire Stemedica, given defendants' elaborate fraudulent scheme and Plaintiffs' draft complaint in defendants' possession that should have been discovered in due diligence. FAC ¶ 400. The FAC also points out that Plaintiffs later learned that SanoStem was an insider with prior ties to Stemedica. *Id.* ¶¶ 393-405. Second, Plaintiffs allege that Stemedica retained control over the transferred assets, as the FAC cites SanoStem's website announcement that Stemedica's CEO, defendant Steinhauser, was appointed as SanoStem's new CEO (FAC, Ex. D), and that Stemedica's CMO, defendant Tankovich, was appointed as SanoStem's scientific advisor (*id.*, Ex. E), indicating that SanoStem is essentially managed and advised by the same wrongdoers. FAC ¶ 32. Third, the FAC alleges that Stemedica had a draft of Plaintiffs' complaint in its possession and knew that Plaintiffs would file it before the expiration of the parties' Tolling Agreement. FAC ¶¶ 408-417.

The FAC similarly alleges other indications of fraud. For example, the FAC alleges that, when Plaintiffs' counsel asked Stemedica's counsel, Ajay Gupta, about the details of the upcoming asset sale, he did not respond, indicating an attempt to evade and conceal. FAC ¶ 397. The FAC also alleges that, after the commencement of this action, the SanoStem webpages (which were attached as exhibits to the original complaint) disappeared from the internet and new versions of those pages appeared. FAC ¶¶ 33, 406. These detailed and compelling allegations are more than sufficient.

Plaintiffs thus plausibly state a claim for aiding and abetting intentional fraudulent transfer against Steinhauser under Cal. Civ. Code § 3439.04(a)(1) (Count

VIII).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Michael K. Steinhauser's motion to dismiss Plaintiffs' First Amended Complaint. If the Court grants any part of the Motion, Plaintiffs should be permitted to replead.

Dated: July 17, 2025

RIMÔN P.C.

By: */s/ Michael S. Lazaroff*
Michael S. Lazaroff
400 Madison Avenue, Suite 11D
New York, NY 10017
Tel: (646) 738-4151
Fax: (212) 363-0270
michael.lazaroff@rimonlaw.com
(admitted *Pro Hac Vice*)

Daniel F. Lula
2029 Century Park East
Suite 400N
Los Angeles, CA 90067
Tel: (617) 963-0419
Fax: (213) 375-3811
daniel.lula@rimonlaw.com

Robert Cocchia
RIMON P.C.
3579 4th Avenue
San Diego, CA 92103
Tel: (858) 348-4383
Fax: (213) 375-3811
robert.cocchia@rimonlaw.com

*Attorneys for Plaintiffs
Nina Vikhrieva and Sergey Leshkov*