**LAW OFFICE OF RESHMA KAMATH**
**RESHMA KAMATH**, Cal. Bar No. 333800
2648 International Blvd, Suite 115 # 294, Oakland, California 94601
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
Counsel for Defendants **SANOSTEM GLOBAL LLC AND**
**SHIVINDER S. DEOL**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA VIKHRIEVA and SERGEY LESHKOV,<br><br>          Plaintiffs,<br><br>     v.<br><br>STEMEDICA CELL TECHNOLOGIES, INC.; ZIUZHITANG CO., LTD.; ZHUHAI HENGQIN JIUZHITANG YONGHE QIHANG FUND; JIUZHITANG MAKER (BEIJING) CELL TECHNOLOGY CO., LTD.; MAYNARD A. HOWE; ROGER J. HOWE; DAVID HOWE; NIKOLAI I. TANKOVICH; DIRK P. O'HARA; SIMON GUO; CRAIG W. CARLSON; MICHAEL K. STEINHAUSER; SANOSTEM GLOBAL LLC; DUNIYA SANOSTEM INC.; AND SHIVINDER S. DEOL,<br><br>          Defendants. | Case No.3:25-cv-00459-BAS-SBC<br>*[Assigned to Honorable Cynthia A. Bashant]*<br><br>**DEFENDANTS SANOSTEM GLOBAL LLC, AND SHIVINDER S. DEOL'S REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL, LAZAROFF'S DECLARATION; MEMORANDUM OF POINTS AND AUTHORITIES; SHIVINDER S. DEOL'S FURTHER DECLARATION TO THE REPLY IN SUPPORT OF THE MOTION TO DISMISS.**<br><br>**HEARING: Friday, October 10, 2025,**<br>**or as soon thereafter at a time as counsel may be heard before Honorable Cynthia A. Bashant, judicial officer, located at Courtroom: 12B (12th Flr), Chambers Rm. #: Suite 1280, Telephone: (619) 321- 0256, James M. Carter and Judith N. Keep, United States Courthouse, 333 West Broadway, San Diego, CA 92101, United States.**<br><br>**"NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT."** |

1

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' ATTORNEY LAZAROFF'S DECLARATION

# TABLE OF CONTENTS

## MEMORANDUM OF POINTS & AUTHORITIES

I. Introduction ........................................................................................4

II. Statement of Facts...............................................................................6

III. Legal Standards  ........................................................…………8

IV. Evidentiary Objection ........................................................…………9

V. Legal Arguments ........................................................……12

VI. Conclusion........................................................…………18

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

# TABLE OF AUTHORITIES

**CASES**

Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d  (D.D.C. 1998)..…………15

Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1169 (9th Cir. 2002)....…………17

Snyder v. HSBC Bank, USA, N.A., 2012, at *3 (S.D. Cal. Dec. 21, 2012) ...........................................................................................…………13

Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d (Del. 2004)..…………9

**STATUTES**

Local Rule 7.1(e)(2)......................................................................………15

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

DEFENDANTS SANOSTEM GLOBAL LLC, AND SHIVINDER S. DEOL object that Plaintiffs' Opposition does not engage with the fatal legal deficiencies of their own pleading. Instead, it attempts a procedural sleight of hand, arguing about the timing of a meet-and-confer letter to distract from their complete failure to state a claim. This is a tacit admission that their case against the stated Defendants is built on sand.

No amount of procedural nitpicking can cure the fundamental flaw in the First Amended Complaint ("FAC"): it contains no well-pled factual allegations linking unrelated defendant Duniya Sanostem Inc (DSL); defendants Sanostem Global LLC (SSG) and Dr. Shivinder S. Deol (DEOL) to the decade-old misconduct they ascribe to Stemedica.

The Plaintiffs' counsel, Lazaroff's continued use of "Sanostem Defendants" as a catch-all term to include all Defendants is misleading and should be disallowed. The

4

Defendants have clarified that there are three (3) separate entities with three (3) separate websites unrelated to each other. Lumping the unrelated entities together misdirects the lack of any evidence to link SSG and DEOL from other Defendants or unrelated entities.

The First Amended Complaint attempts to drape the stated unrelated Defendants in the alleged misconduct of others through guilty by association and a profound temporal disconnect. The core narrative describes a scheme perpetrated by Stemedica and its principals between the years, 2013 and 2021.

The allegations against Moving Defendants, however, relate exclusively to an arm's-length asset purchase conducted through an independent liquidator in the latter part of the year, 2024—years after the purported fraud concluded. The FAC offers no bridge between the two eras, relying instead on conclusory labels of "alter ego" and "conspiracy" that are unsupported by any specific, non-conclusory facts.

Plaintiffs' sole substantive defense is to ignore the law's pleading requirements. They have made no attempt to explain how their threadbare allegations satisfy the heightened pleading standard for fraud-based claims like the UVTA and RICO.

They do not address their failure to plead actual intent, a pattern of racketeering activity, or the distinctness of a RICO enterprise. Their Opposition is a silent concession

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

that they cannot meet their burden under *Twombly* and *Iqbal* to present a complaint with facial plausibility.

Confronted with this legal void, Plaintiffs' counsel has chosen to focus on a two-hour window rather than the twelve-year gap in their own theory of liability. This strategy underscores the weakness of their position.

The Plaintiffs' counsel also did not mention Defendants earlier efforts to settle this matter, including 1 voicemail and 5 follow-up emails, in which the Plaintiffs' counsel twice refused to discuss settlement. See below:

**From:** Reshma Kamath <reshmakamath2021@gmail.com>
**Sent:** Thursday, July 24, 2025 8:49 AM
**To:** Michael Lazaroff <michael.lazaroff@rimonlaw.com>
**Subject:** Re: Vikhrieva et al v. Stemedica Cell Technologies, Inc. et al - 3:25-cv-00459-BAS-SBC - Dkt. 44- Order Authorizing Alternative Service Of Process By Email On Certain Defendants

Mr. Lazaroff:

Hope all is well. I called and left a voice-mail about settling the matter with Plaintiffs today.

Sincerely,

*Reshma Kamath*

On Thu, Jul 31, 2025 at 2:04 PM Michael Lazaroff <michael.lazaroff@rimonlaw.com> wrote:

I am writing in response to your voice mails from earlier this week. In light of the Notice of Bankruptcy Filing that we filed on Monday, we cannot discuss settlement with you related to the claims against your clients.

Thank you,

Michael

On Thu, Jul 31, 2025 at 2:31 PM Michael Lazaroff <michael.lazaroff@rimonlaw.com> wrote:

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Our clients are not in Bankruptcy.  The Notice we filed we filed was in our case with regard to Stemedica and appears on the docket in our case as the  Notice Of Bankruptcy Filing As To Defendant Stemedica Cell Technologies, Inc. (copy is attached). As noted in my earlier email, we cannot discuss settlement with you related to the claims against your clients.

**From:** Reshma Kamath <reshmakamath2021@gmail.com>
**Sent:** Thursday, July 31, 2025 5:15 PM
**To:** Michael Lazaroff <michael.lazaroff@rimonlaw.com>
**Cc:** Daniel F. Lula <daniel.lula@rimonlaw.com>
**Subject:** Re: Vikhrieva, et al. v. Stemedica Cell, et al., 25CV459 BAS SBC

Mr. Lazaroff:

Can you send me a copy? I didn't realize both your clients were in bankruptcy. Stemedica was, and that is a different client. My client has all the cells and the rights. Let me know what your thought process is because this actually benefits you should Sanostem file bankruptcy as well in the near future.

Sincerely,

Reshma Kamath

**From:** Reshma Kamath <reshmakamath2021@gmail.com>
**Sent:** Thursday, July 31, 2025 2:48 PM
**To:** Michael Lazaroff <michael.lazaroff@rimonlaw.com>
**Cc:** Daniel F. Lula <daniel.lula@rimonlaw.com>
**Subject:** Re: Vikhrieva, et al. v. Stemedica Cell, et al., 25CV459 BAS SBC

Defendants Stemedica are **not** Defendants Duniya SanoStem. What Stemedica does in bankruptcy has **no effect** on Duniya. Defendant Duniya is willing to offer you valuable assets with your non-payment. This will be a win-win for your clients and mine. Please be informed and let's move on. Your clients are giving up something it could own tomorrow for something it may never get - even if Stemedica is out of bankruptcy in a year. Please think about it.

Thank you.

Sincerely,

Reshma Kamath

The Court should not countenance such a transparent attempt to evade judicial scrutiny of a legally insufficient pleading. The purpose of the objection is to weed out

7

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

precisely this type of unsubstantiated claim, and Plaintiffs' procedural gamesmanship should not shield them from that necessary examination.

## II.

## STATEMENT OF FACTS

The factual record confirms that Defendants' meet-and-confer efforts were conducted in good faith. Counsel for Defendants sent a detailed, substantive letter to Plaintiffs' counsel outlining the precise legal and factual bases for dismissal. This letter provided a clear opportunity for Plaintiffs to voluntarily dismiss their baseless claims.

Plaintiffs' counsel chose not to respond substantively. Instead, they now feign surprise at the subsequent filing of the motion, using a minor temporal gap to create a procedural dispute where none exists.

Moreover, the Opposition remains utterly silent on the core facts: the FAC alleges a scheme that ended years before these Defendants had any involvement, and it pleads no non-conclusory facts showing these Defendants acted with fraudulent intent, participated in a RICO enterprise, or are the alter egos of the primary wrongdoers.

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

The timeline of events further underscores the disconnect between Plaintiffs' claims and reality. The asset acquisition by Duniya Sanostem Inc. ("DSI") closed on November 27, 2024. This was months after Plaintiffs concede they learned of the potential sale in September 2024, and yet they took no legal action to assert their claims or seek an injunction against the sale at that time. Their first communication with any Defendant regarding the acquisition was a response to Dr. Deol's February 5, 2025, e-mail—an e-mail sent in good faith to explore potential collaboration.

The factual basis for Plaintiffs' allegations rests almost entirely on demonstrable errors. The "overlapping management" they allege is based on content erroneously copied onto a website (sanostem.in) owned by a non-party Indian entity, Duniya Sanostemedica Ltd. Such errors were promptly corrected upon discovery. The FAC transforms the innocent web-design mistakes into a nefarious conspiracy, without alleging any factual basis for doing so.

Crucially, the FAC contains no allegation that any of the Moving Defendants had knowledge of the tolling agreements between Plaintiffs and Stemedica prior to the asset acquisition. The Plaintiffs allege "that Shivinder Deol knew about Plaintiffs claims against Stemedica but nevertheless assisted with the fraudulent transfer." Plaintiff

9

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Sergey Leshkov himself informed DEOL of such of Plaintiff's claims against Stemedica in an e-mail on February 13, 2025, almost 3 months after completion of the Assets sale.

**From:** Лешков Сергей <leshkov@premium-a.ru>
**Sent:** Thursday, February 13, 2025 10:05 AM
**To:** 'Shivi Deol' <deolshivi@hotmail.com>; Вихриева Нина <ninav@premium-a.ru>; fedguru@yahoo.com
**Subject:** RE: Cardiocell

Dear Mr. Shivinder,

Thank you for your email.  I understand from the "press release" (you included in your email below) that your company, Duniya SanoStem Inc. ("SanoStem"), claims "the full acquisition of Stemedica Cell Technologies, Inc.", including the FDA-approved Investigational New Drug (IND) application for Chronic Heart Failure ("CHF").

In your email, you ask about possible collaboration with us, particularly with regard to CHF.  But, as you must know from due diligence, Stemedica granted a company called CardioCell an exclusive, perpetual worldwide license for all cardiovascular indications (including CHF) on October 22, 2013 (i.e., long before SanoStem's 2025 acquisition of Stemedica).  As such, SanoStem has no right to do anything with that FDA application or any other asset related to the CHF indication.  As you may also know, I am a CardioCell shareholder and executive.

Moreover, not only does CardioCell have the perpetual license described above, but it also has significant legal claims against Stemedica (as well as Roger Howe, Maynard Howe, and others), including claims for fraud and breach of contract (with significant nine figure damages).  Stemedica was aware of these claims as it had been sent a draft complaint. Thus, any discussion with you and your company would need to involve resolution of these claims.

If you still would like to discuss, please let me know your availability for a call next Monday or Tuesday. Thank you.

*Best regards,*

*Sergey Leshkov*

The bidding process was administered by an independent liquidator, Steve Gerbsman, who communicated with all potential bidders simultaneously. The liquidator did not disclose the trolling agreements to DSI. Stemedica provided hundreds of

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

thousands of pages in paper and electronic format for due diligence. No credible evidence of CardioCell's potential claims was discovered during the short diligence period.

Unrelated defendant Duniya Sanostem Inc (DSI)'s bid was the winning bid in a competitive, blind process, and there are no factual allegations of collusion with Stemedica. How was there "an actual intent to hinder, delay or defraud" Plaintiff when the Plaintiffs were not even in the picture at that time?

The Defendants had no financial interest in the bidding or the purchase by DSI, and there are no factual allegations of collusion with Stemedica or with DSI. If there was a fraudulent transfer between Stemedica and DSI, the Plaintiffs have not alleged how the Defendants were involved with this fraudulent transfer. The vague accusation "and/or aided and abetted that fraudulent transfer" has no merit and no proof is provided of same. The Defendants are lumped together with other unrelated Defendants in these baseless accusations. The Plaintiffs continues to make the same errors of lumping 3 separate legal entities "SanoStem" entities as 1 "SanoStem." DSI who bought the Stemedica Assets is unrelated to the Defendants and other SanoStem entities.

The FAC fails to allege any direct communication or business relationship between Plaintiffs and the Moving Defendants prior to 2024. The single email from

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

2013, included in the Moving Papers, shows Dr. Deol was merely contacted as a potential clinical investigator—a relationship that never materialized. This decades-old, aborted communication cannot plausibly form the basis for liability in the current dispute.

Plaintiffs' own exhibits contradict their theory of fraudulent concealment. The February 4, 2025, press release factually lists the INDs Stemedica had worked on, including the cardiac indications, but explicitly states DSI's intent was to "aggressively pursue the FDA-approved Phase IIb/III clinical trial in chronic ischemic stroke." This is a far cry from an attempt to secretly misappropriate cardiovascular assets.

Finally, the FAC omits the key fact that Dr. Deol was himself an investor who suffered significant losses alongside Plaintiffs, having invested $5 million for a license that explicitly excluded the very cardiac indications at the heart of this lawsuit. This fact directly undermines any plausible inference of a coordinated scheme to defraud Plaintiffs.

The Plaintiffs have not presented any basis for unjust enrichment claim that can be attributed to the Defendants. There are no factual allegations regarding how the Defendants would have received these unjust gains. The Defendants have no ownership of DSI and therefore could not receive any unjust gains even if received by DSI.

12

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Stemedica's bankruptcy has nothing to do with the Defendants, who did not buy the Stemedica Assets. The Defendants have no claims against Stemedica or DSI. The Defendants do not own the Stemedica Assets, nor are claiming to be creditors, and therefore no bankruptcy ruling will apply to them. Whether Plaintiffs are creditors or not of Stemedica, that has no bearing on Defendants.

## III.

## LEGAL STANDARD

A claim must be plausible on its face. Labels and conclusions" or a "formulaic recitation of the elements" are insufficient. Meet-and-Confer requires a "good faith effort" to resolve the dispute. The rule is satisfied by communicating the basis of the objection and providing an opportunity to resolve it; it does not mandate a specific timeline or require the parties to reach an agreement.

For claims of aiding and abetting, a plaintiff must plead: (1) the existence of an independent wrongful act; (2) defendant's actual knowledge of that wrongful act; and (3) substantial assistance or encouragement in the accomplishment of the tort.

13

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

The "actual knowledge" component requires pleading facts showing the defendant had knowledge of the specific primary wrong they are alleged to have aided, not merely a general awareness of a party's questionable conduct.

The doctrine of alter ego requires a plaintiff to overcome the presumption of separate corporate existence by showing (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that failure to disregard the corporate form would sanction a fraud or promote injustice.

Mere commonality of officers or directors (which was incorrectly reported by a non-party Indian entity, Duniya Sanostemedica Ltd) is insufficient to establish alter ego liability; instead, the court looks to factors such as the commingling of funds and assets, identical equitable ownership, and the failure to maintain adequate corporate records.

In the context of derivative suits involving Delaware LLCs, plaintiffs must either make a pre-suit demand on the company's managers or plead with particularized facts why such a demand would be futile. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,* 845 A.2d 1031, 1036 (Del. 2004). This demand futility requirement is a substantive right under Delaware law, and a plaintiff's failure to comply with it is a fatal procedural defect that warrants dismissal.

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

## IV.

## EVIDENTIARY OBJECTIONS TO DECLARATION OF MICHAEL S. LAZAROFF

Defendants hereby object to the Declaration of Michael S. Lazaroff and its attached exhibits filed in support of Plaintiffs' Opposition. The declaration and exhibits are rife with foundational, authentication, and relevance deficiencies that render them inadmissible.

## A.

## OBJECTION TO EXHIBIT A (AUGUST 29, 2025 LETTER): LACK OF FOUNDATION, AUTHENTICATION, AND HEARSAY

Defendants object to Lazaroff Decl. ¶ 4 and the attached Exhibit A in its entirety. The declaration fails to lay any foundation establishing Exhibit A as a true and correct copy of a business record kept in the ordinary course of business. Counsel does not attest to his role in receiving or maintaining such correspondence, nor does he describe the record-keeping system used to preserve it, failing the requirements for authentication.

Furthermore, the contents of the letter are classic hearsay, offered for the truth of the matters asserted therein (i.e., that Defendants made specific legal arguments). Critically, the letter constitutes a settlement communication, explicitly offering to withdraw the motion in exchange for a "settlement of the entire matter and mutual release."

Federal Rule of Evidence 408 explicitly bars the use of such statements to prove or disprove the validity or amount of a disputed claim. Its admission would be highly prejudicial and contrary to public policy favoring settlement.

## B.

## OBJECTION TO EXHIBIT B (CM/ECF NOTICE): IRRELEVANCE AND LACK OF FOUNDATION

Defendants object to Lazaroff Decl. ¶ 5 and the attached Exhibit B in its entirety. The CM/ECF notification is irrelevant to the substantive legal issues presented in the Motion to Dismiss. Whether the motion was filed two hours or two days after the meet-and-confer letter has no bearing on the legal sufficiency of the FAC under Rule 12(b)(6).

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

No foundation has been laid for this automated system-generated document. Its probative value is zero, and any minimal relevance is substantially outweighed by the danger of unfair prejudice and confusing the issues by focusing the Court's attention on a procedural red herring instead of the merits of the pleading.

## C.

## OBJECTION TO PARAGRAPH 6: LACK OF PERSONAL KNOWLEDGE AND SPECULATION

Defendants object to Lazaroff Decl. ¶ 6 in its entirety. Counsel's statement that "there was no meet and confer concerning the motion" is not based on personal knowledge of Defendants' counsel's intentions or good-faith efforts. It is a conclusory legal opinion and speculation offered to prove that Defendants failed to comply with the Court's rules. The July 24, 2025 voicemail and 1 email, followed by 4 emails on July 31, 2025 clearly shows the Defendants desire to settle the case even prior to the final meet and confer email send on August 29, 2025.

The evidence (Exhibit A) directly contradicts this assertion, showing a detailed meet-and-confer letter was sent. This paragraph is an improper attempt to offer a legal conclusion under the guise of a factual declaration.

17

# D.

# OBJECTION TO EXHIBIT C (JUNE 6, 2025 EMAIL): AMBIGUOUS, MISLEADING, AND LACK OF FOUNDATION

Defendants object to Lazaroff Decl. ¶ 7 and the attached Exhibit C in its entirety. The email is ambiguous and presented in a misleading manner to create a false narrative. When read in its full context, defense counsel's response, "The verifications state to the amended complaint. Thus, May 31st, 2025 filings," confirms the Answers were intended to respond to the Amended Complaint. Plaintiffs are attempting to exploit a minor ambiguity to suggest bad faith.

Furthermore, no foundation has been laid for its authentication as a business record. Its probative value is substantially outweighed by the danger of unfair prejudice and misleading the Court on a collateral issue. It is being used for the improper purpose of attacking credibility on a trivial matter unrelated to the merits of the Motion to Dismiss.

# V.

# ARGUMENTS

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

**A.**

**The Motion is Procedurally Proper, and Plaintiffs' Meet-and-Confer Argument is a Distraction**

Defendants fully complied with Local Rule 7.1.(2). The substantive meet-and-confer letter provided Plaintiffs a clear opportunity to avoid this motion. Their counsel's decision not to engage substantively does not equate to a lack of good faith by Defendants.

The focus on a two-hour gap is a red herring designed to obscure their lack of a substantive defense. The purpose of the rule—to promote communication and avoid unnecessary motion practice—was served.

The core purpose of a meet-and-confer requirement is to give the opposing party notice of the issues and a chance to correct or withdraw the challenged pleading. This purpose was fully satisfied. Defendants' counsel provided a comprehensive letter detailing the legal and factual insufficiencies of the FAC.

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Plaintiffs were not ambushed; they were given a clear roadmap of the motion and a chance to retreat. Their choice to stand on their pleading and then complain about the timing of the motion is contrary to the spirit of the rules.

As the court noted in *Snyder v. HSBC Bank, USA, N.A.*, 2012 WL 6698087, at *3 (S.D. Cal. Dec. 21, 2012), the meet-and-confer requirement is not a "gotcha" mechanism but is designed to facilitate resolution. The defendants in Snyder were found to have complied by sending a detailed letter, and the court rejected the plaintiff's argument that a single letter was insufficient, noting the plaintiff had "ample opportunity to respond."

Plaintiffs' argument that the motion is improper because an Answer was filed is a misapplication of the rules that elevates form over substance. While a 12(b)(6) motion is typically filed before an answer, courts have broad discretion to consider the legal sufficiency of a complaint at any time to promote judicial economy.

To deny a motion on purely procedural grounds where the complaint is plainly deficient would waste the resources of both the parties and the Court. The arguments presented go to the fundamental legal viability of the claims, and it is in the interest of justice to resolve them now.

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Ultimately, Plaintiffs' procedural objections are a transparent attempt to avoid a ruling on the merits. They offer no substantive defense to the arguments in the Motion because none exists. The Court should not reward this tactic.

By focusing the Opposition almost entirely on a minor procedural dispute, Plaintiffs have effectively conceded that their FAC cannot withstand substantive legal scrutiny under the standards set forth in *Twombly* and *Iqbal*. The Motion should be decided on its considerable merits.

## B.

### Plaintiffs Concede the Merits by Failing to Rebut the Motion's Core Arguments

The Opposition's silence on the substance of the Motion is deafening. Plaintiffs offer no legal or factual rebuttal to the following fatal flaws, thereby conceding them. The FAC pleads no "badges of fraud" and no facts showing Defendants had knowledge of Plaintiffs' claims or any intent to defraud them at the time of the arm's-length asset purchase by unrelated defendant DSI.

21

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

The FAC does not and cannot allege that these Defendants, who entered the picture in 2024, committed predicate acts as part of a RICO enterprise that allegedly operated from 2013-2021. They are not the "enterprise" and were not its members.

Plaintiffs ignore their failure to make a pre-suit demand or plead demand futility with particularity as required by Delaware law, thus conceding their lack of standing. The FAC's conclusory allegations, based on erroneous third-party website content, fall far short of establishing the "unity of interest and ownership" required to pierce the corporate veil.

By addressing only procedure, Plaintiffs have admitted they cannot state a claim as a matter of law. This failure to oppose arguments constitutes a waiver or abandonment of those claims. It is a well-established principle in the Ninth Circuit that when a party fails to address arguments raised in a motion, it is proper for the court to treat those arguments as conceded.

As held in Shapiro, *Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 69, 71 (D.D.C. 1998), "[w]hen a party responds to some but not all arguments raised on a Motion to Dismiss, a court may treat those arguments that the non-moving party failed to address as conceded." Plaintiffs' strategic decision to ignore the substantive attack on their pleading is a clear concession that the attack is meritorious.

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

The Court should not construct a legal defense for Plaintiffs that they have not advanced themselves. The burden is on Plaintiffs, as the non-moving party, to demonstrate through legal argument and citation to the record that their complaint is legally sufficient. Their Opposition abdicates this responsibility entirely. By offering no response to the detailed legal standards and factual analysis presented in the Motion, they have left the Court with no alternative but to find that the Moving Papers' arguments are unopposed and correct.

This concession extends beyond mere legal argument to the foundational facts of the case. The Motion demonstrated that the FAC is devoid of specific, non-conclusory facts linking these Defendants to the alleged wrongdoing. In the face of this factual void, Plaintiffs do not point to any well-pled allegations that could save their claims. Their silence is an admission that no such facts exist in the pleading, confirming that dismissal is not only warranted but required under the plausibility standard.

## C.

**The FAC's Allegations Against The Stated Defendants Are Legally Insufficient**

Even viewing the FAC in the light most favorable to Plaintiffs, the allegations against Moving Defendants are merely "labels and conclusions." The core theory—that

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

a single, discrete asset purchase in the year 2024 makes one part of a fraudulent scheme that concluded years prior—is not just implausible, it is illogical.

The FAC is a textbook "shotgun pleading" that attempts to lump peripheral parties into a dispute to which they have no connection, simply because they are perceived as a potential source of recovery.

The FAC's attempt to assign liability based on a single, lawful transaction is precisely the type of "guilt by association" pleading that courts routinely reject. The complaint provides no factual nexus between the Defendants' actions and the alleged prior scheme, relying instead on a "catch-all conspiracy theory" that fails to provide these Defendants with fair notice of their specific role in the wrongdoing.

The Ninth Circuit's reasoning in *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1169 (9th Cir. 2002) is directly applicable here. In dismissing a complaint that "lump[ed]" defendants together without specifying individual misconduct, the court held that plaintiffs must "set forth specific facts as to each individual defendant's" alleged role to satisfy Rule 8. The FAC here commits the same error, treating all defendants as a monolithic "enterprise" without distinguishing their conduct.

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Furthermore, the FAC's reliance on post-acquisition website content as evidence of fraudulent intent is both illogical and legally baseless. Correcting inadvertent errors on a website, after being notified of them, demonstrates a commitment to accuracy, not consciousness of guilt. As a matter of law, such routine corporate conduct cannot form the predicate for a claim of fraud or racketeering, as it lacks the requisite element of a false representation made with intent to defraud. These allegations are the epitome of conclusory speculation.

Ultimately, the FAC fails the "so what?" test. Even if the Court accepts every factual allegation as true, the conduct ascribed to these Defendants—participating in a transparent, liquidator-run asset sale by unrelated defendant DSI and subsequently communicating about it—does not amount to a legal wrong.

Without plausible allegations of fraudulent intent, knowledge of the alleged scheme, or substantial assistance in its accomplishment, the claims against Moving Defendants are not just unproven; they are unrecognizable under the applicable legal frameworks. Dismissal with prejudice is required.

## VI.

## CONCLUSION

25

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

Plaintiffs' Opposition confirms what the Moving Papers established: the FAC fails to state a single, plausible claim for relief against Sanostem Global LLC and Dr. Shivinder S. Deol. Having no defense on the merits, Plaintiffs resort to a manufactured procedural dispute.

For the foregoing reasons, Defendants respectfully request that the Court sustain these objections and strike the Lazaroff Declaration and all attached exhibits from the record in support of Plaintiffs' Opposition.

*Respectfully submitted,*

**Dated: October 05, 2025,**                 **LAW OFFICE OF RESHMA KAMATH**

*/S/ Reshma Kamath*

**RESHMA KAMATH**
Counsel for **DEFENDANTS SANOSTEM GLOBAL LLC AND SHIVINDER S. DEOL**

---

i.    Counsel has been severely ill for the past three weeks, and thus, the reply was filed at this hour. If any of the parties, counsel and/or court needs additional time to review the reply, Counsel is happy to allot this time.

26

DEFENDANTS' REBUTTAL TO OPPOSITION OF PLAINTIFFS AND EVIDENTIARY OBJECTION TO PLAINTIFFS' COUNSEL LAZAROFF'S DECLARATION

**<u>Shivinder S. Deol (DEOL)'s Further Declaration in Support of the</u>**

**<u>Reply to the Motion to Dismiss</u>**

I, SHIVINDER S. DEOL DECLARE:

**THIS IS TO CERTIFY THAT:**

1.    In this Civil Action No. 25CV459-BAS SBC

**Defendants:**

a. **Shivinder S. Deol (DEOL)** Individual

4000 Stockdale Hwy, Ste D, Bakersfield, CA 93309

b.    **SanoStem Global, LLC (SSG)** a    Delaware    LLC    /

www.sanostemglobal.com

4000 Stockdale Hwy, Ste D, Bakersfield, CA 93309

**Unrelated Defendant:**

c.    **Duniya SanoStem Inc (DSI)** a Delaware Corporation /

www.sanostem.com

1615 South H Street, Bakersfield, CA 93304

**Not Defendant:**

**Duniya SanoStemedica LTD (DSL)** a Ludhiana, Punjab based Entity

www.sanostem.in

SSG AND DEOL'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST-AMENDED COMPLAINT

RESHMA KAMATH

-1-

2.      There are three (3) separate legal entities with SanoStem full or in part in the names. Plaintiffs have repeatedly used the two (2) unrelated entities SanoStem Global, LLC (SSG) & Duniya SanoStem Inc (DSI) interchangeable as "SanoStem."   Even Duniya SanoStemedica LTD (DSL) is referred to as SanoStem. This is factually wrong and confusing. To avoid further confusion, SSG, DSI, DSL and DEOL will be used to identify correct entity.

3.      I graduated from Armed Forces Medical College, Pune, India (considered to be in the top 3 medical colleges in India) in 1975 at age of 22. I was board certified in Family Practice 3 times. I have been practicing family medicine and functional medicine in Bakersfield, CA since 1982.

4.      I am board certified in Anti-Aging & Regenerative Medicine. I have had keen interest in regenerative medicine including stem cells for over 20 years.

3.      I learnt about Stemedica's unique ischemic-tolerant (low oxygen) mesenchymal stem cells (itMSC) in 2012. I had a heart attack in the year 2013 and got intravenous Stemedica stem cells in Mexico. My results were dramatic, and I became a firm believer in Stemedica's itMSC technology.

SSG AND DEOL'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST-AMENDED COMPLAINT



-2-

4.     Plaintiff Sergey Sikora was aware of my and other patients' treatment of cardiac conditions in Mexico using Stemedica stem cells from the year 2013 onwards, as Sikora assisted in arranging few patient treatments. I had a brief discussion regarding one of my cardiac patients in 2014 with Sikora.

5.     I started investing in Stemedica and finally bought an exclusive India Distributorship for India & neighboring countries in the year 2016 paying $5 million for the license. See attached Exhibit A Page 3.

6.     The license clearly excluded cardiac conditions, see Exhibit B Page 8.  I made it a point not to study, treat or suggest that we do any work with cardiac conditions on my website www.sanostemglobal.com or any correspondence.

7.     One of the reasons I believe that Stemedica failed is that their stem cells were extremely effective in many tested conditions. The management got overly excited and started studying too many indications without focusing on any 1 indication fully. They also started several entities International Swiss unit, CardioCell for cardiac conditions, StemProtein for exosomes, and StemCutis for dermatology, stretching their resources and further losing focus.

SSG AND DEOL'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST-AMENDED COMPLAINT

RESHMA KAMATH

-3-

8.      I also believe that some of the Stemedica key staff were very conservative and wasted money and time while trying to be extremely thorough. For instance, all clinical trials went from Phase I to IIa, to IIb & then to III. This resulted in 4 studies versus going straight from I to II to III. Each phase costs millions of dollars and takes years to complete.

9.      I am not aware of any fraudulent activities by any of the Stemedica board members. I believe some were incompetent and naïve with grandiose ideas of making billions of dollars and lost focus in completing even 1 indication first.

10.      The Plaintiffs completed their Phase IIa clinical trial in Congestive Heart Failure      (CHF)      and      published      it      in      November      2016 https://www.stemedica.com/intravenous-allogeneic-mesenchymal-stem-cells-for-non-ischemic-cardiomyopathy-safety-and-efficacy-results-of-a-phase-ii-a-randomized-trial.

11.      However, the Plaintiffs instead of pursuing Stage IIb/III clinical trial in CHF, apparently started studying itMSC in heart failure with Left Ventricular Assist      Devices      (LVAD)      and      published      the      study      in      April      2018 https://www.stemedica.com/new-stem-cell-therapy-may-transform-heart-failure-treatment.

SSG AND DEOL'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST-AMENDED COMPLAINT

RESHMA KAMATH

-4-

12.    Stemedica apparently provided CardioCell with stem cells in 2016-2018 as CardioCell completed this pivotal LVAD study. I was at that time "surprised" that CardioCell was using resources to study additional indications rather than study their primary CHF indication, which they had successfully completed Phase I/IIa and published the study in 2016.

13.    I received an email announcing the Stemedica Assets Sale on September 6, 2024. I also got a call from the independent Liquidator Steve Gerbsman, telling me about the bidding process and that bidding will end on September 28, 2024. I discussed the purchase options with owners of Duniya SanoStem Inc (DSI), and they decided to put in a blind bid. We were told by Gerbsman that there was 1 bid ahead of the DSI bid. All the initial negotiations and "blind" bidding was handled by an Gerbsman. The 1st bid apparently did not fulfill some prerequisites, and the DSI bid became the winning bid around October 10, 2024.

14.    The independent Liquidator Steve Gerbsman did not share any trolling agreements between the Plaintiffs and Stemedica. There was no indication that a potential CardioCell lawsuit was imminent. I vaguely knew from before that Stemedica has some issues with CardioCell but did not learn of any details to suggest an existing claim. Stemedica provided hundreds of thousands of papers

and electronic documents for due diligence, but I did not discover any CardioCell related issues.

15.    Defendants were not aware of any liabilities to Plaintiffs at the time of the Sale and were not aware of any tolling agreements between CardioCell and Stemedica till after this lawsuit was filed. DSI only bought the Stemedica Assets and ang not any previous liabilities known or unknown.

16.    The Asset Purchase Agreement (APA) was signed on November 27, 2024. It was further ratified on December 20, 2024. The Plaintiffs wrongly assumed that the Sale was completed on February 4, 2025, after I sent out a routine Press Release.

17.    SanoStem Global, LLC (SSG) had no role in buying Stemedica Assets and has no relationship with DSI. DEOL is the only owner of SanoStem Global, LLC (SSG). See Exhibit C SEC Filing.

18.    Michael K. Steinhauser (Steinhauser) was the CEO of Stemedica at the time of Stemedica Assets Sale. He did not collude with DSI or the Defendants in the sale of Stemedica Assets. After the winning bid, Steinhauser became involved

SSG AND DEOL'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST-AMENDED COMPLAINT

RESHMA KAMATH

-6-

in explaining the extremely complex structure of Stemedica Assets, INDs, IP, Inventory, etc.

19.    Steinhauser was never associated with DSI. He was never CEO or officer of DSI as reported in error by the Indian website designer on www.sanostem.in, which is owned by unrelated entity Duniya SanoStemedica LTD (DSL). The DSL designer did a global switch, and all the Stemedica press releases on www.stemedica.com were erroneously posted as being done by "SanoStem" from 2013 onwards. Steinhauser was appointed by Stemedica as its CEO in 2023, and this was copied in its entirety. DSI was formed on October 30, 2024, and obviously was not involved with any previous Stemedica announcements/press releases.

20.    Indian website designer on www.sanostem.in also copied contents from Chinese website http://en.jztmaker.com/cpfw2.html, where they list Stemedica's CMO, defendant Nikolai Tankovich on their scientific advisory board. Tankovich was never associated with DSI. He was not appointed to "SanoStem's" scientific advisory. This was another global switch error by website designer and corrected once the Plaintiffs reported this error to DSI.



21.    SSG website www.sanostemglobal.com correctly posted DEOL's February 4, 2025, Press Release on its website. There was no claim made to cardiology indications rights as alleged by Plaintiffs. The Press Release stated the facts "Stemedica 's clinical-grade Ischemic Tolerant (Low Oxygen) mesenchymal stem cells (itMSC) currently are being used in FDA-approved Investigational New Drug (IND) applications for Acute Myocardial Infarction, Chronic Heart Failure, Cutaneous Photoaging, Ischemic Stroke, Traumatic Brain Injury, and Alzheimer's Disease." There was no claim made that SSG was planning to study any cardiac indication.

22.    Stemedica in 2016 after purchase of India Distribution License, allowed SSG to use all IND information, Clinical Studies, Press releases, and other material on its SSG Website for approval and marketing purposes. "18.3 Manufacturer [Stemedica] approves Distributor [SSG]'s right to use any of Manufacturer's information located within the public domain (press releases, published articles). 18.4 Manufacturer approves Distributor's right to link Distributor's website to Manufacturer parent company site"

file:///C:/Users/deols/Downloads/Clinical%20_%20Stemedica.pdf .

SSG AND DEOL'S NOTICE OF MOTION AND
MOTION TO DISMISS FIRST-AMENDED COMPLAINT



23.    The Chronic Heart failure study is a published study, so anyone can report it. https://www.prnewswire.com/news-releases/cardiocell-reports-positive-results-from-the-first-phase-iia-clinical-trial-using-iv-administration-of-stem-cells-for-chronic-heart-failure-indications-300318580.html.

24.    DEOL wrote to Plaintiffs asking if they want to collaborate on CHF clinical trial. There was no intention to defraud the Plaintiffs as this was openly asked with no ulterior motive than progressing the Stemedica technology. Somehow Plaintiffs are construing this request for collaboration as colluding in fraudulent transfer or for unjust gains.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 30th day of September 2025, at Bakersfield, CA.

*Shivi Deol MD*

**Dr. Shivinder S. Deol (DEOL)**