**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

NINA VIKHRIEVA and SERGEY LESHKOV,

Plaintiffs,

v.

STEMEDICA CELL TECHNOLOGIES, INC.; JIUZHITANG CO., LTD.; ZHUHAI HENGQIN JIUZHITANG YONGHE QIHANG FUND; JIUZHITANG MAKER (BEIJING) CELL TECHNOLOGY CO., LTD.; MAYNARD A. HOWE; ROGER J. HOWE; DAVID HOWE; NIKOLAI I. TANKOVICH; DIRK P. O'HARA; SIMON GUO; CRAIG W. CARLSON; MICHAEL K. STEINHAUSER; SANOSTEM GLOBAL, LLC; DUNIYA SANOSTEM, INC.; SHIVINDER S. DEOL,

Defendants.

Case No. 25-cv-00459-BAS-SBC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS DIRK O'HARA'S AND CRAIG CARLSON'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (ECF No. 99)**

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Dirk O'Hara's and Craig Carlson's Motion to Dismiss Plaintiffs Nina Vikhrieva's and Sergey Leshkov's Second Amended Complaint ("SAC"). (ECF No. 99.)

# I. BACKGROUND

## A. Factual Background

Defendant CardioCell LLC ("CardioCell") is a Delaware limited liability company formed in 2013 and operating from San Diego. (SAC ¶ 1.) Defendant CardioCell's principal asset was an exclusive, perpetual worldwide license from Defendant Stemedica Cell Technologies, Inc. ("Stemedica") for the cardiovascular application of Stemedica's stem cell technology. (*Id.* ¶ 7.)

Plaintiffs Nina Vikhrieva ("Vikhrieva") and Sergey Leshkov ("Leshkov") each invested $2.5 million in CardioCell in December 2013, together invested approximately $20 million in CardioCell and three other Stemedica affiliates, and later consolidated those positions into a Class A Unit interest in CardioCell by an Equity Exchange Agreement. (*Id.* ¶¶ 38, 40–41, 228, 243–270.) Plaintiffs allege that Stemedica and others breached CardioCell's exclusive license for cardiovascular application of Stemedica's stem cell technology, withheld the stem cells and manufacturing know-how CardioCell needed to complete its clinical trials, and ultimately destroyed the company. (*Id.* ¶¶ 12–16, 27–29.)

Defendant Dirk O'Hara ("O'Hara"), a former Stemedica-appointed director of CardioCell, served from August 18, 2018, until November 5, 2020. (*Id.* ¶ 59.) Defendant Craig Carlson ("Carlson"), Stemedica's former Chief Financial Officer,[1] served on CardioCell's board from August 2018 until September 16, 2019. (*Id.* ¶ 61.)

Both O'Hara and Carlson are alleged to have used their dual roles serving on CardioCell's board while holding positions at Stemedica to advantage Stemedica as the two companies' interests diverged. Plaintiffs allege that both made misrepresentations inducing CardioCell to enter into fallible sublicense agreements with Stemedica and inducing Plaintiffs to sign onto amendments of the Equity Exchange Agreement. (*See* O'Hara's misrepresentations (SAC ¶¶ 271, 298–306, 358–366, 420–440, 452, 497–524;

[1] The SAC is inconsistent on Carlson's title. *Compare* SAC ¶ 451(ii) ("Stemedica's CFO"), *with id.* ¶ 128 ("Stemedica's CEO, Craig Carlson").

*id.* ¶ 512 (Predicate Act 12)); Carlson's misrepresentations (*id.* ¶¶ 127–129, 215–218, 256–258, 451; *id.* ¶ 512 (Predicate Acts 11–12)).)

Plaintiffs bring the following causes of action against O'Hara and Carlson:

1. **Count 2 (O'Hara):** Fraudulent Inducement To Enter Into The Equity Exchange Agreement (SAC ¶¶ 428–439);
2. **Count 3 (O'Hara and Carlson):** Breach Of Fiduciary Duty (SAC ¶¶ 440–456);
3. **Count 9 (O'Hara and Carlson):** Violation Of The Racketeer Influenced And Corrupt Organizations Act ("RICO") Under 18 U.S.C. § 1962(c) (SAC ¶¶ 496–514); and
4. **Count 10 (O'Hara and Carlson):** Violation Of RICO Under 18 U.S.C. § 1962(d) (SAC ¶¶ 516–524).

**B. Procedural Background**

Plaintiffs filed this action on February 27, 2025 (ECF No. 1), and a First Amended Complaint on May 30, 2025 (ECF No. 32). O'Hara and Carlson, along with other Defendants, moved to dismiss. (ECF No. 38.) Relevant here, on March 26, 2026, the Court granted that motion in part, dismissing without prejudice Count 2 as to O'Hara and Counts 3, 9, and 10 as to both O'Hara and Carlson. (ECF No. 62.)

Plaintiffs filed the Second Amended Complaint on April 7, 2026. (ECF No. 64.) They amended Count 3. As to Counts 2, 9, and 10, they state that repleading "will not be effective to resolve the issues under the holding of the Court," and that they include those counts "as pleaded in the First Amended Complaint solely to preserve [their] rights to appeal and avoid waiver." (SAC ¶ 36 (citing *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc)).)

On May 20, 2026, the Court dismissed with prejudice Counts 9 and 10 against Defendant David Howe, who had been subject to the same preservation device, and terminated him as a defendant. (ECF No. 91; *see also* ECF Nos. 66, 84, 86.)

O'Hara and Carlson filed the present Motion on June 10, 2026 (ECF No. 99; "Mot.," ECF No. 99-1), Plaintiffs opposed on July 31, 2026 ("Opp.," ECF No. 115), and Defendants replied on August 21, 2026 ("Reply," ECF No. 120).

## II. LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss based on the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. ANALYSIS

### A. Counts 2, 9, and 10

The Court previously dismissed without prejudice Count 2 as to O'Hara, and Counts 9 and 10 as to both O'Hara and Carlson. (ECF No. 62.)

Regarding Count 2 (only asserted against O'Hara), the Court previously found that Plaintiffs failed to adequately plead that O'Hara made a "misrepresentation" under Rules 12(b)(6) and 9(b). (*Id.* at 32:25–34:8.) Since Plaintiffs do not modify their pleadings and explicitly represent as such (SAC ¶ 36), the Court finds that they have failed to address the Court's concerns in its prior Order—which is grounds for dismissal with prejudice. *See Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) ("[A] district court's discretion over amendments is especially broad 'where the court has already given

a plaintiff one or more opportunities to amend his complaint.' " (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987))).

Regarding Counts 9 and 10 (asserted against both O'Hara and Carlson), the Court previously found that Plaintiffs failed to sufficiently allege a requisite predicate act involving O'Hara and Carlson to sustain Plaintiffs' RICO claims (Counts 9 and 10) against them. (*See* ECF No. 62 at 29:15–31:16.) Plaintiffs do not alter their allegations or assert any new predicate acts by O'Hara and Carlson, and again, explicitly state as such. (*See* SAC ¶ 36.) Thus, the Court similarly finds that Plaintiffs' failure to address the Court's concerns in its prior Order regarding Counts 9 and 10—as asserted against O'Hara and Carlson—is grounds for dismissal with prejudice. As mentioned, the Court previously found the same regarding Counts 9 and 10 as asserted against Defendant David Howe. (ECF No. 91.)

The Court notes that Plaintiffs' reliance on *Lacey*, 693 F.3d at 928, and *Denmix I, LLC v. Amtrust Int'l Underwriters*, No. CV 24-05814-MWF (AGRx), 2025 WL 2018505, at *1 (C.D. Cal. June 26, 2025), is misguided. *Lacey* does not mandate that *the Court* dismiss a previously pled claim with or without prejudice, and instead, provides *litigants* direction regarding preserving their claims for appeal. Thus, it does not require—as Plaintiffs argue—that the Court dismiss Counts 2, 9, and 10 against O'Hara and Carlson without prejudice, rather than with prejudice.

Additionally, the *Denmix I* court denied a motion to strike repled allegations in a first amended complaint, and though it "accepts Denmix's representation that it is ***not*** seeking relief under the dismissed claims," it does not rule on whether it would grant a motion to dismiss those same allegations. *Denmix I*, 2025 WL 2018505, at *1 (emphasis in original). Distinguishing the present action from *Denmix I*, this Court finds it relevant that the standard for a motion to dismiss differs from the standard for a motion to strike. Unlike motions to dismiss, motions to strike are disfavored and will not be granted "unless it is clear that [the matter sought to be stricken] can have no possible bearing upon the

subject matter of the litigation." *Memory Control Enter., LLC v. Edmunds.com, Inc.*, No. CV 11-7658 PA (JCx), 2012 WL 681765, at *5 (C.D. Cal. Feb. 8, 2012).

Since Plaintiffs have failed to address the Court's concerns in its prior Order, the Court **GRANTS** O'Hara and Carlson's Motion as to these Counts and **DISMISSES WITH PREJUDICE** Plaintiffs' Count 2 against O'Hara and Counts 9 and 10 against O'Hara and Carlson. (ECF No. 99.)

**B. Count 3 (Breach of Fiduciary Duty)**

Plaintiffs' Count 3 alleges that O'Hara and Carlson, as Stemedica-appointed members of CardioCell's board of directors—O'Hara from August 18, 2018 to November 5, 2020, and Carlson from August 2018 to September 16, 2019—owed Plaintiffs fiduciary duties of care and loyalty, including duties to act in good faith, to disclose material information, and not to make misrepresentations. (SAC ¶¶ 59, 61, 442–445.)

Plaintiffs allege that O'Hara breached those duties (*id.* ¶ 452) by: (i) serving simultaneously on the boards of CardioCell and Stemedica while the two companies' interests diverged (*see, e.g., id.* ¶¶ 420–440, 497–524); (ii) making false representations inducing CardioCell to enter the January 31, 2019 Sublicense Agreement (*id.* ¶ 271); (iii) declining to support CardioCell's position that Stemedica was in default of the Sublicense Agreement, including by denying a breach and taking advice from Stemedica's counsel (*id.* ¶¶ 298–306); (iv) failing to answer investors' questions concerning stem cell availability and manufacturing know-how (*id.* ¶¶ 358–366); and (v) falsely stating that Stemedica would amend the Rivadavia Agreement—which is a June 22, 2015 master manufacturer and distributor agreement between Stemedica and non-Party Rivadavia Universal S.A. (*id.* ¶ 512 (Predicate Act 12)).

Plaintiffs allege that Carlson breached those duties (*id.* ¶ 451) by: (i) failing to assist CardioCell in resolving Stemedica's inadequate stem cell supply (*id.* ¶¶ 127–129); (ii) falsely representing that Stemedica would timely meet CardioCell's requests while he served as Stemedica's CFO/CEO and knew that deliveries were being prioritized to third

parties (*id.* ¶¶ 127–128, 256–258); (iii) failing to disclose the ALTACO Agreement—which is a September 15, 2014 manufacturing and distribution agreement between Stemedica and non-Party ALTACO-XXI LLP that allegedly encroached on CardioCell's exclusive license (*id.* ¶¶ 13, 190, 215–218); (iv) emailing Leshkov an amendment representing that the cardiovascular indication had been excluded from that agreement and later transmitting a different version suggesting it had not been (*id.* ¶¶ 215–218, 512 (Predicate Act 11)); and (v) falsely stating that Stemedica would amend the Rivadavia Agreement (*id.* ¶ 512 (Predicate Act 12)).

Plaintiffs allege that these breaches helped Stemedica divert CardioCell's funds to the directors' own benefit and induced Plaintiffs to roll their $15 million interest in other Stemedica subsidiaries into CardioCell, causing them harm separate from that suffered by other CardioCell shareholders. (*Id.* ¶¶ 454–456.)

Since the Parties do not dispute that CardioCell is "organized as a limited liability company under the laws of the State of Delaware" (*see* Mot. 17:5–6; ECF No. 62 at 31:19–21 (observing Parties cite Delaware law for their breach of fiduciary duty claim)), the Court applies Delaware law to Plaintiffs' breach of fiduciary duty claim.[2]

**1. Pleading Standards**

**i. Rule 9(b)**

O'Hara and Carlson argue that Plaintiffs' breach of fiduciary duty claims are grounded in fraud and subject to the heightened pleading standard in Federal Rule of Civil Procedure 9(b) because the acts Plaintiffs identify as breaches are themselves alleged misrepresentations. (Reply 8:5–18; *see* SAC ¶¶ 451–452.) Plaintiffs respond that it is unsettled whether Rule 9(b) applies to breach of fiduciary duty claims at all (Opp. 9:1–9),

---

[2] Under Cal. Corp. Code § 17708.01(a), "[t]he law of the state or other jurisdiction under which a foreign limited liability company is formed governs . . . : (1) [t]he organization of the limited liability company, its internal affairs, and the authority of its members and managers [and] (2) [t]he liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the limited liability company." Because CardioCell is a Delaware limited liability company (SAC ¶ 1), Delaware law governs its internal affairs and the liability of its managers.

and that if it applies, it reaches only those factual paragraphs that themselves sound in fraud (*id.* 9:10–15).

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The facts pleaded must provide the defendants "notice of the particular conduct" so that they can defend against the plaintiff's accusations "and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation modified). These facts must include the "who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation modified). So "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc).

Where a plaintiff alleges "a unified course of fraudulent conduct" and relies entirely on that conduct as the basis of a claim, the claim is said to be "grounded in fraud" or to "sound in fraud," and the claim as a whole must be pleaded with particularity. *Vess*, 317 F.3d at 1103–04.

Where a plaintiff instead alleges "some fraudulent and some non-fraudulent conduct," only the averments of fraud are subject to that heightened standard, and allegations describing non-fraudulent conduct need satisfy only Rule 8. That follows from the Rule's own terms, which require particularity as to "the circumstances constituting fraud," Fed. R. Civ. P. 9(b), rather than as to the claim in which those circumstances appear. *Vess* therefore held that in such cases Rule 9(b)'s heightened pleading requirements apply only to the "averments" of fraud supporting a claim, rather than to the claim as a whole. *Vess*, 317 F.3d at 1103–04.

Under Delaware law, liability based on fiduciary inaction or breach of the duty of loyalty (as Plaintiffs allege here) does not inherently depend on misrepresentations. *See, e.g.*, *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (finding there is "no dilution" of the duty of loyalty where a director holds "dual or multiple" fiduciary roles); *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (finding fiduciaries who "fail to act in the face of a

known duty to act, thereby demonstrating a conscious disregard for their responsibilities," breach the duty of loyalty); *MacLaughlan v. Einheiber*, 354 A.3d 864, 900 (Del. Ch. 2026) (explaining that dual fiduciary roles create no conflict where the beneficiaries' interests are aligned, but that where those interests diverge the fiduciary faces an inherent conflict); *Pfeiffer v. Toll*, 989 A.2d 683, 691 (Del. Ch. 2010) (rejecting the contention that an insider-trading claim was subject to Rule 9(b), reasoning that the claim was "not a fraud claim, but rather a breach of fiduciary duty claim"), *abrogated in part on other grounds by Kahn v. Kohlberg Kravis Roberts & Co.*, 23 A.3d 831 (Del. 2011).

However, courts have found that breach of fiduciary duty claims can sound in fraud when they do rest on misrepresentations. *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993) (holding that a claim of bad faith need not be pleaded with particularity, because Rule 9(b) permits a "condition of mind" to be averred generally and "[t]he essential elements of a claim of fraud are materially different from those required to establish a tortious state of mind"); *Talece Inc. v. Zhang*, No. 20-CV-03579-BLF, 2020 WL 6205241, at *4 (N.D. Cal. Oct. 22, 2020) ("This claim stems from a unified course of fraudulent conduct averred under the breach of fiduciary duty claim and is therefore subject to the heightened pleading standard of Rule 9(b)."); *Azarmehr v. Wells Fargo Clearing Servs. LLC*, No. 2:25-CV-00088-APG-BNW, 2025 WL 3496705, at *3 (D. Nev. Dec. 3, 2025) ("[P]laintiffs' claims for fraudulent and negligent misrepresentation and breach of fiduciary duty are subject to Rule 9(b)'s standard because they sound in fraud."); *cf. Clark v. Davenport*, No. CV 2017-0839-JTL, 2019 WL 3230928, at *14 (Del. Ch. July 18, 2019) ("When the special relationship involves allegations of fiduciary breach, then the claim for equitable fraud is subsumed in the claim for breach of fiduciary duty.").

Here, the Court first finds that Plaintiffs do not rely entirely on "averments of fraud" to bring their breach of fiduciary duty claim against O'Hara and Carlson. The following allegations do not aver fraud and therefore, under *Vess*, should be evaluated under Rule 8 rather than Rule 9(b): (1) Carlson's failure to assist CardioCell in resolving Stemedica's

inadequate stem cell supply (SAC ¶¶ 127–129, 451(i)); (2) O'Hara's simultaneous service on the boards of CardioCell and Stemedica while the two companies' interests diverged (*id.* ¶ 452(i); *see, e.g., id.* ¶¶ 420–440, 497–524); (3) O'Hara's declining to support CardioCell's position that Stemedica was in default of the January 31, 2019 Sublicense Agreement, including by denying a breach and taking advice from Stemedica's counsel while serving on CardioCell's board (*id.* ¶¶ 298–306, 452(iii)); and (4) O'Hara's failure to answer investors' questions about stem cell availability required to complete CardioCell's clinical trials and to provide manufacturing know-how (*id.* ¶¶ 358–366, 452(iv)).

None of these allegations depend upon Carlson's or O'Hara's having made a false statement or having concealed a material fact. They describe inaction (a failure to assist, a failure to answer), status (simultaneous service on two boards), and a choice of sides (aligning with Stemedica's position rather than CardioCell's). Conduct of that kind breaches the duty of loyalty or care, if at all, whether or not anything Defendants said was untrue. *See Weinberger*, 457 A.2d at 710 (status); *Stone*, 911 A.2d at 370 (inaction); *MacLaughlan*, 354 A.3d at 900 (choice of sides). Rule 9(b) therefore does not reach it. *Cf. Desert Equities*, 624 A.2d at 1208 (bad faith, as a condition of mind, need not be pleaded with particularity).

However, O'Hara and Carlson's alleged false representations or failure to disclose information are subject to the Rule 9(b) pleading standard. These include: (1) Carlson falsely representing that Stemedica would timely meet CardioCell's requests while he served as Stemedica's Chief Financial Officer and knew that deliveries were being prioritized to third parties (SAC ¶¶ 127–128, 256–258, 451(ii)); (2) Carlson failing to disclose the concealed ALTACO Agreement (*id.* ¶¶ 215–218, 451(iii)); (3) Carlson emailing Leshkov an amendment representing that the cardiovascular indication had been excluded from that agreement and later transmitting a different version suggesting it had not been (*id.* ¶¶ 215–218, 451(iv), 512 (Predicate Act 11)); (4) O'Hara making false representations inducing CardioCell to enter the January 31, 2019 Sublicense Agreement (*id.* ¶¶ 271, 452(ii)); and (5) Carlson and O'Hara making false statements that Stemedica

would amend the Rivadavia Agreement (*id.* ¶¶ 451(v), 452(v), 512 (Predicate Act 12)). Thus, under *Vess*, the Court applies Rule 9(b)'s heightened pleading requirements only to the listed "averments" of fraud supporting the claim, rather than to the claim as a whole. 317 F.3d at 1103–04.

First, as to both O'Hara and Carlson, the Court finds that Plaintiffs' allegation that both of them "ma[de] false statements that Stemedica would amend the Rivadavia Agreement ([SAC] ¶ 512, Predicate Act 12)" fails to meet Rule 9(b). As set out in SAC ¶ 512, Predicate Act 12 alleges only that four Defendants collectively "falsely stated during phone calls and in emails" across a ten-month period that Stemedica would amend the Rivadavia Agreement, without identifying which Defendant made which statement, to whom, or when. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106); *see Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007) (Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant").

Next, as to O'Hara, the Court finds that Plaintiffs' allegation that O'Hara "ma[de] false representations to induce CardioCell to enter a Sublicense Agreement ([SAC] ¶ 271)" fails to meet Rule 9(b). SAC ¶ 271 states: "On January 31, 2019, in reliance on the Howe brothers' and Dirk O'Hara's false representations, CardioCell entered into a Sublicense Agreement with Stemedica." Though it supplies the date on which CardioCell entered the Sublicense Agreement, it does not specify when O'Hara made the alleged false representations, what was said during those representations, or where they were made. *See Kearns*, 567 F.3d at 1124 (citing *Vess*, 317 F.3d at 1106). Moreover, this Court has already found that O'Hara's alleged "propos[al of] . . . two unacceptable deals to induce Leshkov and Vikhrieva to enter into a deal consolidating their interest in the subsidiaries into CardioCell as the only viable option" was insufficient to plead that he made "a misrepresentation" under Rule 9(b). (ECF No. 62 at 34:1–8.)

The remaining allegations sounding in fraud underlying Count 3 adequately describe "the who, what, when, where, and how of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106). Notably, these include only Carlson's conduct: (1) Carlson's falsely representing, on September 6, 2018, that Stemedica would timely meet CardioCell's requests—specifically, that it would meet 77% of CardioCell's request within approximately nine months, by the end of May 2019—while he served as Stemedica's Chief Financial Officer and knew that deliveries were being prioritized to third parties (SAC ¶¶ 127–128, 256–258, 451(ii)); (2) Carlson's failure to disclose the concealed ALTACO Agreement, including in his September 4, 2018 response to Leshkov's August 31, 2018 inquiry (*id.* ¶¶ 215–218, 451(iii)); and (3) Carlson's representing to Leshkov, in a September 4, 2018 email, that the cardiovascular indication had been excluded from the ALTACO Agreement by amendment, and attaching an Amendment #1 bearing the same September 15, 2014 date as the agreement it purported to amend—then, later that same day, transmitting a copy of the original ALTACO Agreement containing a different Amendment #1, dated September 15, 2017 (id. ¶¶ 215–218, 451(iv), 512 (Predicate Act 11)). These allegations all identify Carlson alone as the speaker, the particular statement or omission at issue, the date on which it was made, and the person to whom it was directed, and they plead the basis on which the statement is alleged to be false. Therefore, they stand in contrast to the averments addressed above, which name no speaker, no date, and no particular statement.

**ii. Rule 8**

Rule 8 requires that a complaint provide sufficient facts to give a defendant fair notice of the claims against them. *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Twombly*, 550 U.S. at 562–63; *Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Rule 8 also requires that a complaint clearly establish the claims and parties such that a defendant would have "no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss." *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1132 (9th Cir. 2008). "Something labeled a complaint but .

. . without simplicity, conciseness and *clarity as to whom* plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996) (emphasis added); *see also Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026) (disapproving pleadings that assert claims "against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (citation omitted)).

To comply with Rule 8, a plaintiff must also link each defendant to specific instances of unlawful conduct. *See Estate of Bock ex rel. Bock v. Cnty. of Sutter*, No. 2:11-CV-00536-MCE, 2012 WL 423704, at *6 (E.D. Cal. Feb. 8, 2012) (dismissing § 1983 claims where "Plaintiffs . . . directed most of their allegations at 'Defendants' generally, making it impossible to discern which Defendants were responsible for which actions"). Where a plaintiff sues multiple defendants, "[s]pecific identification of the parties to the activities alleged by [a plaintiff] is required . . . to enable the defendant to plead intelligently." *Sherrell v. Bank of Am., N.A.*, No. CV F 11-1785 LJO, 2011 WL 6749765, at *4 (E.D. Cal. Dec. 22, 2011) (internal quotation marks omitted). If the complaint does not specify which conduct is attributable to which defendant, it is subject to dismissal. *See id.* (dismissing the complaint where it "lack[ed] cognizable facts of defendants' purported wrongdoing to provide fair notice as to what each defendant is to defend").

Again, the Court evaluates the following allegations under Rule 8: (1) Carlson's failure to assist CardioCell in resolving Stemedica's inadequate stem cell supply (SAC ¶¶ 127–129, 451(i)); (2) O'Hara's simultaneous service on the boards of CardioCell and Stemedica while the two companies' interests diverged (*id.* ¶¶ 420–440, 452(i), 497–524); (3) O'Hara's declining to support CardioCell's position that Stemedica was in default of the January 31, 2019 Sublicense Agreement, including by denying a breach and taking advice from Stemedica's counsel while serving on CardioCell's board (*id.* ¶¶ 298–306, 452(iii)); and (4) O'Hara's failure to answer investors' questions about stem cell availability required to complete CardioCell's clinical trials and to provide manufacturing know-how (*id.* ¶¶ 358–366, 452(iv)).

First, Plaintiffs' allegation based on Carlson's failure to assist CardioCell in resolving Stemedica's inadequate stem cell supply fails under Rule 8. The allegation does not identify what assistance Carlson owed or withheld, and the cited paragraphs supply no conduct by him. *See Estate of Bock*, 2012 WL 423704, at *6; *Sherrell*, 2011 WL 6749765, at *4. SAC ¶ 127 attributes the diversion of stem cells to "Stemedica, the Howe brothers and Nikolai Tankovich," and *id.* ¶ 129 describes Stemedica's continued delay. The only paragraph in the cited range concerning Carlson is *id.* ¶ 128, which alleges that he "falsely represented that Stemedica would meet 77% of CardioCell's request in approximately nine months by end of May 2019"—a misrepresentation the Court addresses above under Rule 9(b). Plaintiffs' own description of the allegation confirms as much, identifying its content as Carlson's failure to assist "including via email on September 6, 2018." (Opp. 15:23–24.) Defendants are correct that what remains "represents a complaint about the handling of regular company business without specifics as to Carlson's involvement." (Reply 7:13–18; *see* SAC ¶¶ 127–129, 451(i); *supra* § III.B.1.i.)

Second, Plaintiff allege that O'Hara breached his duties by "serving on the board of CardioCell at the same time he was on the board of Stemedica, when the interests of the two companies were opposed to each other as described herein" (SAC ¶ 452(i)), cross-referencing *id.* ¶¶ 420–440 and 497–524. The cross-referenced paragraphs do not supply allegations sufficient to meet Rule 8's pleading standards, because each paragraph within them that names O'Hara attributes the conduct to a group.

More specifically, SAC ¶¶ 434–435 allege that "the Howe brothers and Dirk O'Hara" offered and proposed the two deals at the May 2018 meetings. *Id.* ¶¶ 437–438 allege that "[t]he Howe brothers and Dirk O'Hara" made the statements said to have induced the Equity Exchange Agreement and concealed their intent to defraud. *Id.* ¶ 512 alleges, as Predicate Act 10, that "the Howe brothers and Dirk O'Hara" made the May 4, 2018 proposal, and, as Predicate Act 12, that "the Howe brothers, Craig Carlson, and Dirk O'Hara" made the Rivadavia statements. *Id.* ¶¶ 501, 515 name O'Hara only among the listed Defendants. Nowhere do these paragraphs state what O'Hara himself said or did, as

distinct from his co-Defendants. *See Hernandez*, 666 F.3d at 637; *Estate of Bock*, 2012 WL 423704, at *6; *Sherrell*, 2011 WL 6749765, at *4; *see also Gibson*, 165 F.4th at 1288. Defendants make the same observation, noting that Plaintiffs "do not allege O'Hara made false representations during either meeting, nor do they allege he had any other involvement beyond attending those meetings," (Mot. 11:4–7), and that the allegations "amount to complaints about the handling of regular company business without any specifics as to O'Hara's direct involvement," (Reply 7:7–10). The described conduct also predates O'Hara's August 18, 2018 appointment to CardioCell's board (*id.* ¶¶ 59, 235–242), and forms the basis of Count 2, which the Court dismissed as to O'Hara and which Plaintiffs have not amended (ECF No. 62 at 32–34; SAC ¶ 36).

Third, Plaintiffs' allegation based on O'Hara's declining to support CardioCell's position that Stemedica was in default of the Sublicense Agreement states a claim under Rule 8. (*See* Opp. 15:8–13.) Unlike the preceding allegations, this one identifies conduct by O'Hara, on a specific date, during his service on CardioCell's board. *See Hearns*, 530 F.3d at 1132. On March 18, 2020, CardioCell's chief executive emailed the board—including O'Hara—stating that Stemedica was in default of the Sublicense Agreement for failure to make the clinical trial payments and that CardioCell urgently needed other means of financial support. (SAC ¶ 301.) The same day, O'Hara "replied that Stemedica was not in default and advised that Stemedica was waiting for direction from 'our counsel at Wilson Sonsini.' " (*Id.* ¶ 302.)

Those allegations plausibly describe conduct adverse to the interests O'Hara was bound to protect: a director taking the opposing company's position in a dispute with the company he serves, and describing that company's lawyers as "our counsel." *See MacLaughlan*, 354 A.3d at 900 (citation modified) ("If the interests of the beneficiaries to whom the dual fiduciary owes duties are aligned, then there is no conflict. . . . But if the interests of the beneficiaries diverge, the fiduciary faces an inherent conflict of interest. . . . There is no safe harbor for such divided loyalties in Delaware.").

Defendants characterize the same email as O'Hara "acting in his role as a board member of Stemedica" (Mot. 11:14–17), but the SAC alleges that he replied in his capacity as "the Stemedica-appointed director . . . who had a fiduciary duty to CardioCell" (SAC ¶ 302), and the Court accepts that allegation as true at the motion to dismiss stage. Nor is this allegation a mere "complaint[] about the handling of regular company business"—as O'Hara and Carlson argue. (Reply 7:6–8.) It identifies a specific act by O'Hara taken against the company's stated position.

Fourth, Plaintiffs' allegation based on O'Hara's failure to answer investors' questions about stem cell availability and to provide manufacturing know-how fails under Rule 8 for the reason the first allegation does—the cross-referenced paragraphs attribute the conduct to others. *See Sherrell*, 2011 WL 6749765, at *4. SAC ¶ 358 attributes the refusal to provide manufacturing protocols and know-how to "the Howe brothers"; *id.* ¶ 359 attributes it to "JZT, on behalf of Stemedica"; and *id.* ¶ 363, the paragraph addressing investors' questions, alleges that "Stemedica also intentionally failed to respond to CardioCell's requests to answer potential investors' questions." SAC ¶¶ 364 and 365 likewise name Stemedica alone.

O'Hara appears in the cited range twice: at SAC ¶ 361, as one of several recipients of the chief executive's May 7, 2020 email concerning CardioCell's crowdfunding efforts; and at *id.* ¶ 362, which alleges that "[t]he Stemedica-appointed directors had the ability, but made no effort, to resolve any of these issues." In opposing the Motion, Plaintiffs attempt to reconstrue the allegation as O'Hara "not responding to communications on May 7, 2020" (Opp. 15:13–16). However, Plaintiffs allege only that he was among the email's recipients (SAC ¶¶ 358–366, 452(iv)), and merely receiving an email is not conduct required to be alleged under Rule 8 (*see* Mot. 11:17–23). Additionally, SAC ¶ 362 is a collective assertion as to three directors that identifies neither the ability they held nor the effort they withheld (*see* Reply 7:6–10), and allegations failing to differentiate defendants similarly do not meet the Rule 8 pleading standard. *See Estate of Bock*, 2012 WL 423704, at *6; *Sherrell*, 2011 WL 6749765, at *4.

* * *

Taken together, these rulings under the pleading standards set forth in Rule 9(b) and Rule 8 substantially narrow Count 3.

More specifically, the remaining allegations are as follows:

(1) As to O'Hara: that on March 18, 2020, after CardioCell's chief executive advised the board that Stemedica was in default of the Sublicense Agreement for failure to make the clinical trial payments, O'Hara replied that Stemedica was not in default and that Stemedica was awaiting direction from "our counsel at Wilson Sonsini." (SAC ¶¶ 301–302, 452(iii).)

(2) As to Carlson: that on September 4, 2018, Carlson emailed Leshkov an Amendment #1 to the September 15, 2014 ALTACO Agreement—bearing the same date as the agreement it purported to amend—representing that the cardiovascular indication had been excluded from that agreement, and later transmitted a copy of the original agreement containing a different Amendment #1 dated September 15, 2017. (*Id.* ¶¶ 215–218, 451(iv), 512 (Predicate Act 11).)

(3) As to Carlson: that on September 6, 2018, while serving as Stemedica's Chief Financial Officer, Carlson emailed CardioCell's chief executive falsely representing that Stemedica would meet 77% of CardioCell's stem cell request within approximately nine months, knowing that Stemedica was prioritizing deliveries to third parties and would be unable to meet its obligation to CardioCell. (*Id.* ¶¶ 127–128, 451(ii).)

(4) As to Carlson: that Carlson failed to disclose the concealed ALTACO Agreement and to ensure that the cardiovascular indication was excluded from it. (*Id.* ¶¶ 215–218, 451(iii).)

The Court turns to whether Plaintiff has standing to assert the injuries described in the remaining allegations.

**2. Standing**

To obtain standing for breach of fiduciary duty, the plaintiff must assert a direct claim showing the breached duty was owed to the plaintiff, rather than to the entity. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033, 1039 (Del. 2004). Under Delaware law, the inquiry "must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)[.]" *Id.* at 1033.

Applying the principle in *Tooley*, the Delaware Supreme Court has held that a claim challenging a transaction in which the entity received inadequate consideration is exclusively derivative: the harm falls on the entity, any recovery belongs to it, and the resulting decline in the members' holdings is an indirect consequence. *El Paso Pipeline GP Co., L.L.C. v. Brinckerhoff*, 152 A.3d 1248, 1260 (Del. 2016) (finding the plaintiff lacked standing where it sought recovery based on a partnership's overpayment in a transaction in which ownership interests were dropped down from a parent company to a partnership). That remains so even where the transaction shifts economic value from the minority to a controller. *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266, 1269 (Del. 2021) (finding the plaintiff lacked standing where it sought recovery for the dilution of minority stockholders' financial and voting interests caused by the corporation's issuance of stock to its controlling stockholder for inadequate value, and overruling *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006)).

On the other hand, a claim is direct where the right or opportunity with which the defendant interfered belonged to the holder rather than to the entity: the harm falls on the holder, any recovery belongs to the holder, and the fact that the same conduct also injured the entity does not convert the claim into a derivative one. *See Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1245 (Del. 1999) ("A stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated."); *Blue v. Fireman*, No. 2021-0268-MTZ, 2022 WL 593899, at *14 (Del. Ch. Feb. 28, 2022)

("Defendants' actions may have harmed the Company as well. But the opportunity to profit from the options belonged to the optionholders, not the Company. Interfering with that opportunity thus harmed the optionholders independently of any injury to the Company."). So too where the alleged wrong interfered with the holders' own decision about their own holdings. *Solak v. Mountain Crest Cap., LLC*, No. 2023-0469-SG, 2024 WL 4524682, at *5 (Del. Ch. Oct. 18, 2024) (claim direct where a proxy "affirmatively misled [the company's] stockholders by attributing a value of $10 to their shares," interfering with "their right to decide whether to redeem their shares"); *see also Peña v. MacArthur Grp., Inc.*, 346 A.3d 1136, 1158 (Del. Ch. 2025) ("In *Parnes*, our Supreme Court held that a plaintiff retains direct standing to challenge 'the validity of [a] merger itself,' by 'charging the directors with breaches of fiduciary duty resulting in unfair dealing and/or unfair price' . . . Plaintiff here has standing to bring that direct claim [challenging a merger's fairness] under *Parnes*.") (discussing *Parnes*, 722 A.2d at 1245).

Defendants contend that Plaintiffs' fiduciary duty claims "do not allege any specific harm caused to them as a result of Defendants' alleged breaches," and that "all of Plaintiffs' breach of fiduciary duty claims are related to injuries to CardioCell specifically." (Mot. 21:11–14, 22:15–19; *accord* Reply 9:22–28.) Plaintiffs respond that the alleged breaches "were all alleged to be among the actions taken to mislead Plaintiffs and destroy their investment, an injury clearly distinct from any damage to CardioCell" (Opp. 19:9–11) and that any overlap with harm to CardioCell "does not mean that the direct damages do not exist if there is any relationship to any damages to the corporation" (*id.* 20:12–15).

Though Parties' arguments categorically apply to all allegations underlying Count 3 (Mot. 21:11–13, 22:15–16; Opp. 19:9–11), the Court considers whether each of the four remaining allegations describes injury to CardioCell or to Plaintiffs.

The Court concludes that two of the four remaining allegations describe injury to CardioCell alone. The first is O'Hara's reply, on March 18, 2020, that Stemedica was not in default of the Sublicense Agreement and that Stemedica awaited direction from "our counsel at Wilson Sonsini." (SAC ¶¶ 301–302.) Plaintiffs list this among the breaches

committed "against Plaintiffs' ownership interests" (Opp. 18:15–16, 18:19–23), but their response on standing is categorical (*see id.* 19:9–11), and they offer no account of how the harm to them from this reply differs from the company's. The default O'Hara allegedly denied was Stemedica's failure to make the clinical trial payments, and those payments were owed to CardioCell—not to its members—under the Sublicense Agreement. (SAC ¶¶ 301–302.) Nor do Plaintiffs tie a distinct injury to the reply elsewhere in the pleading: the harm they plead is the destruction of their investment through the destruction of the company. (*See id.* ¶ 137 (Defendants' conduct "caused the destruction of CardioCell and Plaintiffs' investment"); *id.* ¶ 367 (that conduct "effectively destroyed Plaintiffs' investments and CardioCell").) Injury that reaches a member only through his interest in the entity is derivative. *See Brookfield*, 261 A.3d at 1266, 1269. Any recovery on this allegation would run to CardioCell, and Plaintiffs could not prevail "without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039.

The second is Carlson's representation, on September 6, 2018, that Stemedica would meet 77% of CardioCell's stem cell request within approximately nine months. (SAC ¶ 128.) Plaintiffs characterize it as a breach "against Plaintiffs' individual interests" (Opp. 18:1, 18:4–7), and SAC ¶ 451(ii) alleges the representation was made "to CardioCell and Plaintiffs." But even taking that characterization at face value, the same paragraph identifies the resulting harm as one that "ultimately compromised CardioCell's clinical trials critical for its survival and destroyed the company." (SAC ¶ 451(ii).) That harm is the company's, and Plaintiffs' loss follows from it. *See Brookfield*, 261 A.3d at 1266, 1269. Thus, any recovery would similarly run to CardioCell, and Plaintiffs could not prevail on this allegation "without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039. As to this allegation, Defendants are correct that Plaintiffs' alleged injuries "flow from harm to CardioCell." (Reply 9:22.)

However, the Court finds that the two allegations concerning the ALTACO Agreement describe injury to Plaintiffs rather than to CardioCell.

Namely, Plaintiffs allege that Carlson breached his alleged duty to disclose material information and to refrain from misrepresentation by: (1) misrepresenting in a September 4, 2018 email to Plaintiff Leshkov that the cardiovascular indication had been removed from the ALTACO Agreement by amendment, attaching an Amendment #1 bearing the same date as the original agreement, and transmitting later that day a copy of the original agreement containing a different Amendment #1 (SAC ¶¶ 215–218, 451(iv), 512 (Predicate Act 11)); and (2) failing to disclose the fraudulently concealed ALTACO Agreement (*id.* ¶¶ 215–218, 451(iii)). Plaintiffs date that nondisclosure to the "September 4 and 15, 2018 emails." (Opp. 16:3–5.)

First, the injury Plaintiffs allege is that they were misled, and that being misled interfered with their decision about what to do with holdings they owned. A duty not to mislead Plaintiffs runs to Plaintiffs themselves, not to CardioCell alone. *See Solak*, 2024 WL 4524682, at *5 (claim direct where a proxy "affirmatively misled [the company's] stockholders by attributing a value of $10 to their shares," interfering with "their right to decide whether to redeem their shares").

Second, Plaintiffs allege that these breaches "caused Plaintiffs to roll their $15M interest in other subsidiaries into CardioCell." (SAC ¶ 455.) Those interests—shares in Stemedica International held by Leshkov and Vikhrieva, and preferred units in StemProtein and StemCutis held by their investment vehicles and since assigned to them—were assets Plaintiffs held outside CardioCell and that CardioCell never owned. (*Id.* ¶¶ 38, 40–41, 245.) The loss of those interests is a harm to Plaintiffs directly rather than to CardioCell. *See Blue*, 2022 WL 593899, at *14 ("Defendants' actions may have harmed the Company as well. But the opportunity to profit from the options belonged to the optionholders, not the Company. Interfering with that opportunity thus harmed the optionholders independently of any injury to the Company.").

In sum, Plaintiffs allege that the duty to disclose material information ran to them (SAC ¶¶ 444–445), and the loss they allege is the surrender of their own holdings rather than a diminution in the value of their interest in CardioCell. Plaintiffs therefore "can

prevail without showing an injury to the corporation," *Tooley*, 845 A.2d at 1039, and any recovery would run to them rather than to CardioCell, *id.* at 1033, on the latter two representations.

Lastly, the Court addresses Plaintiffs' argument that the Court has already resolved standing for Count 3 because, when addressing Plaintiffs' RICO claims, the Court previously found that they "plausibly plead they were injured not simply because of 'a fraud on [CardioCell],' but rather because they suffered a distinct injury" (Opp. 17:2–3 (quoting *Vikhrieva v. Stemedica Cell Techs., Inc.*, No. 25-cv-00459-BAS-SBC, 2026 WL 836349, at *12 (S.D. Cal. Mar. 26, 2026))), and that "[t]he same distinct injury that this Court found sufficient to establish RICO standing is also the injury underlying the fiduciary duty claims." (*Id.* 17:9–10.) O'Hara and Carlson replied that the prior "analysis of standing was specific as to standing to assert the RICO claims," and that the allegations supporting it "do not exist as to O'Hara and Carlson." (Reply 9:1–3, 10:9–13.)

The Court agrees with O'Hara and Carlson that the prior determination on Plaintiffs' RICO claims does not resolve the present question, which concerns a different cause of action and a narrower set of surviving allegations. RICO standing asks whether a plaintiff was injured in his "business or property" by reason of a violation, 18 U.S.C. § 1964(c), while *Tooley* asks who suffered the harm alleged and who would receive any recovery, 845 A.2d at 1033. A showing sufficient for the former does not establish the latter.

* * *

In sum, Plaintiffs lack standing to assert Count 3 against O'Hara, and against Carlson insofar as it rests on the September 6, 2018 stem cell representation. The Court's prior determination that Plaintiffs adequately pleaded standing as to their RICO claims does not compel a different result as to those allegations. That determination rested on Plaintiffs' allegation that they "were personally targeted to combine their large equity interests in several different subsidiaries into CardioCell through a fraudulently induced contract," which "suggests they suffered 'an injury distinct from that to other shareholders.' " (ECF No. 62 at 22:2–5.) Neither O'Hara's March 18, 2020 denial that Stemedica was in default

nor Carlson's September 6, 2018 representation concerning the stem cell supply describes such targeting.

Plaintiffs do have standing to assert Count 3 against Carlson insofar as it rests on the two allegations concerning the ALTACO Agreement. Because no surviving allegation against O'Hara describes an injury distinct from CardioCell's, the Court **GRANTS** the Motion as to O'Hara and **DISMISSES** Count 3 against him **WITHOUT PREJUDICE**. The Court dismisses this claim without prejudice, rather than with prejudice as it has those claims Plaintiffs declined to amend, because it reaches the direct-or-derivative question as to Count 3 for the first time in this Order.

Count 3 proceeds against Carlson on the following allegations:

(1) that on September 4, 2018, Carlson emailed Leshkov an Amendment #1 to the September 15, 2014 ALTACO Agreement—bearing the same date as the agreement it purported to amend—representing that the cardiovascular indication had been excluded from that agreement, and later transmitted a copy of the original agreement containing a different Amendment #1 dated September 15, 2017 (SAC ¶¶ 215–218, 451(iv), 512 (Predicate Act 11)); and

(2) that Carlson failed to disclose the concealed ALTACO Agreement and to ensure that the cardiovascular indication was excluded from it (*id.* ¶¶ 215–218, 451(iii)).

The Court proceeds to analyze whether these allegations can satisfy the elements for breach of fiduciary duty under Delaware law.

### 3. Fiduciary Duty

The CardioCell Limited Liability Company Agreement ("CardioCell LLCA," ECF No. 99-2) governs CardioCell's internal affairs, including the respective rights and obligations of its Members and its Board of Managers and the circumstances in which they may be held liable to the Company or to one another (*id.* § 4.10); Plaintiffs' interests in CardioCell are expressly made subject to that agreement, "dated as of October 25, 2013 (as

the same may be amended and/or restated from time to time . . . ),” by Section 4(g) of the Equity Exchange Agreement (Mot. 15:9–12; *see* SAC ¶¶ 243–270).

Carlson moves to dismiss Count 3 on the ground that Section 4.10 of the CardioCell LLCA (“Section 4.10”) supplies the governing standard of conduct and exculpates them unless Plaintiffs plead with particularity that they acted without a good-faith belief in the reasonableness of their conduct, or with gross negligence or intentional misconduct—which, Defendants say, Plaintiffs have not done. (Mot. 19:22–20:19.) Plaintiffs respond that Carlson owed them default fiduciary duties of loyalty and care as a CardioCell director, and that Section 4.10 neither mentions duties nor clearly disclaims them but instead preserves liability for precisely the conduct alleged here—fraud, deceit, and intentional misconduct. (Opp. 10:1–14, 11:14–17, 12:7–28.)

Under Delaware law, a claim for breach of fiduciary duty “has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty.” *Leo Invs. Hong Kong Ltd. v. Tomales Bay Cap. Anduril III, L.P.*, 342 A.3d 1166, 1191 (Del. Ch. 2025); *see* ECF No. 62 at 35:3–5. Parties agree on this standard. (Mot. 17:7–11; Opp. 9:19–25.)

Under the Delaware Limited Liability Company Act (the “Act”), 6 Del. C. § 18-101 *et seq.* (2025), “limited liability company managers owe fiduciary duties akin to those owed by directors of a corporation” by default. *Maric Healthcare, LLC v. Guerrero*, No. 2023-1062-NAC, 2024 WL 2993336, at *5 (Del. Ch. June 14, 2024). These default duties run to the members as well as to the entity. *See In re ALH Holdings LLC*, 675 F. Supp. 2d 462, 482 (D. Del. 2009) (“By default, the directors of an LLC owe a fiduciary duty of loyalty to the LLC and its members.”); *Blackmore Partners, L.P. v. Link Energy LLC*, 864 A.2d 80, 85 (Del. Ch. 2004) (denying a motion to dismiss fiduciary duty claims against LLC directors).

Because a Delaware limited liability company is a creature of contract, the analysis of which fiduciary duties are owed begins with the company’s agreement. *See* 6 Del. C. § 18-1101(b) (declaring the policy of giving “maximum effect to the principle of freedom

of contract and to the enforceability of limited liability company agreements"); *Murphy v. Spinoso*, No. 2025-0075-CDW, 2026 WL 775310, at *12 (Del. Ch. Mar. 19, 2026) ("To determine what fiduciary duties are owed in the limited liability company context, the Court must review the company's operating agreement."). A court first examines whether the agreement addresses the issue. Where the agreement is silent, "the rules of law and equity govern . . . including the rules of law and equity relating to fiduciary duties." *Holifield v. XRI Inv. Holdings LLC*, 304 A.3d 896, 923–24 n.119 (Del. 2023) (citing 6 Del. C. § 18-1104).

Under the Act, the company agreement can set the scope of fiduciary duties in the three following ways: (1) by expanding default duties, *see* 6 Del. C. § 18-1101(c); (2) by restricting or eliminating those duties, *id.*; and/or (3) by barring liability for a breach of those duties (*i.e.*, "exculpation"), *see* 6 Del. C. § 18-1101(e). The Act shields one obligation from both operations—an agreement may neither eliminate the implied contractual covenant of good faith and fair dealing, 6 Del. C. § 18-1101(c), nor exculpate a bad-faith violation of it, *id.* § 18-1101(e).

Where parties seek to limit fiduciary duties, any such limitation must be unmistakable in the company agreement. *Holifield*, 304 A.3d at 922 (parties "may contractually disclaim fiduciary duties of members and managers, so long as they do so clearly and unambiguously"). Because drafters "must make their intent to eliminate fiduciary duties plain and unambiguous," "the interpretive scales . . . tip in favor of preserving fiduciary duties." *Bay Ctr. Apts. Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 WL 1124451, at *9 (Del. Ch. Apr. 20, 2009). Where an agreement exculpates fiduciaries from liability for certain conduct, a plaintiff must plead conduct falling outside the exculpation. *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (internal citations omitted) ("Where directors are contractually or otherwise exculpated from liability for certain conduct, 'then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts.'"); *McElrath v. Kalanick*, 224 A.3d 982, 991–92 (Del. 2020) (finding, for example,

"[g]ross negligence, without more, is insufficient to get out from under an exculpated breach of the duty of care").

Separately, where a dispute arises from obligations that are expressly addressed by contract, that dispute is treated as a contract claim, and a parallel fiduciary claim resting on the same facts is foreclosed. *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("[W]here a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim," and "any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."). Conversely, where a limited liability company agreement neither supplies a different standard of conduct nor clearly restricts or eliminates the default fiduciary duties, those duties—including the duties of loyalty and care—govern. *See id.*

Good faith is not a freestanding duty but "a subsidiary element . . . i.e., a condition" of loyalty, and fiduciaries who "fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities," breach the duty of loyalty. *Stone*, 911 A.2d at 369–70. A lack of due care, by contrast, is "fiduciary action taken solely by reason of gross negligence and without any malevolent intent." *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64 (Del. 2006). Holding more than one fiduciary office does not dilute these obligations, as there is "no dilution" of the duty of loyalty where a director holds "dual or multiple" fiduciary roles. *Weinberger*, 457 A.2d at 710.

**i. Scope of Fiduciary Duty under CardioCell LLCA**

The Court first considers whether any relevant fiduciary duties exist. Section 4.10, captioned "Liability," provides:

> No Member or Manager, nor any of their officers, employees, directors, members, partners, shareholders or other representatives or agents shall be liable to the Company or to any other Member for any loss or damage sustained by the Company or any other Member unless the loss or damage shall have been the result of fraud, deceit, reckless or intentional misconduct, or a knowing violation of the law by such Member or member of the Board of Managers. No Member or member of the Board of

> Managers . . . shall be liable, responsible or accountable in damages or otherwise to any Member of the Company for any act performed in good faith by any or all such persons in connection with the affairs of the Company, where such action, inaction or failure to act is based upon the belief that such action, inaction or failure to act is reasonable under the circumstances and does not constitute gross negligence or intentional misconduct.

(ECF No. 99-2 § 4.10; *see* Mot. 19:22–20:11; Opp. 11:15–25.)

Carlson contends that this provision "modifies the standard of conduct of directors by identifying the conduct that can lead to liability," and that it "eliminates all liability for breaches of duties by a company director except in specific instances, *i.e.* lack of good faith, lack of a belief in the reasonableness of the act, gross negligence, and intentional misconduct." (Reply 6:1–2, 6:10–12.) They add that Plaintiffs "do not argue that the CardioCell LLCA does not apply to limit liability for conduct as a director of CardioCell" (*id.* 6:21–22), and that the conduct alleged amounts to "complaints about the handling of regular company business" unaccompanied by allegations of bad faith, unreasonableness, gross negligence, or intentional misconduct (*id.* 7:7–10). The Court agrees with Plaintiffs that Section 4.10 exculpates covered persons from liability rather than restricting or eliminating any fiduciary duty. (*See* Opp. 11:14–17, 12:5–26.) The provision is captioned "Liability," speaks only to who "shall be liable . . . for any loss or damage," and nowhere mentions duties. (*See* ECF No. 99-2 § 4.10.)

Moreover, even if Section 4.10 were read to set the scope of a fiduciary duty, the exceptions by which it preserves liability—for "fraud, deceit, reckless or intentional misconduct, or a knowing violation of the law," and for conduct that "constitute[s] gross negligence or intentional misconduct"—describe the very conduct the default duties of loyalty and care forbid (*id*). *See In re Cadira Grp. Holdings, LLC Litig.*, No. 2018-0616-JRS, 2021 WL 2912479, at *11 (Del. Ch. July 12, 2021) ("[A] contractual duty to refrain from 'willful misconduct' or 'bad faith' corresponds with the traditional duty of loyalty, and a contractual duty to refrain from 'gross negligence' corresponds with the traditional

duty of care."); *Calumet Cap. Partners LLC v. Victory Park Cap. Advisors LLC*, 353 A.3d 88, 114 (Del. Ch. 2026) (observing that if a provision eliminated fiduciary duties, "it would be 'counter-intuitive for the same provision to recognize exceptions to exculpation for gross negligence and willful misconduct'"); *CMS Inv. Hldgs., LLC v. Castle*, No. 9468-VCP, 2015 WL 3894021, at *18 (Del. Ch. June 23, 2015) (finding a clause limiting liability to "gross negligence, willful misconduct or knowing violation of law . . . does not diminish the default standards of care and loyalty under Delaware law"); *Disney*, 906 A.2d at 64 ("[A] lack of due care [is] fiduciary action taken solely by reason of gross negligence and without any malevolent intent.").

Thus, the Court finds that the default duties of loyalty and care—loyalty including the obligation to act in good faith—are neither eliminated nor restricted by the CardioCell LLCA.

**ii. Exculpatory Effect of Section 4.10 on Remaining Allegations Against Carlson**

Having concluded that Section 4.10 does not restrict or eliminate the default fiduciary duties, the Court considers whether the provision nonetheless bars liability for the conduct alleged.

O'Hara and Carlson argue that it does. In their view, Section 4.10 "eliminates all liability for breaches of duties by a company director except in specific instances, *i.e*. lack of good faith, lack of a belief in the reasonableness of the act, gross negligence, and intentional misconduct," and Plaintiffs "must allege and identify conduct that falls within the framework for potential liability." (Reply 6:10–12, 6:25–26.)

As a threshold matter, for the reasons *supra* §§ III.B.1–3, the Court only evaluates the exculpatory effect of Section 4.10 on Plaintiffs' remaining allegations against Carlson—namely: (1) that Carlson emailed a misleading version of the ALTACO Agreement to Plaintiff Leshkov on September 4, 2018 (SAC ¶¶ 215–218, 451(iv), 512 (Predicate Act 11)); and (2) that Carlson failed to disclose the concealed ALTACO Agreement and failed to ensure that the cardiovascular indication was excluded from it (*id.*

¶¶ 215–218, 451(iii)). Given that the Court has found that these allegations already satisfied Rule 9(b)'s particularity requirement, *supra* § III.B.1.i, the Court finds that these allegations also constitute "particularized facts" that can form the basis for "a non-exculpated claim against . . . directors." *Wood*, 953 A.2d at 141.

Next, the Court finds that Section 4.10's first-sentence exception—withholding protection where "the loss or damage shall have been the result of fraud, deceit, reckless or intentional misconduct, or a knowing violation of the law"—applies to Plaintiffs' allegations regarding Carlson's September 4, 2018 email to Leshkov. (ECF No. 99-2 § 4.10.) Plaintiffs describe that email as containing "what appeared to be a falsified Amendment #1," sent "to prove to Leshkov that the cardiovascular indication was excluded from the September 15, 2014 ALTACO Agreement," and the SAC characterizes that act, along with the other predicate acts it enumerates, as one "taken with an intent to defraud." (SAC ¶¶ 451(iv), 512 (Predicate Act 11).) A loss resulting from a knowing misrepresentation—including Plaintiffs' loss in the form of the $15 million interest in three other Stemedica subsidiaries they rolled into CardioCell (*id.* ¶¶ 38, 40–41, 245, 455)—is a loss resulting from fraud or deceit. The first sentence's exception therefore applies, and Section 4.10 affords Carlson no protection as to this allegation.

Furthermore, Section 4.10's second sentence extends protection only to an act "performed in good faith," and only "where such action, inaction or failure to act is based upon the belief that such action, inaction or failure to act is reasonable under the circumstances and does not constitute gross negligence or intentional misconduct." (ECF No. 99-2 § 4.10.) A deliberate misrepresentation made with an intent to defraud is not performed in good faith, and does constitute intentional misconduct. The same is true of Carlson's related failure to disclose the ALTACO Agreement, including in his September 4, 2018 response to Leshkov's inquiry (SAC ¶¶ 215–218, 451(iii)); knowingly withholding a concealed agreement in response to a direct inquiry is "deceit" within the first sentence's exception and is not an act "performed in good faith" under the second.

Accordingly, Section 4.10 does not bar Count 3 against Carlson insofar as that claim rests on his September 4, 2018 email to Leshkov and his related failure to disclose the ALTACO Agreement. To that extent, Plaintiffs have adequately alleged the existence of a fiduciary duty and its breach.

* * *

In sum, the Court **DENIES** the Motion as to Count 3 against Carlson insofar as that claim rests on his September 4, 2018 email to Leshkov (SAC ¶¶ 216–218, 451(iv), 512 (Predicate Act 11)), and his related failure to disclose the ALTACO Agreement (*id.* ¶¶ 215–218, 451(iii)). The Court **GRANTS** the Motion as to Count 3 against Carlson in all other respects, and as to Count 3 against O'Hara, and **DISMISSES** those claims **WITHOUT PREJUDICE**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** O'Hara and Carlson's Motion to Dismiss. (ECF No. 99.) Specifically, the Court **ORDERS** as follows:

1. Count 2, as asserted against O'Hara, is **DISMISSED WITH PREJUDICE**;
2. Counts 9 and 10, as asserted against O'Hara and Carlson, are **DISMISSED WITH PREJUDICE**;
3. Count 3, as asserted against O'Hara, is **DISMISSED WITHOUT PREJUDICE**;
4. Count 3, as asserted against Carlson, is **DISMISSED WITHOUT PREJUDICE** insofar as it rests on (a) Carlson's alleged failure to assist CardioCell in resolving Stemedica's inadequate stem cell supply (SAC ¶¶ 127–129, 451(i)); (b) Carlson's September 6, 2018 representation concerning Stemedica's stem cell deliveries (*id.* ¶¶ 127–128, 256–258, 451(ii)); and (c) Carlson's alleged statements that Stemedica would amend the Rivadavia Agreement (*id.* ¶¶ 451(v), 512 (Predicate Act 12));

5. The Motion is **DENIED** as to Count 3 against Carlson insofar as that claim rests on Carlson's September 4, 2018 email to Plaintiff Leshkov concerning the exclusion of the cardiovascular indication from the ALTACO Agreement, and on his related failure to disclose that agreement (SAC ¶¶ 215–218, 451(iii)–(iv), 512 (Predicate Act 11)); and

6. Any further amended pleading **SHALL** be filed on or before **December 14, 2026**. If Plaintiffs do not amend, the only claim remaining against O'Hara and Carlson will be Count 3 against Carlson, as limited by paragraph 5 above.

**IT IS SO ORDERED.**

**DATED: November 23, 2026**

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**