# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

NINA VIKHRIEVA and SERGEY LESHKOV,

Plaintiffs,

v.

STEMEDICA CELL TECHNOLOGIES, INC.; JIUZHITANG CO., LTD.; ZHUHAI HENGQIN JIUZHITANG YONGHE QIHANG FUND; JIUZHITANG MAKER (BEIJING) CELL TECHNOLOGY CO., LTD.; MAYNARD A. HOWE; ROGER J. HOWE; DAVID HOWE; NIKOLAI I. TANKOVICH; DIRK P. O'HARA; SIMON GUO; CRAIG W. CARLSON; MICHAEL K. STEINHAUSER; SANOSTEM GLOBAL, LLC; DUNIYA SANOSTEM, INC.; SHIVINDER S. DEOL,

Defendants.

Case No. 25-cv-00459-BAS-SBC

**ORDER GRANTING JZT DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT (ECF No. 97)**

For the reasons below, the Court **GRANTS** the Motion to Dismiss filed by Defendants Jiuzhitang Co., Ltd. ("JZT Parent"), Zhuhai Hengqin Jiuzhitang Yonghe Qihang Fund ("JZT Fund"), and Jiuzhitang Maker (Beijing) Cell Technology Co., Ltd.

("JZT Maker") (collectively, the "JZT Defendants"). (ECF No. 97.) The JZT Defendants seek dismissal of Plaintiffs Nina Vikhrieva and Sergey Leshkov's Second Amended Complaint ("SAC"). (ECF No. 64.)

# I. BACKGROUND

## A. Factual Background

This action arises from Plaintiffs' failed $20 million investment in CardioCell, LLC ("CardioCell"), a subsidiary of Defendant Stemedica Cell Technologies, Inc. ("Stemedica") that pursued stem cell treatments for cardiovascular disease. The Court summarized Plaintiffs' allegations in its prior order and does not repeat that account in full. (*See* Order, ECF No. 62.) Instead, the Court focuses on the allegations against the three Chinese entities that bring the present Motion: JZT Parent, JZT Fund, and JZT Maker.

JZT Parent is a publicly traded Chinese pharmaceutical company. (SAC ¶ 43; He Decl. ¶ 7, ECF No. 97-3.) After deciding to invest in Stemedica, a San Diego company, JZT Parent formed JZT Fund to make the investment and JZT Maker to receive Stemedica's stem cell technology. (SAC ¶¶ 44, 50; He Decl. ¶ 21.) The SAC refers to the three entities collectively as "JZT." (SAC 2:3–6.) In May 2018, JZT Fund agreed to invest $70 million in Stemedica for a majority stake and board seats. (SAC ¶ 206; Equity Inv. Agmt. § 4(A), ECF No. 114-7.) According to Plaintiffs, the investment was conditioned on Stemedica's gaining full control of its subsidiaries, and Stemedica's officers then induced Plaintiffs to roll their interests in those subsidiaries into CardioCell, which Plaintiffs agreed to do that same month. (SAC ¶¶ 220–222, 238–240.) In January 2019, CardioCell agreed to sublicense its cardiovascular rights to Stemedica for JZT Maker's use in China and neighboring territories (the "Sublicense"). (*Id.* ¶¶ 284, 288.) Simon Guo, who for a time was a JZT Fund designee on Stemedica's board, negotiated the Sublicense; the parties dispute whether he acted for JZT or for Stemedica. (*Id.* ¶¶ 49, 60, 283–284; Peng 2d Decl. ¶ 26, ECF No. 121-3; Peng Decl. ¶ 40, ECF No. 97-4.) Plaintiffs further allege that, with JZT's encouragement or participation, CardioCell was deprived of the

stem cells, manufacturing know-how, and financing it needed to complete its clinical trials. (SAC ¶¶ 127, 287, 358–359, 366.)

The SAC asserts three claims against the JZT Defendants. In Count 4, Plaintiffs allege that the JZT Defendants aided and abetted the fiduciary breaches of the Stemedica-appointed CardioCell directors, including Guo. (*Id.* ¶¶ 457–462.) The JZT Defendants allegedly did so by confirming those directors' misrepresentations about JZT's business deals with CardioCell, directing Stemedica to prioritize stem cell deliveries to JZT, encouraging the directors not to answer investors' questions or disclose Stemedica's plan, and refusing to provide manufacturing know-how. (*Id.* ¶ 460.)

Counts 9 and 10 allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and conspiracy to violate RICO, *id.* § 1962(d). (SAC ¶¶ 497–524.) Plaintiffs allege that JZT "joined" an association-in-fact enterprise that Maynard and Roger Howe (the "Howe brothers") operated through Stemedica. (*Id.* ¶¶ 499–501.) Of the twenty predicate acts the SAC lists, two involve JZT. (*Id.* ¶ 512.) Both concern Guo's January 2019 dealings with CardioCell's chief executive: an alleged bribe attempt and an allegedly false promise that JZT would invest in CardioCell if it signed the Sublicense. (*Id.* (Predicate Acts 14 and 15).) The SAC also alleges that the enterprise used CardioCell's clinical data "to raise funds for Stemedica, including $70 million from JZT." (*Id.* ¶ 509.)

**B. Procedural Background**

In March 2026, the Court ruled on other Defendants' motions to dismiss the First Amended Complaint, dismissing some claims and allowing others to proceed. (ECF No. 62 at 42:24–43:11.) Plaintiffs then filed the SAC. (ECF No. 64.) The JZT Defendants now move to dismiss the SAC under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (ECF No. 97; ECF No. 97-1 ("Mot.").) Plaintiffs oppose (ECF No. 114 ("Opp.")), and the JZT Defendants have replied (ECF No. 121 ("Reply")). The JZT Defendants support the Motion with declarations from Zhiwei He for JZT Parent, Peng for JZT Fund, and Gao, JZT Maker's chief executive, for JZT Maker. (ECF Nos. 97-2 to 97-

4, 121-1 to 121-3.) Plaintiffs submitted their own declarations and one from Sikora, CardioCell's chief executive. (ECF Nos. 114-1 to 114-3.)

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

Rule 12(b)(2) permits a defendant to move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). When a defendant does so, "the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Will Co. v. Lee*, 47 F.4th 917, 921 (9th Cir. 2022). Where, as here, the motion is decided on written materials without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.*

On a Rule 12(b)(2) motion the Court may consider evidence outside the pleadings. Uncontroverted allegations in the complaint are taken as true, but if the defendant adduces evidence controverting them, "the plaintiff must come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013) (citation omitted). Conflicts between the parties' affidavits are resolved in the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

### B. Rule 12(b)(6)

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. And where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## III. JURISDICTION

Although the JZT Defendants move under Rules 12(b)(1), 12(b)(2), and 12(b)(6), the Court "must determine that [it] ha[s] jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam).

The Court's subject matter jurisdiction does not depend on the JZT Defendants, because the RICO claims remain pending against other Defendants. (*See* ECF No. 62 at 42:24–43:11; *infra* Section III.C.) The Court therefore addresses personal jurisdiction first. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) (holding that there is "no unyielding jurisdictional hierarchy" between subject matter and personal jurisdiction). The Court may not, however, adjudicate the merits of any claim against a defendant over whom it lacks personal jurisdiction.

Personal jurisdiction over a nonresident defendant is proper if a long-arm statute permits it and its exercise comports with federal due process. *Pebble Beach*, 453 F.3d at 1154. For due process to be satisfied, a defendant must have "minimum contacts" with the forum state such that asserting jurisdiction over the defendant would not "offend traditional notions of fair play and substantial justice." *Id.* at 1155 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). California's long-arm statute is coextensive with federal due process requirements, so the two inquiries merge. *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); Cal. Civ. Proc. Code § 410.10.

There are two types of personal jurisdiction: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction permits a court to hear any claim against a defendant, even one unrelated to the defendant's forum activities. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017). Specific jurisdiction, by contrast, extends only to claims that "aris[e] out of or relat[e] to the defendant's contacts with the forum." *Id.* (alterations in original) (citation omitted).

### A. General Jurisdiction

A court may exercise general jurisdiction "only when a defendant is 'essentially at home' in the State." *Ford*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For a corporate defendant, general jurisdiction is paradigmatically appropriate in the state in which the entity is incorporated or where it maintains its principal place of business (where the corporate defendant is "at home"). *See Daimler*, 571 U.S. at 137; *see also Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023).

The SAC alleges that JZT Parent is a PRC company listed on the Shenzhen Stock Exchange (SAC ¶ 43), JZT Fund is a PRC limited liability partnership enterprise (*id.* ¶ 48), and JZT Maker is a PRC company created in Beijing (*id.* ¶ 50). Plaintiffs do not argue otherwise. (*See generally* Opp.) The JZT Defendants argue that they are not subject to general jurisdiction in California because the "SAC concedes that all JZT Defendants are established under PRC [People's Republic of China] laws and operate out of China." (Mot. 7:4–6.)

The JZT Defendants therefore are not subject to general jurisdiction in California. This Court agrees general jurisdiction is inapplicable.

**B. Specific Jurisdiction**

A defendant that is not subject to general jurisdiction in a forum may be subject to specific jurisdiction there only on claims related to its activities in the forum. *See Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014). The Ninth Circuit applies a three-prong test for specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden on the first two prongs; if the plaintiff satisfies them, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would not be reasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)). If any prong is not satisfied, then jurisdiction in the forum would deprive the defendant of due process of law. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020).

Before applying this test, the Court must determine which California contacts may be considered as to each JZT Defendant. The first prong looks to "contacts that the 'defendant himself' creates with the forum State," not to the "unilateral activity of another party or a third person." *Walden*, 571 U.S. at 284 (first quoting *Burger King*, 471 U.S. at 475; and then quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). And "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones*, 465 U.S. 783, 790 (1984); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980). A defendant may nonetheless be charged with another's forum contacts if the two are not truly separate entities or if one acted as the other's agent. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015); *Daimler*, 571 U.S. at 135 n.13. Plaintiffs rely on both theories. They contend that JZT Fund and JZT Maker are JZT Parent's alter egos and agents, so that the subsidiaries' California contacts are JZT Parent's own (Opp. 17:26–19:5), and that Guo acted as JZT's agent, so that his California contacts are attributable to each JZT Defendant (*id.* 19:19–20:14). These theories determine which conduct counts toward each JZT Defendant's purposeful direction, so the Court addresses them first. *See infra* Sections III.B.1–3. The Court then applies the three-prong test to the contacts attributable to each JZT Defendant. *See infra* Section III.B.4.

**1. Whether The Contacts Of JZT Fund And JZT Maker Are Attributable to JZT Parent Under the Alter Ego Test**

A defendant may also be subject to personal jurisdiction under an alter ego theory. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). The alter ego test "is designed

to determine whether the parent and subsidiary are 'not really separate entities,' such that one entity's contacts with the forum state can be fairly attributed to the other." *Id.* at 1071 (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).

Under that theory, a nonresident defendant may be subject to personal jurisdiction even if the defendant has not had any contact with the forum state. *See Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520–21 (9th Cir. 1989). "Under the alter ego doctrine . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Davidson v. Barnhardt*, No. CV 11-7298 FMO (VBKx), 2013 WL 6388354, at *11 (C.D. Cal. Dec. 6, 2013) (citing *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000)). The Ninth Circuit explains:

> California recognizes alter ego liability where two conditions are met: First, "where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;" and, second, where "adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice."

*In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (quoting *Wood v. Elling Corp.*, 20 Cal. 3d 353, 365 n.9 (1977)). "The 'unity of interest and ownership' prong requires 'a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.' " *In re Boon Glob. Ltd.*, 923 F.3d 643, 653 (9th Cir. 2019) (quoting *Ranza*, 793 F.3d at 1073). If the first prong is not met, the Court does not need to analyze the "fraud or injustice" prong. *Ranza*, 793 F.3d at 1075 n.9.

Plaintiffs contend that JZT Fund and JZT Maker are JZT Parent's alter egos. (SAC ¶¶ 45, 47, 54; Opp. 17:26–19:5.)

The unity-of-interest element requires "pervasive control," such as when a parent "dictates every facet of the subsidiary's business." *Ranza*, 793 F.3d at 1073. Factors

militating against a finding of alter ego as to the first element include: "(1) distinct business entities, (2) provide different types of services in different geographical regions, (3) do not share the same employees, (4) have always maintained the appropriate corporate formalities, (5) have always been adequately capitalized to meet their ongoing operational and financial obligations, (6) have always maintained separate bank accounts and never commingled assets or funds, (7) have always maintained separate corporate records, and (8) have always paid their own expenses." *Apple Inc. v. Allan & Assocs. Ltd.*, 445 F. Supp. 3d 42, 53 (N.D. Cal. 2020).

The following factors weigh against finding that JZT Fund and JZT Maker are JZT Parent's alter egos:

1. **Distinct Business Entities (Factor 1)**: The JZT Defendants are three separate PRC entities (SAC ¶¶ 43, 48, 50), each registered and headquartered in a different Chinese city. (He Decl. ¶ 8, ECF No. 97-3; Peng Decl. ¶ 7, ECF No. 97-4; Gao Decl. ¶ 7, ECF No. 97-2.) In addition, each has its own management personnel who make independent operational decisions. (Peng Decl. ¶ 8; He Decl. ¶ 9; Gao Decl. ¶ 8.) The parties dispute control of JZT Fund. The JZT Defendants attest that JZT Fund is managed by an independent general partner. (Peng 2d Decl. ¶¶ 5–6.) Meanwhile, Plaintiffs point to JZT Parent's near-total ownership of JZT Fund, statements on JZT Parent's website, and overlapping personnel. (Opp. 5:1–9, 19–20; SAC ¶¶ 44, 48 & Ex. H.) Resolving the dispute in Plaintiffs' favor, *see Pebble Beach*, 453 F.3d at 1154, the Court accepts that JZT Parent controls JZT Fund—but control exercised through ownership is a feature of every parent-subsidiary relationship, and unity of interest requires the parent to dictate every facet of the subsidiary's business, *Ranza*, 793 F.3d at 1073. JZT Parent's connection to JZT Maker is weaker still, as JZT Maker is 99.9% owned by JZT Fund and JZT Parent holds no direct interest in it. (Gao Decl. ¶ 6; He Decl. ¶ 22.)

2. **Different Services in Different Regions (Factor 2)**: JZT Maker and JZT Fund are each from a different province. JZT Parent makes and sells traditional Chinese medicine; JZT Fund is a private equity fund; and JZT Maker develops stem cell products (He Decl. ¶¶ 7–8; SAC ¶¶ 43, 50; Peng Decl. ¶¶ 6–7; Gao Decl. ¶¶ 6–7). *See Perfect 10, Inc. v. Yandex N.V.*, No. C 12-01521 WHA, 2012 WL 2119257, at *2 (N.D. Cal. June 11, 2012) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." (quoting *Katzir's Floor & Home Design, Inc. v. M-MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004))). Moreover, that JZT Parent formed JZT Fund and JZT Maker to carry out the investment in Stemedica and the related technology transfer (SAC ¶¶ 44, 50; He Decl. ¶ 21) does not show that their businesses are indistinguishable from JZT Parent's. *Cf. In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 810 F. Supp. 2d 1100, 1117 (S.D. Cal. 2011) ("Where a holding company is nothing more than an investment mechanism—a device for diversifying risk through corporate acquisitions—the subsidiaries conduct business not as its agents but as its investments.").

3. **Corporate Formalities (Factor 4)**: Plaintiffs allege generally that the entities "failed to deal with each other at arm's length" (SAC ¶ 54), but they identify no corporate formality that any JZT entity disregarded. Each entity files its own financial statements and tax returns. (Peng Decl. ¶ 8; He Decl. ¶ 9; Gao Decl. ¶ 8.) JZT Fund was formed and operates under limited partnership agreements that govern how its partners contribute capital, and it has maintained its separate legal and financial identity. (Peng 2d Decl. ¶¶ 7–11, 13 & Ex. 1, ECF Nos. 121-3, 121-4.)[1] The mere fact of a parent-subsidiary

[1] The Court considers the supplemental declarations the JZT Defendants filed with their reply. (ECF Nos. 121-1 to 121-3.) Those declarations respond to evidence Plaintiffs submitted with their opposition, including Plaintiffs' declarations about JZT Fund's capitalization and Stemedica's website

relationship does not translate to a disregard of corporate formalities. *See, e.g., Dutrisac v. STMicroelectronics, Inc.*, No. 23-CV-06639-BLF, 2024 WL 3646949, at *7 (N.D. Cal. Aug. 2, 2024) ("[A]lthough Plaintiff argues that STNV's SEC filings conflate STNV and ST Inc., these filings merely state that STNV is a parent company and conducts its operations through subsidiaries . . . Nothing about these statements suggests that STNV and its subsidiaries were ignoring corporate formalities necessary to maintain corporate separateness.").

4. **Separate Bank Accounts and No Commingling (Factor 6)**: JZT Fund "maintains separate bank accounts and books and records from JZT Parent and JZT Maker," and "[t]here has been no commingling of funds, assets . . . between JZT Fund and JZT Parent or JZT Maker." (Peng Decl. ¶¶ 8, 10; *see also* He Decl. ¶¶ 9–10; Gao Decl. ¶¶ 8–9.) *See, e.g., Dutrisac*, 2024 WL 3646949, at *7 (finding no alter ego where "STNV and ST Inc. . . . do not comingle assets; and maintain independent bank accounts."). Plaintiffs do not allege that any JZT entity commingled funds or assets with another.

5. **Separate Corporate Records (Factor 7)**: Each entity maintains its own books and records. (Peng Decl. ¶ 8; He Decl. ¶ 9; Gao Decl. ¶ 8.) *See, e.g., Dutrisac*, 2024 WL 3646949, at *7 (finding no alter ego where "STNV and ST Inc. . . . maintain separate corporate and financial records . . . "). Plaintiffs offer nothing to the contrary.

On the other hand, the following factors are contested or weigh in Plaintiffs' favor:

1. **Shared Employees (Factor 3)**: The JZT Defendants attest that there has been no commingling of personnel among them. (Peng Decl. ¶ 10; He Decl. ¶ 10; Gao Decl. ¶ 9.) Plaintiffs, however, identify three individuals whose roles span more than one JZT entity. (SAC ¶¶ 46, 48; Opp. 7:9–12.) The JZT

---

printout about the identity of JZT Fund's general partner, rather than raising new grounds for dismissal. *Cf. Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

Defendants respond that one of them, Zhiwei He, never held his two positions at the same time. (He 2d Decl. ¶ 10, ECF No. 121-1.) Resolving this conflict in Plaintiffs' favor, the Court finds that this factor weighs toward a finding of alter ego. *See Azod v. Robinson*, No. 2:22-cv-05214-CAS-MRWx, 2026 WL 1662276, at *8 (C.D. Cal. Jan. 12, 2026) ("This evidence that Morgan Creek shared employees with Cecilia and Good Stuff to perform important functions supports an alter ego finding among the three entities.").

2. **Adequate Capitalization (Factor 5)**: Plaintiffs allege that JZT Parent "intentionally failed to adequately capitalize" JZT Fund and JZT Maker (SAC ¶ 54), and they attest that JZT Fund frequently delayed payments to Stemedica because it had to wait for JZT Parent to approve and fund them. (Leshkov Decl. ¶ 43, ECF No. 114-3; Vikhrieva Decl. ¶ 37, ECF No. 114-2.) The JZT Defendants respond that JZT Fund draws capital from JZT Parent, its limited partner, through capital calls, and that it invested approximately $29.5 million in Stemedica that way. (Peng 2d Decl. ¶¶ 7–12; He 2d Decl. ¶ 11.) As for JZT Maker, the SAC itself alleges that it was established with an investment of 200 million yuan. (SAC ¶¶ 50–51 & Ex. I.) A "corporation that was adequately capitalized when formed but subsequently suffers financial reverses is not undercapitalized." *Cal. Dep't of Toxic Substances Control v. NL Indus.*, No. 2:20-cv-11293-SVW-JPR, 2021 WL 5933140, at *4 (C.D. Cal. Oct. 13, 2021) (citing 1 W.M. Fletcher, *Cyclopedia of Corporations* § 41.33 nn.12–14 (collecting cases)). Thus, even accepting Plaintiffs' account, a fund that waits for its limited partner to meet a capital call before paying an investment installment is operating as a capital-call fund is designed to operate. That does not show the fund lacked the capital to meet its obligations. This factor is, at most, neutral.

3. **Paying Own Expenses (Factor 8)**: The JZT Defendants' declarations do not specifically address whether each entity pays its own expenses, although JZT

Fund attests that it "met its investment obligations as capital was called." (Peng 2d Decl. ¶ 13.) Further, Plaintiffs allege JZT Maker was funded at its formation by JZT Fund's investment (SAC ¶ 51 & Ex. I), but as discussed, a parent's funding of its subsidiary's formation is a feature of an ordinary parent-subsidiary relationship. This factor is neutral.

Weighing these factors, Plaintiffs have not made a prima facie showing of unity of interest between JZT Parent and either JZT Fund or JZT Maker. *See Ranza*, 793 F.3d at 1073 (explaining that the plaintiff must make a prima facie showing of both alter ego elements). And the factors on which Plaintiffs rely are ones courts have held insufficient to establish alter ego, including overlapping personnel, capitalization, and funding. *See In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1150–55 (S.D. Cal. 2018) (overlapping board members and officers, involvement in business policies, provision of financing, and undercapitalization insufficient); *Aliign Activation Wear, LLC v. lululemon athletica inc.*, No. 2:20-cv-03339-SVW-JEM, 2020 WL 5790418, at *2–3 (C.D. Cal. Aug. 24, 2020) (shared offices, financial resources, and interlocking directors and officers insufficient); *Ranza*, 793 F.3d at 1074–75 (no alter ego where each entity kept its own facilities, books and records, contracts, and taxes, even though the parent was heavily involved in the subsidiary's operations and they shared employees and directors).

The Court therefore declines to attribute JZT Fund's and JZT Maker's contacts to JZT Parent under an alter ego theory and need not reach whether disregarding the entities' separate identities would result in fraud or injustice. *See Ranza*, 793 F.3d at 1075 n.9.

**2. Whether The Contacts Of JZT Fund And JZT Maker May Be Imputed to JZT Parent Under an Agency Theory**

Even if JZT Fund and JZT Maker are not JZT Parent's alter egos, their California contacts may be attributed to JZT Parent if they acted as its agents. In *Daimler*, the Supreme Court recognized that "[a]gency relationships . . . may be relevant to the existence of specific jurisdiction. A corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." 571 U.S. at 135 n.13. Later, *Williams v.*

*Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017), explained that, "assuming, however, that some standard of agency continues to be relevant to the existence of specific jurisdiction," an agent must "act on the principal's behalf and subject to the principal's control" for the principal to be subject to specific jurisdiction for the actions of the agent. *Id.* at 1024 (internal citations omitted). Plaintiffs argue that *Williams* "addresses general jurisdiction and agency theory and is thus inapposite." (Opp. 19:16–18.) However, the Court disagrees because *Williams* also addressed whether a putative agent's contacts may support specific jurisdiction over the principal. 851 F.3d at 1024–25.

Courts within the Ninth Circuit routinely rely on *Williams* to hold that "specific jurisdiction may be based on an agent's contacts with the forum state only where the 'agent act[s] on the principal's behalf and subject to the principal's control.' " *See, e.g.*, *Juniper Networks, Inc. v. Andrade*, No. 20-CV-02360-BLF, 2020 WL 5630023, at *6 (N.D. Cal. Sept. 21, 2020) (emphasis omitted) (quoting *Williams*, 851 F.3d at 1024); *Bluestar Genomics v. Song*, No. 21-CV-04507-JST, 2023 WL 4843994, at *23 (N.D. Cal. May 25, 2023).

In the context of a parent-subsidiary corporate relationship, agency for purposes of specific jurisdiction requires that a "parent company must have the right to substantially control its subsidiary's activities." *Williams*, 851 F.3d at 1025 (internal citations omitted); *see also In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 700 (C.D. Cal. 2022) (applying *Williams* to require "substantial control"). This requires a showing higher than "normal oversight of a parent over a subsidiary" and more akin to "control of day-to-day operations." *In re Cal. Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021).

Plaintiffs recite the agency test from *Harris Rutsky* for imputing a subsidiary's contacts to a parent—that the subsidiary was "either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself"—but do not apply it to the facts alleged. (Opp. 18:9–12 (quoting *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003)).) The

JZT Defendants contend that the test did not survive *Daimler*. (Mot. 7 n.2.) The Court agrees. *See Williams*, 851 F.3d at 1024–25.

Plaintiffs have not shown that JZT Parent exercises the "substantial control" over JZT Fund and JZT Maker that agency requires, for many of the same reasons they have not shown unity of interest. *See supra* Section III.B.1. Plaintiffs' evidence of ownership, funding, overlapping personnel, and JZT Parent's appointment of JZT Maker's general manager (Opp. 5:1–15, 18:13–19:5; SAC ¶¶ 44–48) reflects the "normal oversight of a parent over a subsidiary," not control of day-to-day operations. *Cal. Gasoline*, 2021 WL 4461199, at *2; *see also Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085–86 (C.D. Cal. 2012) (finding that neither majority ownership nor appointment of a board of directors alone is sufficient to "give rise to an inference of control needed for agency"), *aff'd*, 582 F. App'x 678 (9th Cir. 2014). The same is true of the payment delays Plaintiffs describe, which reflect JZT Fund's capital-call structure. (Leshkov Decl. ¶ 43; Vikhrieva Decl. ¶ 37; Peng 2d Decl. ¶¶ 10–11.) This is also true of JZT Parent's website description of JZT Fund as a "buyout fund under its control." (SAC ¶ 44 & Ex. H.) The remaining allegations that JZT Parent directed its subsidiaries (SAC ¶¶ 49, 53–54) are conclusory, *see Williams*, 851 F.3d at 1025 n.5, and are controverted by the JZT Defendants' declarations. (*See* He Decl. ¶¶ 9–10; Peng Decl. ¶ 8; Gao Decl. ¶ 8.) Accordingly, the contacts of JZT Fund and JZT Maker with California cannot be imputed to JZT Parent under an agency theory.

**3. Whether Guo's Forum Contacts Are Attributable to the JZT Defendants**

Plaintiffs rely heavily on the California contacts of Simon Guo. The Court therefore considers whether those contacts are attributable to any JZT Defendant.

As noted, an agent's forum contacts may be attributed to a principal if the agent "act[s] on the principal's behalf and subject to the principal's control." *Williams*, 851 F.3d at 1024 (quoting Restatement (Third) of Agency § 1.01). In other words, attribution is proper if the agent acts with actual authority on behalf of the principal. *See* Restatement (Third) of Agency § 2.01 (an agent acts with actual authority when it "reasonably believes,

in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act"); Cal. Civ. Code § 2316 (actual authority is that which "a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess").

An agent's acts are also attributable to the principal when the plaintiff makes a prima facie showing that the agent had "at least apparent authority" to perform them. *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1073 (9th Cir. 2001). Apparent authority turns on a third party's reasonable belief that the actor is authorized. *See* Restatement (Third) of Agency § 2.03 (apparent authority exists "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations"); Cal. Civ. Code § 2317 (defining "[o]stensible authority" as that which "a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.").

Apparent authority still must rest on the principal's own conduct. It exists only when a third party reasonably believes the actor has authority to act on the principal's behalf and "that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03; *see* Cal. Civ. Code § 2317; *see also NLRB v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997). The third party's belief must also be objectively reasonable. *Myers*, 238 F.3d at 1073 n.2. An agent's own statements about his authority therefore cannot create apparent authority, and the principal's manifestations support it only as to the acts they reasonably convey authority to perform. *See Brown v. Comcast Corp.*, No. EDCV 16-00264-AB (SPx), 2016 WL 9109112, at *5 (C.D. Cal. Aug. 12, 2016) (quoting *Young v. Horizon W., Inc.*, 220 Cal. App. 4th 1122, 1132 (2013)) ("[O]stensible authority cannot be created merely by a purported agent's representation.").

So limited, apparent authority keeps the inquiry on the defendant's own conduct rather than on "the unilateral activity of another party or a third person." *Walden*, 571 U.S. at 284 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417

(1984)). *Myers* also recognized that a principal's ratification of an agent's acts may support attributing them to the principal. 238 F.3d at 1073 (citing *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1433 (8th Cir. 1995)). Plaintiffs do not argue ratification, so the Court considers only actual and apparent authority.

**i. JZT Fund**

Plaintiffs contend that Guo acted as JZT's "actual or, at minimum, ostensible agent," so that his California contacts are attributable to JZT. (Opp. 19:19–20:14.) The question is whether Plaintiffs have made a prima facie showing that Guo acted with JZT Fund's actual or apparent authority when he negotiated the Sublicense and met with CardioCell's chief executive in San Diego in January 2019. *See Myers*, 238 F.3d at 1073; *Williams*, 851 F.3d at 1024. They have not.

Plaintiffs have not shown actual authority, meaning that JZT Fund consented to Guo's acting on its behalf or had the right to control him. The SAC alleges that JZT Fund "engaged" Guo as its agent (SAC ¶ 49), but JZT Fund controverts that allegation with sworn testimony that it never hired, authorized, or instructed him (Peng Decl. ¶¶ 22, 40, 53–56, ECF No. 97-4; Peng 2d Decl. ¶¶ 39, 45, ECF No. 121-3), and Plaintiffs' declarations describe no agreement, instruction, or means by which JZT Fund directed his dealings with CardioCell. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977) (court "may not assume the truth of allegations in a pleading which are contradicted by affidavit"). Plaintiffs point instead to Guo's roles at Stemedica: JZT Fund designated him as one of its representatives on Stemedica's board and Executive Committee, and its investment agreements addressed the terms on which Stemedica employed him and other key personnel. (Equity Inv. Agmt. §§ 4(A)–(B), 6(C), ECF No. 114-7; Peng 2d Decl. ¶¶ 26, 28; First Supp. Agmt. § 5(8) & Sched. C, ECF No. 121-7.) But as a Stemedica director, Guo owed duties to Stemedica, and the employment provisions protected JZT Fund's investment by governing how Stemedica retained and paid its workforce. None of this shows that JZT Fund authorized Guo to negotiate the Sublicense or promise CardioCell an investment, or that it controlled how he did so. *See Walker v.*

*Ditech Fin. LLC*, No. 16-CV-03084-KAW, 2016 WL 5846986, at *4 (N.D. Cal. Oct. 6, 2016) ("The key factor in determining whether an entity is an employer is 'the right to control and direct the activities of the person rendering service, or the manner and method in which the work is performed.' " (quoting *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682–83 (9th Cir. 2009))).

Nor have Plaintiffs shown apparent authority. Plaintiffs say JZT Fund's board designation, together with what they saw in Beijing, led them to believe that Guo could act for JZT. (Vikhrieva Decl. ¶ 24; Leshkov Decl. ¶ 25.) But designating someone to represent an investor in a portfolio company's governance does not reasonably convey that he may negotiate, on the investor's behalf, a sublicense between that company and a third party, or promise the third party an investment. *See* Restatement (Third) of Agency § 2.03 (requiring that the third party "reasonably believe[] the actor has authority to act on behalf of the principal" and that "that belief [be] traceable to the principal's manifestations"); *cf. In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-CV-870-J (RBB), 2002 WL 32769239, at *14 (S.D. Cal. Oct. 11, 2002) ("The clients' mere grant of authority to an investment manager to invest on its behalf does not confer authority to initiate suit on its behalf.").

The rest of Plaintiffs' evidence comes from Guo himself. Guo spoke of JZT personnel as "our staff" and of personal credit from JZT's chairman, attended the September 2018 Beijing meetings as part of JZT's team, and texted that proposed sublicense terms were "the basic requirements from JZT fund." (Leshkov Decl. ¶¶ 22–25 & Exs. 5, 7, ECF Nos. 114-3, 114-8, 114-10; Vikhrieva Decl. ¶¶ 22–24, ECF No. 114-2.) But "ostensible authority cannot be created merely by a purported agent's representation." *Young*, 220 Cal. App. 4th at 1132; *see Walden*, 571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State."). Plaintiffs also attest that no one on "JZT's team" suggested in Beijing that Guo was not speaking for JZT (Leshkov Decl. ¶¶ 20–25; Vikhrieva Decl. ¶¶ 20–24), but they identify nothing a JZT Fund representative said or did to hold him out as JZT Fund's agent. *See Iron Workers*, 124 F.3d at 1099; *cf. Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026)

(disapproving pleadings that assert claims "against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (citation omitted)). And JZT Fund attests that it never introduced Guo as its agent or gave him a title, business card, email address, or other indicium of affiliation. (Peng 2d Decl. ¶ 45.) This case is thus unlike *Myers*, where the agent was the defendant's own employee and the third party acted only on "the request from [the defendant]." 238 F.3d at 1073 n.2.

Accordingly, Plaintiffs have not made a prima facie showing that Guo acted with JZT Fund's actual or apparent authority, and his California contacts are not attributable to JZT Fund.

**ii. JZT Maker**

Regarding actual authority, Plaintiffs' showing as to JZT Maker is even weaker. The SAC attributes Guo's engagement to JZT Fund (SAC ¶ 49), alleges that Stemedica paid him (*id.* ¶ 210), and otherwise describes him only as an agent of "JZT" collectively (*id.* ¶ 60). And the evidence that Guo acted for Stemedica, discussed above, applies equally here. *See supra* Section III.B.3.i. Plaintiffs also allege that the cardiovascular rights Guo helped negotiate were for JZT's use in China, and that Stemedica had agreed to transfer its technology to JZT Maker. (SAC ¶¶ 209, 273.) But that JZT Maker stood to benefit from the Sublicense does not show that it consented to Guo's acting on its behalf or had any right to control him. *See Walker*, 2016 WL 5846986, at *4.

Plaintiffs' apparent-authority theory fares no better as to JZT Maker. JZT Maker's own conduct is limited to hosting a September 2018 meeting that Guo attended and, on Plaintiffs' account, its officers' failure to dispel the impression that Guo was part of "JZT's team." (*See* Leshkov Decl. ¶¶ 20–28; Vikhrieva Decl. ¶¶ 20–27; Gao 2d Decl. ¶ 5, ECF No. 121-2.) A principal may create apparent authority by allowing a third party to believe an agent is authorized, *see* Cal. Civ. Code § 2317, but Plaintiffs attribute the team's conduct to "JZT" collectively and identify nothing JZT Maker's officers said or did to hold Guo out as JZT Maker's agent. Nor does tolerating Guo's presence at a meeting in Beijing

reasonably convey that JZT Maker authorized him to negotiate the Sublicense or promise CardioCell an investment. *See* Restatement (Third) of Agency § 2.03.

Plaintiffs' remaining evidence fails for the same reasons it fails as to JZT Fund. *See supra* Section III.B.3.i. Guo copied Gao on the August 2018 email arranging Plaintiffs' trip, in which Guo referred to "our staff." (Leshkov Decl. ¶¶ 19–21 & Ex. 5; Vikhrieva Decl. ¶¶ 19–21.) But the email is Guo's own statement, not a manifestation by JZT Maker. Even assuming Gao received it as JZT Maker's chief executive rather than at an address associated with an unrelated institute (Gao 2d Decl. ¶ 10), his receipt shows at most that he knew how Guo described the travel arrangements, not that JZT Maker authorized or controlled Guo's dealings with CardioCell. Attributing Guo's California contacts to JZT Maker on this record would rest jurisdiction on Guo's words and Plaintiffs' impressions rather than on JZT Maker's own conduct. *See Walden*, 571 U.S. at 291 ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State.").

Accordingly, Plaintiffs have not made a prima facie showing that Guo acted with JZT Maker's actual or apparent authority, and his California contacts are not attributable to JZT Maker.

**iii. JZT Parent**

Plaintiffs' showing as to JZT Parent fails for the same reasons. Starting with actual authority, the SAC alleges that JZT Fund engaged Guo "at JZT Parent's direction" (SAC ¶ 49), but JZT Parent controverts that allegation with testimony that it never engaged, authorized, or instructed Guo and understood him to work for Stemedica (He Decl. ¶¶ 23–24, 29–32, ECF No. 97-3; He 2d Decl. ¶¶ 19–20, ECF No. 121-1). Plaintiffs offer no evidence that JZT Parent directed JZT Fund to engage Guo or, as discussed above, that JZT Fund engaged him at all. *See supra* Section III.B.3.i. Nor does Guo's statement that JZT Parent's chairman extended him personal credit help. A loan from an individual officer would not give JZT Parent the right to control Guo's dealings with CardioCell. *See Walker*, 2016 WL 5846986, at *4.

Nor have Plaintiffs shown apparent authority. JZT Parent's own conduct consists of its Vice President's March 2017 visit to Stemedica, accompanied by Guo (Opp. 4:20–22, 20:20–23), and the September 2018 Beijing meetings, including the dinner at its chairman's home, at which Guo was present (SAC ¶¶ 276–279; Vikhrieva Decl. ¶¶ 22–27; Leshkov Decl. ¶¶ 22–28). But the only document from the 2017 visit identifies Guo as "President of Promedica China," not as a representative of any JZT entity. (SAC Ex. L, ECF No. 64-1 at 54.) The SAC itself alleges that Stemedica paid Guo a percentage of the funds he raised from JZT (SAC ¶ 210). Plaintiffs identify nothing JZT Parent's officers said or did in Beijing to convey that Guo could negotiate with CardioCell, or promise it an investment, on JZT Parent's behalf. *See Iron Workers*, 124 F.3d at 1099; Restatement (Third) of Agency § 2.03. Their belief rested instead on Guo's own statements, including his statement about the chairman's personal credit (Leshkov Decl. ¶ 24), and "ostensible authority cannot be created merely by a purported agent's representation." *Young*, 220 Cal. App. 4th at 1132; *see Walden*, 571 U.S. at 291.

Accordingly, Plaintiffs have not made a prima facie showing that Guo acted with JZT Parent's actual or apparent authority, and his California contacts are not attributable to JZT Parent.

* * *

In sum, Guo's California contacts are not attributable to JZT Fund, JZT Maker, or JZT Parent, and they cannot support personal jurisdiction over any of the JZT Defendants on this record. Nor are JZT Fund's and JZT Maker's contacts attributable to JZT Parent. *See supra* Sections III.B.1–2. The Court therefore considers only each JZT Defendant's own California contacts in determining whether it purposefully directed its activities at California.

**4. Whether The JZT Defendants Are Subject to Specific Jurisdiction**

Under the first prong of specific jurisdiction, purposeful availment and purposeful direction are "two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. "A purposeful

availment analysis is most often used in suits sounding in contract," whereas "[a] purposeful direction analysis . . . is most often used in suits sounding in tort." *Id.*

Plaintiffs bring three claims against the JZT Defendants: (1) aiding and abetting breach of fiduciary duty (Count 4) (SAC ¶¶ 457–462); (2) violation of RICO under 18 U.S.C. § 1962(c) (Count 9) (*id.* ¶¶ 497–515); and (3) conspiracy to violate RICO under 18 U.S.C. § 1962(d) (Count 10) (*id.* ¶¶ 516–524).

These claims sound in tort, so the Court applies the purposeful direction test. *See Barantsevich*, 954 F. Supp. 2d at 991 (applying the purposeful direction test to "claims for fraud and RICO wire transfer violations" because they "sound in tort"); *cf. In re Pac. Steel Casting Co. LLC*, No. 19-40193 RLE, 2022 WL 17587320, at *6 (Bankr. N.D. Cal. Dec. 9, 2022) ("Aiding and abetting breach of fiduciary duty is a tort to which California law applies.").

To assess whether a defendant purposefully *directed* its activities at the forum state, courts apply the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984). The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Shawarma Stackz LLC v. Jwad*, No. 21-CV-01263-BAS-BGS, 2021 WL 5827066, at *7 (S.D. Cal. Dec. 8, 2021) (quoting *Schwarzenegger*, 374 F.3d at 803). All three components must be met for a defendant to have purposefully directed activities to the forum state. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018).

**i. Committed an Intentional Act**

For purposes of the *Calder* effects test, "an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 674 (9th Cir. 2012), *abrogated on other grounds by Walden*, 571 U.S. 277. Courts in this circuit have found intentional acts where defendants engaged in allegedly wrongful conduct, such as misappropriating funds, in the course of their business.

*See, e.g.*, *Crecero Techs., Inc. v. Hoffman*, No. 8:25-cv-00251-DOC-KES, 2026 WL 712949, at *4 (C.D. Cal. Feb. 2, 2026).

Each JZT Defendant is alleged to have committed intentional acts. JZT Fund invested in Stemedica and conditioned its investment on Stemedica's gaining control of its subsidiaries. (SAC ¶¶ 206, 220; First Supp. Agmt. § 2.2.) JZT Maker sent employees to Stemedica's San Diego facility for training, and its chief executive refused to provide CardioCell the manufacturing know-how it needed to close a financing with WuXi, a Chinese stem cell manufacturer. (Gao Decl. ¶ 30; SAC ¶¶ 357–359; Leshkov Decl. ¶ 44 & Ex. 11.) And JZT Parent formed JZT Fund and JZT Maker, sent its Vice President and outside auditors to Stemedica, and hosted Plaintiffs at its chairman's home. (SAC ¶¶ 44, 276–277 & Ex. L; He Decl. ¶ 35.) The first element is therefore satisfied as to each JZT Defendant.

**ii. Expressly Aimed at the Forum State**

The express aiming prong of the *Calder* effects test considers a defendant's connection to the forum state and whether the defendant specifically targeted its tortious action toward the forum state. *Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).

Express aiming requires "something more" than "a foreign act with foreseeable effects in the forum state." *Wash. Shoe*, 704 F.3d at 675; *see also Burger King*, 471 U.S. at 475 (explaining that "'random,' 'fortuitous,' or 'attenuated' contacts" do not support jurisdiction). The inquiry looks to "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. But "physical presence in the forum is not a prerequisite to jurisdiction," *id.*, and a defendant that expressly aims its conduct at the forum need not have targeted the forum more than other places, *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (en banc).

The express aiming analysis "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. In *Calder*, for example, the reporter and editor were not charged with "mere untargeted negligence";

their allegedly libelous article about a California resident was "expressly aimed at California." 465 U.S. at 789.

Personal jurisdiction must be separately established as to each individual party-defendant. *See Boon Glob.*, 923 F.3d at 650 (noting that each party's contacts with the forum state must be assessed individually (citing *Calder*, 465 U.S. at 790)); *19 Tao Vega LLC v. Holo Ltd.*, No. C 19-5640 SBA, 2019 WL 9607733, at *4 (N.D. Cal. Dec. 17, 2019) (finding the same when analyzing the "express aiming" prong of the *Calder* effects test). The Court therefore considers each JZT Defendant separately.

**a. JZT Fund**

First, Plaintiffs have made a prima facie showing that JZT Fund expressly aimed its own conduct at California. JZT Fund agreed to invest in Stemedica, a San Diego company, for a majority stake and seats on its board and Executive Committee. (SAC ¶ 206; Equity Inv. Agmt. § 4(A)–(B), ECF No. 114-7.) It then conditioned further payment on Stemedica's control of its subsidiaries, including CardioCell, a San Diego business, and on the termination of CardioCell's license. (First Supp. Agmt. § 2.2(1)–(2), ECF No. 121-7; *see* SAC ¶¶ 220–222.)

That conduct reached into California itself. *Walden* cautions that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 571 U.S. at 286. But JZT Fund did not merely contract with a company that happened to be located here; it sought control over two California companies and over the license under which one of them operated. *Cf. id.* at 285 (focusing on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"). That JZT Fund did so from China does not change the analysis, because "physical presence in the forum is not a prerequisite to jurisdiction." *Id.*

Plaintiffs also allege that JZT Fund routinely sends its lawyers and auditors to Stemedica's San Diego facility (SAC ¶ 49), but JZT Fund denies that allegation (Peng Decl. ¶ 57, ECF No. 97-4). The only on-site visit by auditors in the record was a March 2019 valuation conducted by JZT Parent's outside auditors. (He Decl. ¶¶ 35–36, ECF No.

97-3.) Plaintiffs offer no contrary evidence, so the Court does not credit that allegation. *See Data Disc*, 557 F.2d at 1284. Nor does the Court consider Guo's conduct, because Guo's contacts are not attributable to JZT Fund. *See supra* Section III.B.3.i. Whether each of Plaintiffs' claims against JZT Fund arises out of or relates to JZT Fund's own California-directed conduct is a separate question, addressed below. *See infra* Section III.B.4.iv.

**b. JZT Maker**

Second, Plaintiffs have made a prima facie showing that JZT Maker expressly aimed its own conduct at California. Plaintiffs allege that JZT Maker routinely sends its managers to monitor Stemedica's San Diego operations and is "deeply involved in Stemedica's operations and business dealings." (SAC ¶ 53.) JZT Maker controverts those allegations. (Gao Decl. ¶¶ 29, 31, 34, ECF No. 97-2.) The only evidence Plaintiffs cite is JZT Maker's acknowledgment that it sent employees to Stemedica's San Diego facility in 2018 for technology-transfer training. (Opp. 6:26–28, 14:7–8; Gao Decl. ¶¶ 30, 33.) That trip is itself a contact with California: "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden*, 571 U.S. at 285.

Plaintiffs also allege that JZT Defendants (including JZT Maker), on Stemedica's behalf, refused to provide the manufacturing know-how CardioCell needed to close a financing with WuXi, and that the deal failed as a result. (SAC ¶ 359.) The refusal came in a September 2019 email from Gao, on JZT Maker's behalf, to CardioCell's chief executive in San Diego. (Leshkov Decl. ¶ 44 & Ex. 11, ECF No. 114-14; Gao Decl. ¶ 1; SAC ¶¶ 77, 340.) Separately, Gao allegedly responded to CardioCell's May 2020 cease-and-desist demand with a false denial that JZT Maker was using the cardiovascular rights. (SAC ¶¶ 309–312.)

**c. JZT Parent**

Third, Plaintiffs have not made a prima facie showing that JZT Parent's own conduct was expressly aimed at California.[2]

Plaintiffs point to three kinds of conduct by JZT Parent: (1) its alleged role in Stemedica's governance, including appointing and instructing Stemedica's directors and installing its controller (SAC ¶ 46; Opp. 7:2–4, 14:5–8); (2) a March 2019 on-site valuation of Stemedica by its outside auditors (He Decl. ¶¶ 34–36, ECF No. 97-3; Opp. 6:28–7:2, 14:7–8); and (3) a March 2017 visit to Stemedica by its Vice President (SAC Ex. L, ECF No. 64-1 at 54; Opp. 4:20–22).

But the governance activity is not JZT Parent's own conduct. JZT Fund designated the directors, Stemedica's board appointed them, and the controller was installed under an agreement between JZT Fund and Stemedica. (Peng Decl. ¶¶ 41–42, ECF No. 97-4; Peng 2d Decl. ¶¶ 24, 26, 28, ECF No. 121-3.) Plaintiffs offer no evidence that JZT Parent instructed any of them, so this theory depends on attributing JZT Fund's conduct to JZT Parent, which the Court has already rejected under both alter ego and agency principles. *See supra* Sections III.B.1–2. Nor, as explained above, are Guo's California contacts attributable to JZT Parent. *See supra* Section III.B.3.iii.

JZT Parent's remaining contacts do not show that it targeted any allegedly tortious conduct at California. The March 2019 valuation was part of an annual valuation of JZT Parent's investments conducted for accounting and regulatory purposes. (He Decl. ¶¶ 34–36.) The March 2017 visit was a preliminary look at a potential investment that predated JZT's investment in Stemedica. (SAC Ex. L; He 2d Decl. ¶ 18.) Although both involved activity in California, Plaintiffs do not allege that either was part of the wrongful conduct on which their claims rest. *See Picot*, 780 F.3d at 1214.

---

[2] The JZT Defendants also argue that appointing directors who attend no meetings in California cannot support specific jurisdiction. (Mot. 15:16–23 (citing *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 589–90 (9th Cir.), *supplemented*, 95 F.3d 1156 (9th Cir. 1996)).) The Court need not reach that argument. In any event, *AT&T* discussed the parent's role in electing the subsidiary's directors in rejecting an alter ego theory; its analysis of the parent's own contacts turned on the parent's lack of business or offices in California and its majority interest in the subsidiary. *See AT&T*, 94 F.3d at 589–91.

**iii. Harm Likely To Be Suffered In The Forum State**

The third element "is satisfied when defendant's intentional act has 'foreseeable effects' in the forum." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010). "[T]he 'brunt' of the harm need not be suffered in the forum state"; it is enough that "a jurisdictionally sufficient amount of harm is suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc).

Plaintiffs allege that the JZT Defendants' conduct helped destroy CardioCell, a business that operated from an office in San Diego. (SAC ¶¶ 77, 340.) According to Plaintiffs, Stemedica prioritized stem cell deliveries to JZT over the deliveries CardioCell needed for its clinical trials, with JZT's knowledge and encouragement (*id.* ¶¶ 127, 287); JZT Fund conditioned its investment on the termination of CardioCell's cardiovascular license. (First Supp. Agmt. § 2.2(2), ECF No. 121-7.) CardioCell then allegedly lost the WuXi investment and could not raise the funds it needed. (SAC ¶¶ 358–359, 366.) That harm fell on a business operating in this District. That Plaintiffs are Russian citizens who are not alleged to reside in California (*id.* ¶¶ 37, 39) does not defeat this element, because their injury flows from the destruction of that California business, and the "brunt" of the harm need not be felt here. *See Yahoo!*, 433 F.3d at 1207. Plaintiffs have therefore shown a jurisdictionally sufficient amount of harm in California.

The JZT Defendants contend that they could not have foreseen any harm to CardioCell or Plaintiffs because they did not learn of the dispute between Stemedica and CardioCell until May 2020. (Mot. 13:10–19; Peng Decl. ¶ 47, ECF No. 97-4.) But this element asks whether the JZT Defendants knew the harm from their conduct would likely be felt in California, not when they learned of a particular contract dispute. They knew CardioCell was a San Diego business: JZT Fund's 2018 investment terms targeted CardioCell's license, and Gao's September 2019 email was addressed to the chief executive of that San Diego business. (First Supp. Agmt. § 2.2(2); Leshkov Decl. ¶ 44 & Ex. 11, ECF No. 114-14.) The JZT Defendants acknowledge that JZT Maker's officers

received CardioCell's December 2019 notice of Stemedica's breach, and CardioCell's chief executive attests that Gao responded on JZT's behalf. (Peng 2d Decl. ¶ 21, ECF No. 121-3; Sikora Decl. ¶ 36, ECF No. 114-1.)[3] To the extent the declarations conflict, the conflict is resolved in Plaintiffs' favor. *Pebble Beach*, 453 F.3d at 1154. The third element is satisfied.

**iv. Whether Plaintiffs' Claims Arise Out Of Or Relate To The JZT Defendants' California Contacts**

Under the second prong, the claim must arise out of or relate to the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. In determining whether a claim "arises out of" forum conduct, the Ninth Circuit has applied a "but for" test. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

*Ford* clarified that the second prong is disjunctive: a claim may "relate to" a defendant's forum contacts without a showing of but-for causation, although the phrase "does not mean anything goes" and "incorporates real limits." *Ford*, 592 U.S. at 362. The Court therefore asks whether Plaintiffs' claims arise out of the JZT Defendants' forum contacts and, if not, whether they nonetheless relate to them. The JZT Defendants agree that *Ford* governs, but argue it "merely relaxes the standard from strict but-for causation to a meaningful relation." (Reply 4:8–13.)

A claim may "relate to" a defendant's forum contacts if the plaintiff suffered "the kind of injury that would tend to be caused" by those contacts. *Briskin*, 135 F.4th at 760. "[R]elatedness requires a close connection between contacts and injury." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505–06 (9th Cir. 2023); *see also Nikola v. Foley*, No. 24-4674, 2026 WL 777686, at *3 (9th Cir. Mar. 19, 2026) (explaining that a "lawsuit arises out of a

[3] Plaintiffs contend that the JZT Defendants knew of the dispute as early as August 2018, relying on a Second Supplemental Agreement that they date August 4, 2018. (Opp. 7:20–25.) That agreement was signed on August 4, 2020. (Peng Decl. ¶¶ 42, 48 & Ex. 2.) It refers to the January 31, 2019 Sublicense, so it could not have been signed in 2018. (*Id.* Ex. 2 § 6(1)(a).) The 2018 provision requiring termination of CardioCell's license appears in the First Supplemental Agreement, dated June 1, 2018. (First Supp. Agmt. § 2.2(2).)

defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action." (quoting *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996))).

In *Briskin*, for example, the plaintiff's privacy claims arose out of Shopify's California contacts because Shopify installed cookies on his device without his knowledge while he made an online purchase in California from a California retailer. *See* 135 F.4th at 760.

By contrast, a defendant's substantial presence in California does not establish relatedness when the claims arise from its activities elsewhere. *See, e.g., Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1117 (S.D. Cal. 2021) (no relatedness where, "[d]espite HPI's insurance license and office in the state," plaintiffs had not alleged that the defendants sold insurance "to Plaintiffs or to other California consumers, as opposed to consumers generally").

The question, then, is whether each of Plaintiffs' claims arises out of the JZT Defendants' own California contacts or, if not, whether "similar injuries will tend to be caused by those contacts." *Yamashita*, 62 F.4th at 505. Because personal jurisdiction must exist for each claim, the Court considers each count separately. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

**a. Count 4**

Count 4 alleges that the JZT Defendants aided and abetted breaches of fiduciary duty by CardioCell's Stemedica-appointed directors. (SAC ¶¶ 457–462.) According to Plaintiffs, those directors breached their duties by, among other things, misrepresenting CardioCell's prospects for business with JZT, failing to resolve Stemedica's inadequate stem cell deliveries, and interfering with CardioCell's fundraising. (*Id.* ¶ 459.) The JZT Defendants knowingly and substantially assisted those breaches. (*Id.* ¶ 460.) The breaches caused Plaintiffs to roll their $15 million interest in Stemedica's other subsidiaries into CardioCell and to suffer harm distinct from that of other CardioCell shareholders. (*Id.* ¶ 461.)

First, Count 4 arises out of JZT Fund's California-directed conduct. That conduct is JZT Fund's requirement, as a condition of its investment, that Stemedica, a San Diego company, gain full control of its subsidiaries, including CardioCell, another San Diego company. *See supra* Section III.B.4.ii.a. JZT Fund imposed that requirement around the beginning of 2018, months before Plaintiffs agreed to consolidate in May 2018, and later restated it as a condition of its second installment. (SAC ¶¶ 220, 238–240; First Supp. Agmt. § 2.2(1), ECF No. 121-7 (restating the requirement of the parties' earlier Engagement Agreement of Equity Investment).) Plaintiffs allege that the directors pressed for the consolidation because JZT's investment required it. (SAC ¶¶ 220–222.) On Plaintiffs' account, then, the consolidation that produced their Count 4 injury would not have occurred but for JZT Fund's investment condition. Guo's conduct plays no part in this analysis because it is not attributable to JZT Fund. *See supra* Section III.B.3.i. Whether JZT Fund knew of the directors' breaches is a merits question. *See infra* Section IV.A.2.i.

Second, Count 4 also arises out of JZT Maker's California-directed conduct. That conduct is Gao's September 2019 email to CardioCell's chief executive in San Diego, in which Gao, as JZT Maker's chief executive, refused to give CardioCell, a San Diego company, the manufacturing know-how it needed to close its financing with WuXi. (Leshkov Decl. ¶ 44 & Ex. 11, ECF No. 114-14; SAC ¶ 359.) *See supra* Section III.B.4.ii.b. Plaintiffs allege that this refusal, which the SAC describes as made on Stemedica's behalf, is how the JZT Defendants assisted the directors' breaches. (SAC ¶ 460(iv).) Plaintiffs also allege that, as a result, the WuXi deal did not close and CardioCell could not raise the funds it needed. (*Id.* ¶¶ 359, 366.)

The Court does not rely on JZT Maker's October 2018 training trip. The SAC links JZT Maker's presence in San Diego to the allegation that the JZT Defendants directed Stemedica to prioritize stem cell deliveries to JZT (SAC ¶¶ 53, 460(ii)), but the trip was technology-transfer training (Gao Decl. ¶¶ 30–34, ECF No. 97-2), and Plaintiffs offer no

evidence that it played any part in the diversion of stem cells. Treating that trip as related to Count 4 would exceed the limits *Ford* describes. *See Ford*, 592 U.S. at 362.

Third, even if JZT Parent's own contacts had been expressly aimed at California, Count 4 neither arises out of nor relates to them. As explained above, the governance activity Plaintiffs attribute to JZT Parent was JZT Fund's. *See supra* Section III.B.4.ii.c. Even if it were JZT Parent's, it would not connect JZT Parent to Count 4. The breaching fiduciaries are CardioCell's directors, whom Stemedica seated (SAC ¶¶ 458–459; *see id.* ¶¶ 60–61), not the Stemedica directors whose designation Plaintiffs attribute to JZT Parent, and the SAC does not allege that those Stemedica directors carried out any of the assistance described in ¶ 460, which it attributes to "JZT" generally. *See Gibson*, 165 F.4th at 1288.

JZT Parent's two remaining California contacts, a March 2017 visit to Stemedica and a March 2019 valuation, do not relate to Count 4 either. The 2017 visit took place before any of the events on which Count 4 rests. (SAC Ex. L; He 2d Decl. ¶ 18, ECF No. 121-1.) The 2019 valuation was a valuation of JZT Fund's investment performed to meet JZT Parent's compliance obligations under Chinese law. (He Decl. ¶¶ 34–36, ECF No. 97-3.) Plaintiffs contend that the valuation revealed Stemedica's breaches (Opp. 16:23–17:1), but learning of a breach is not causing or furthering it, and Plaintiffs do not explain how either contact contributed to the directors' alleged breaches. Treating such contacts as related to Count 4 would disregard the "real limits" that the "relate to" standard imposes. *See Ford*, 592 U.S. at 362.

**b. Count 9**

Count 9 alleges that the JZT Defendants violated 18 U.S.C. § 1962(c) by participating in an enterprise that defrauded CardioCell's investors. (SAC ¶¶ 497–515.) A defendant violates § 1962(c) by participating in the enterprise's affairs "through a pattern of racketeering activity," 18 U.S.C. § 1962(c), so the conduct underlying Count 9 is each defendant's own racketeering. As this Court previously held, a substantive RICO claim requires at least two predicate acts. (*See* ECF No. 62 at 8:15–17, 27:3–7.) Only two of the twenty predicate acts the SAC lists involve JZT: Guo's alleged bribe attempt and false

promise of investment during his January 2019 meetings with CardioCell's chief executive in San Diego (Predicate Acts 14 and 15). (SAC ¶¶ 283–284, 512.) Because Guo's contacts are not attributable to any JZT Defendant, *see supra* Section III.B.3, those predicate acts cannot connect Count 9 to the JZT Defendants' own California contacts. Count 9 therefore neither arises out of nor relates to any JZT Defendant's California contacts.

**c. Count 10**

Count 10 alleges that the JZT Defendants conspired to violate § 1962(c). (SAC ¶¶ 516–524.) A RICO conspiracy claim does not depend on the defendant's own predicate acts. A conspirator "must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). A defendant's own acts in furtherance of the alleged conspiracy may therefore connect Count 10 to California even if they are not predicate acts. But those acts must be the defendant's own, and the acts of its alleged co-conspirators cannot be attributed to it. *See Walden*, 571 U.S. at 284; *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1089 (C.D. Cal. 2010) ("[A]ctions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction.").

JZT Maker's California-directed conduct is sufficiently connected to Count 10 to satisfy the second prong. The SAC attributes CardioCell's inability to raise funds to a "conspiracy by Stemedica, the conflicted Stemedica directors, the Howe brothers, and JZT to interfere with CardioCell's fund-raising efforts and refusal to provide the stem cell manufacturing know-how." (SAC ¶ 366.) "JZT" refers collectively to all three JZT Defendants. (*Id.* at 2:4–6.) But, the only JZT conduct the SAC describes is JZT Maker's refusal to share its manufacturing know-how (*id.* ¶ 359). Gao's September 2019 WuXi email to the chief executive of CardioCell, a San Diego business, withheld that know-how on JZT Maker's behalf and allegedly cost CardioCell the WuXi deal. (*Id.* ¶¶ 77, 340, 359; Leshkov Decl. ¶ 44 & Ex. 11, ECF No. 114-14.) That email is the conduct that SAC ¶¶

366 and 510 describe, so Count 10 relates to JZT Maker's California-directed conduct. *See Ford*, 592 U.S. at 362; *Yamashita*, 62 F.4th at 505–06; *Briskin*, 135 F.4th at 760. Whether the SAC plausibly alleges that JZT Maker agreed to further a pattern of racketeering is addressed below. *See infra* Section IV.B. Gao's May 2020 response to the cease-and-desist demand, by contrast, adds nothing: the SAC alleges only that it was false. (SAC ¶¶ 310–311.)

JZT Fund's California-directed conduct, by contrast, is not sufficiently connected to Count 10. By conditioning its own investment on Stemedica gaining full control of its subsidiaries, JZT Fund allegedly contributed to the conspiracy to force Plaintiffs to consolidate their subsidiary interests into CardioCell. (SAC ¶¶ 206, 220; Opp. 1:16–20, 4:9–14; Equity Inv. Agmt. § 4(A)–(B), ECF No. 114-7; First Supp. Agmt. § 2.2(1)–(2), ECF No. 121-7.) *See supra* Section III.B.4.ii.a. However, the consolidation-related predicate acts were committed by Stemedica's officers (SAC ¶ 512 (Predicate Acts 7–10)), whose acts cannot be attributed to JZT Fund. *See Walden*, 571 U.S. at 284; *Calder*, 465 U.S. at 790; *EcoDisc Tech. AG*, 711 F. Supp. 2d at 1089 ("[A]ctions taken by co-conspirators in furtherance of the conspiracy cannot be attributed to a conspirator for purposes of establishing personal jurisdiction.").

JZT Parent's California contacts are likewise not sufficiently connected to Count 10. The conspiracy Plaintiffs allege turns on JZT's investment condition and the acts of Stemedica's officers (*see* SAC ¶¶ 220–222, 512; Opp. 1:16–20, 4:9–14), and JZT Parent's own contacts are no part of it, as discussed *supra* Section III.B.4.ii.c. Though Plaintiffs argue that the March 2019 on-site valuation of Stemedica by its outside auditors is related to their claims because it revealed Stemedica's breaches (Opp. 16:23–17:1), Count 10 does not rest on JZT Parent's review of its investment, and the "relate to" standard "incorporates real limits." *Ford*, 592 U.S. at 362. Moreover, JZT Maker's contacts cannot be imputed to JZT Parent to find that Count 10 claims against JZT Parent also relate to JZT Maker's California contacts. *Ranza*, 793 F.3d at 1070 (parent-subsidiary relationship alone does not justify imputing one entity's contacts to another).

* * *

In sum, Plaintiffs' Count 4 claims against both JZT Fund and JZT Maker sufficiently relate to those Defendants' California contacts. In addition, Plaintiffs' Count 10 claims against JZT Maker sufficiently relate to JZT Maker's California contacts.

**v. Whether The Exercise Of Jurisdiction Is Reasonable**

JZT Fund and JZT Maker must therefore "present a compelling case" that exercising jurisdiction over them on the claims for which Plaintiffs have satisfied the first two prongs—Count 4 against both, and Count 10 against JZT Maker—would be unreasonable. *Schwarzenegger*, 374 F.3d at 802 (quoting *Burger King*, 471 U.S. at 477). The Court considers seven factors for assessing whether the exercise of jurisdiction is reasonable: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Menken*, 503 F.3d at 1060.

Because Plaintiffs have not satisfied the first two prongs as to JZT Parent, as to Count 9 against any JZT Defendant, or as to Count 10 against JZT Fund, the Court does not reach reasonableness for those claims. The JZT Defendants do not distinguish between JZT Fund and JZT Maker in arguing this prong (*see* Mot. 16:9–17:27; Reply 7:20–27), so the Court considers each factor as to both, noting where they differ.

The first factor (purposeful interjection into California) favors Plaintiffs as to JZT Fund, and only slightly as to JZT Maker. *Philippe Charriol Int'l Ltd. v. A'lor Int'l Ltd.*, No. 13CV1257-MMA (JLB), 2014 WL 12284076, at *7 (S.D. Cal. May 30, 2014) ("[A]ctions directed at a forum resident expected to cause harm in the forum constitute purposeful injection." (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998))). JZT Fund did not deal with California in passing: it invested in a San Diego company over several years, obtained seats on that company's board and Executive

Committee, and conditioned its investment on control of a second San Diego company and the termination of that company's license. (SAC ¶ 206; Equity Inv. Agmt. § 4(A)–(B), ECF No. 114-7; First Supp. Agmt. § 2.2(1)–(2), ECF No. 121-7.) JZT Maker's purposeful interjection is more limited. Its contacts are a 2018 training trip to San Diego (Gao Decl. ¶¶ 30, 33, ECF No. 97-2) and Gao's September 2019 email (SAC ¶ 359; Leshkov Decl. ¶ 44 & Ex. 11, ECF No. 114-14).

The second factor (burden of defendant to defend in California) favors JZT Fund and JZT Maker. Both are organized and operate in China, and their witnesses reside there. (Peng Decl. ¶¶ 6–7, 43, ECF No. 97-4; Gao Decl. ¶¶ 6–7.) "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 114 (1987). But this factor is not dispositive. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). Unless the inconvenience is "so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision*, 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988).

JZT Fund's burden does not rise to that level of inconvenience. JZT Fund chose to invest in a San Diego company, to take seats on its board and Executive Committee, and to have its investment governed by California law. (Equity Inv. Agmt. §§ 4(A)–(B), 10, ECF No. 114-7.) *See Burger King*, 471 U.S. at 482 (choice-of-law provision "reinforced [the defendant's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there"). Having tied its investment to California in these ways, JZT Fund could reasonably anticipate defending disputes arising from that investment here. *See Sinatra*, 854 F.2d at 1197 ("Given the Clinic's commercial activity in the forum state, it should have reasonably anticipated being brought into court in California.").

The same is true for JZT Maker, which agreed to receive Stemedica's stem cell technology from San Diego and to send its personnel to Stemedica's San Diego headquarters for on-site training, and which sent five employees there for up to two months in October 2018. (Gao Decl. ¶¶ 30–33.) Because JZT Maker is subject to jurisdiction here on Count 4, defending Count 10 here imposes little additional burden on it. And because JZT Fund will be litigating alongside JZT Maker, the added cost of defending JZT Fund here is limited as well. The two share counsel, and JZT Maker's chief executive, Gao, is also one of JZT Fund's designees on Stemedica's board. (Peng Decl. ¶ 41.)

The third factor (extent of conflict with the sovereignty of the defendants' state) is neutral, because neither JZT Fund nor JZT Maker identifies any conflict with China's sovereignty.

The fourth factor (forum state's interest in adjudicating the action) favors Plaintiffs. California has an interest in redressing harm to businesses that operate within its borders, and the harm alleged here fell on CardioCell in San Diego. (SAC ¶¶ 77, 340.) "A state has a special interest in exercising jurisdiction over those who have committed tortious acts within the state." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 608 (9th Cir. 2018) (quoting *Data Disc,* 557 F.2d at 1288). The JZT Defendants emphasize that this is a dispute between Russian plaintiffs and Chinese defendants (Mot. 17:18–19; Reply 7:21–23), and that because Plaintiffs are not California residents, California's interest in adjudicating the case is diminished. *See Asahi*, 480 U.S. at 114. However, the only claim left in *Asahi* was an indemnity dispute between two foreign companies, the California plaintiff's claims having settled, so California had little stake in its resolution. *See id.* at 114–16. Here, by contrast, the claims concern the alleged destruction of a San Diego business.

The fifth factor (efficient judicial resolution) favors Plaintiffs most clearly. Count 4 turns on breaches of fiduciary duty by CardioCell's Stemedica-appointed directors, and Plaintiffs have brought claims against those directors in this action. (*See* SAC ¶¶ 441–456.) Litigating JZT Fund's and JZT Maker's roles in those breaches elsewhere would

require the same evidence and risk inconsistent results. The JZT Defendants note that their witnesses and documents are in China (Mot. 17:7–10), but the evidence of the underlying breaches is largely in San Diego. *See C&C Bldg. Automation Co., Inc. v. Dupler*, No. C 18-06692 WHA, 2019 WL 356942, at *5 (N.D. Cal. Jan. 29, 2019) ("Jurisdiction over plaintiffs' claims in California would provide an efficient resolution of the controversy, as plaintiff corporate employees, records, and the 259 units are in California.").

Efficient judicial resolution weighs even more heavily on Count 10 against JZT Maker. The Court previously declined to dismiss the RICO claims against Maynard Howe, Roger Howe, and Nikolai Tankovich (ECF No. 62 at 42:24–43:11), and a conspiracy claim against JZT Maker would turn on the same enterprise and the same predicate acts. *See C&C Bldg. Automation*, 2019 WL 356942, at *5 ("[T]he judicial system's interest in obtaining the most effective resolution of the controversy is met when multiple derivative lawsuits are efficiently handled in the proper forum.").

The sixth factor (convenient relief) is neutral. Plaintiffs' interest in convenient relief carries little weight, *see Freestream Aircraft*, 905 F.3d at 609, and Plaintiffs live abroad.

The seventh factor (existence of an alternative forum) favors JZT Fund and JZT Maker. Plaintiffs bear the burden of showing that no alternative forum is available, *Harris Rutsky*, 328 F.3d at 1133, and they offer nothing on the point beyond asserting that JZT has not identified one (Opp. 17:11–12).

In sum, three factors favor Plaintiffs, two favor JZT Fund and JZT Maker, and two are neutral. Neither JZT Fund nor JZT Maker has presented a compelling case that jurisdiction would be unreasonable. JZT Fund and JZT Maker are therefore subject to specific personal jurisdiction in this District. *Schwarzenegger*, 374 F.3d at 802 (explaining that the defendant bears the burden of presenting "a compelling case" that exercising jurisdiction would be unreasonable).

Both are subject to personal jurisdiction for Count 4. JZT Maker is additionally subject to personal jurisdiction for Count 10. The Court therefore **DENIES** the JZT

Defendants' Motion to the extent it seeks dismissal of those claims for lack of personal jurisdiction.

**5. Rule 4(k)(2)**

Plaintiffs argue in the alternative that Rule 4(k)(2) supplies jurisdiction over the JZT Defendants. (Opp. 17:14–25.) Rule 4(k)(2) operates as a federal long-arm statute, and Plaintiffs must establish three requirements to invoke it. First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process. Fed. R. Civ. P. 4(k)(2); *Pebble Beach*, 453 F.3d at 1159.

Because Rule 4(k)(2) reaches only claims arising under federal law, it cannot supply jurisdiction over Count 4, a state-law claim, against JZT Parent. The question is whether it reaches the federal claims over which the Court has found no specific jurisdiction in California: Count 9 against all three JZT Defendants, and Count 10 against JZT Fund and JZT Parent. The first requirement is satisfied because those claims arise under RICO. *See* 18 U.S.C. §§ 1962(c)–(d), 1964(c). The Court assumes that the second requirement is satisfied as well. A defendant that contends it cannot be sued in the forum state, but does not identify any other state in which suit could proceed, may be subject to jurisdiction under Rule 4(k)(2). *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007). The JZT Defendants identify no such state. (*See* Mot. 17:28–18:11; Reply 7:26–27.) Whether JZT Fund and JZT Maker, which are subject to jurisdiction in California on other claims, satisfy this requirement as to Counts 9 and 10 need not be decided, because the third requirement is not met.

The federal court's exercise of jurisdiction does not comport with due process. The due process analysis under Rule 4(k)(2) is the same as the specific-jurisdiction analysis above, except that the relevant forum is the United States as a whole rather than California. *Pebble Beach*, 453 F.3d at 1159; *Holland Am.*, 485 F.3d at 462. Plaintiffs identify no contacts between the JZT Defendants and the United States other than the California

contacts the Court has already considered; they rely on the Court's California analysis. (Opp. 17:24–25.) Expanding the forum to the nation therefore changes nothing. For the reasons explained above, Count 9 does not arise out of or relate to any JZT Defendant's contacts with the United States, and Count 10 does not arise out of or relate to JZT Fund's or JZT Parent's. *See supra* Section III.B.4.iv. Rule 4(k)(2) therefore does not supply jurisdiction over those claims.

In sum, Plaintiffs have made a prima facie showing of specific personal jurisdiction over JZT Fund as to Count 4 and over JZT Maker as to Counts 4 and 10. They have not made that showing over JZT Parent as to any claim, over JZT Fund as to Counts 9 and 10, or over JZT Maker as to Count 9. The Court next considers whether Plaintiffs should be permitted jurisdictional discovery before those claims are dismissed.

**6. Plaintiffs' Request For Jurisdictional Discovery**

Plaintiffs ask, in the alternative, that the Court defer ruling and permit "narrowly tailored jurisdictional discovery regarding JZT's forum contacts, alter egos, agent relationships, and bad acts directed at California." (Opp. 3:18–21, 25:24–27.) Whether to permit jurisdictional discovery is committed to the Court's discretion. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). Such discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted." *Yamashita*, 62 F.4th at 507 (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003)). But a court may deny a request that is "based on little more than a hunch that it might yield jurisdictionally relevant facts." *Boschetto*, 539 F.3d at 1020.

Plaintiffs have not made the necessary showing. Their request consists of two sentences listing four broad topics, asking for "narrowly tailored jurisdictional discovery regarding JZT's forum contacts, alter egos, agent relationships, and bad acts directed at California." (*See* Opp. 3:18–21, 25:24–27.) They do not identify the facts they expect discovery to reveal or explain how those facts would change the Court's jurisdictional conclusions. *See MMSPDC LLC v. Luis*, No. 3:26-CV-00040, 2026 WL 1735096, at *3 n.6 (D. Nev. June 15, 2026) (applying *Boschetto*, 539 F.3d at 1020, and denying

jurisdictional discovery where "Plaintiff has failed to show that discovery may provide relevant facts implicating personal jurisdiction.").

Nor does the record suggest that discovery on those topics would make a difference. The Court's alter ego ruling rests on factors Plaintiffs do not contest: the JZT Defendants maintain separate books and records, observe corporate formalities, and do not commingle funds or assets. *See supra* Section III.B.1. Plaintiffs offer no reason to believe discovery would show otherwise. The JZT Defendants specifically deny that JZT Fund routinely sends lawyers and auditors to San Diego (Peng Decl. ¶ 57, ECF No. 97-4), and Plaintiffs offer nothing to the contrary. And Plaintiffs identify no basis for believing that JZT Parent has California contacts beyond those already in the record. This is not a case in which the record is too undeveloped to resolve the jurisdictional questions. *Cf. Harris Rutsky*, 328 F.3d at 1135. The JZT Defendants have submitted detailed declarations and the governing agreements (ECF Nos. 97-2 to 97-4, 121-1 to 121-9), and Plaintiffs themselves obtained and filed the principal investment agreements (Leshkov Decl. ¶ 13 & Exs. 2–4, ECF Nos. 114-3, 114-5 to 114-7).

Accordingly, the Court **DENIES** Plaintiffs' request for jurisdictional discovery. The claims over which the Court lacks personal jurisdiction—all claims against JZT Parent, Counts 9 and 10 against JZT Fund, and Count 9 against JZT Maker—are **DISMISSED WITHOUT PREJUDICE**.

### C. Subject Matter Jurisdiction

The JZT Defendants do not dispute that Plaintiffs' RICO claims arise under federal law. *See* 28 U.S.C. § 1331; 18 U.S.C. § 1964. They argue only that if those claims are dismissed, no federal question will remain and the Court should decline supplemental jurisdiction over Count 4. (Mot. 19:7–14; Reply 10:21–25.) That argument fails. Although the Court dismisses the RICO claims against the JZT Defendants, the RICO claims against Maynard Howe, Roger Howe, and Nikolai Tankovich remain pending. (*See* ECF No. 62 at 42:24–43:11.) The Court therefore has not "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Federal question jurisdiction exists,

and the Court exercises supplemental jurisdiction over Count 4 under 28 U.S.C. § 1367(a) because Count 4 arises from the same alleged scheme as the RICO claims and so forms part of the same case or controversy. *See Tatung Co., Ltd. v. Hsu*, No. SACV 13-1743-DOC (ANx), 2015 WL 11089493, at *19 (C.D. Cal. Oct. 22, 2015) ("Because these claims are part of the 'same case or controversy' derived from a common nucleus of operative facts as the RICO claims . . . and two RICO claims survive, exercise of jurisdiction is proper." (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966))).

That the JZT Defendants are not parties to the remaining RICO claims does not change the result; supplemental jurisdiction extends to "claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). Diversity does not supply an alternative basis as to the JZT Defendants, who are citizens of China, because Plaintiffs are citizens of Russia. *See Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994).

## IV. RULE 12(b)(6)

Personal jurisdiction exists over JZT Fund as to Count 4 and over JZT Maker as to Counts 4 and 10. The Court therefore considers whether those claims are adequately pleaded. It does not reach the JZT Defendants' remaining merits arguments, which concern only claims dismissed for lack of personal jurisdiction. Their challenges to Count 9 and their argument that the RICO claims against JZT Parent are time-barred. (*See* Mot. 19:15–24:8, 24:13–21.)

### A. Count 4: Aiding and Abetting Breach of Fiduciary Duty (JZT Fund and JZT Maker)

Count 4 alleges that "JZT" aided and abetted breaches of fiduciary duty by CardioCell's Stemedica-appointed directors, causing Plaintiffs to roll their $15 million interest in Stemedica's other subsidiaries into CardioCell and to suffer harm distinct from that of other CardioCell shareholders. (SAC ¶¶ 458–461.)

As to JZT Fund, the SAC alleges that it conditioned its investment in Stemedica on Stemedica's gaining full control of its subsidiaries, including CardioCell, prompting the

directors to press Plaintiffs to consolidate. (*Id.* ¶¶ 206, 220–222.) Further, as the investor, JZT Fund allegedly declined to fund Stemedica's September 2019 payment to CardioCell under the Sublicense. (*Id.* ¶ 290.)

As to JZT Maker, the SAC alleges that it hosted one of the September 2018 Beijing meetings at which JZT representatives expressed interest in investing in CardioCell. (*Id.* ¶¶ 278–279.) The SAC also alleges that "JZT," on Stemedica's behalf, refused to provide the manufacturing know-how CardioCell needed to close a financing with WuXi. More specifically, the SAC represents that neither Stemedica nor JZT Maker would give up its "business secret," leading to the failure of the deal and CardioCell being unable raise the funds it needed. (*Id.* ¶¶ 357–359, 366.)

The JZT Defendants argue that Count 4 fails to plausibly allege either element of aiding and abetting, which they contend California law governs. (Mot. 24:23–25:2 & n.6.) First, they argue that the SAC pleads no facts showing that the JZT Defendants actually knew of the alleged wrongdoing, as opposed to harboring a "vague suspicion" of it. (*Id.* 25:3–10 (quoting *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1099 (N.D. Cal. 2013)).) Second, they argue that the SAC's allegations of substantial assistance are conclusory and do not explain how JZT Fund, a minority shareholder, could have directed Stemedica or its directors. (Mot. 25:11–19; Reply 10:16–17.)

**1. Whether California or Delaware Law Governs**

The JZT Defendants contend that California law governs because they are not CardioCell fiduciaries. (Mot. 24 n.6.) The Court need not decide which state's law governs. As another court in this circuit has recognized, "despite some differences in phrasing," there is no identifiable conflict between the two standards for aiding and abetting a fiduciary's breach of its duty of loyalty. *See AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 957 (N.D. Cal. 2014). Under California and Delaware law, to state a cause of action against a corporate entity for aiding and abetting a fiduciary's breach of his or her duty of loyalty, a plaintiff must allege (1) knowledge of the fiduciary's breach and (2) substantial participation in the breach. *See id.* (citing *Casey v. U.S. Bank Nat'l*

*Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001)). The two States describe the knowledge element somewhat differently, *see infra* Section IV.A.2, but both require that the defendant actually knew of the primary breach. Because the SAC does not satisfy that common requirement as to either JZT Fund or JZT Maker, any difference between the standards does not affect the result.

**2. Knowledge**

Under both Delaware and California law, the defendant must act with actual knowledge of the primary wrong it has assisted. *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) ("[T]o satisfy the knowledge prong, the defendant must have 'actual knowledge of the specific primary wrong the defendant substantially assisted.' " (quoting *Casey*, 127 Cal. App. 4th at 1145)); *Malpiede*, 780 A.2d at 1097 ("Knowing participation in a board's fiduciary breach requires that the third[-]party act with the knowledge that the conduct advocated or assisted constitutes such a breach.").

Under Delaware law, the defendant must also know that its own conduct regarding the breach was legally improper. *See In re Mindbody, Inc., S'holder Litig.*, 332 A.3d 349, 391 (Del. 2024) ("This requirement that the aider and abettor must know that its own conduct regarding the breach was legally improper is distinct from knowledge that the primary party's conduct was a breach."). Under California law, the defendant must have intended to facilitate the particular tort. *Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1145 (N.D. Cal. 2021) (emphasizing "A defendant can be held liable [for aiding and abetting] on the basis of acting in concert only if he or she knew that a tort had been, or was to be, committed, and acted with the intent of facilitating the commission of that tort" and an aiding and abetting claim "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act" (quoting *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (1988) and *Howard v. Superior Ct.*, 2 Cal. App. 4th 745, 749 (1992), *modified* (Feb. 10, 1992), respectively)).

Plaintiffs therefore plead knowledge for Count 4 only if the SAC alleges facts showing that JZT Fund and JZT Maker (1) knew of the CardioCell directors' fiduciary breach and (2) knew that their own conduct furthered that breach.[4]

**i. JZT Fund**

JZT Fund is not alleged to have known of any CardioCell director's breach. Neither its investment condition nor its later refusal to fund reveals anything about what CardioCell's directors told Plaintiffs or withheld from them. JZT Fund imposed the condition—that Stemedica gain full control of its subsidiaries, including CardioCell—before the directors' alleged nondisclosures, and those nondisclosures were the directors' own choice, not part of the condition. (SAC ¶¶ 220, 222.) *See Casey*, 127 Cal. App. 4th at 1145; *Malpiede*, 780 A.2d at 1097. The condition was an ordinary term of an arm's-length investment, and allegations of arm's-length bargaining do not support an inference of scienter. *Cf. In re MeadWestvaco S'holders Litig.*, 168 A.3d 675, 688 (Del. Ch. 2017) (concluding that allegations depicting genuine arm's-length bargaining, including terminated negotiations and the target's rejection of an at-market proposal before it obtained a premium, did not satisfy the stringent scienter standard).

The investment agreements on which Plaintiffs rely do not suggest otherwise. (*See* Opp. 25:12–18.) Even assuming the Court may consider them on this motion, the agreements' requirement that Stemedica terminate CardioCell's license or make an "alternative arrangement acceptable by [JZT] Fund" shows only that JZT Fund wanted the license resolved, and it contemplates a negotiated arrangement with CardioCell, not a breach of duty by CardioCell's directors. *Cf. MeadWestvaco*, 168 A.3d at 688.

Nor does Guo's role alleged in the SAC supply the missing knowledge. Plaintiffs name Guo among the CardioCell directors who owed Plaintiffs fiduciary duties (SAC ¶

---

[4] The Court's conclusion that the JZT Defendants could foresee harm in California does not answer that question. *See supra* Section III.B.4.iii. That conclusion rested in part on Parties' declarations, which the Court does not consider here, and the December 2019 notice on which it relied shows at most that JZT Maker's officers learned of Stemedica's alleged contract breach, not that any JZT Defendant knew CardioCell's directors were breaching their fiduciary duties.

458) and allege that JZT Fund engaged him as its agent to negotiate the Sublicense and other business deals with CardioCell and, "acting through Stemedica," placed him on CardioCell's board. (*Id.* ¶ 49.) But the SAC attributes the directors' breaches to the "Stemedica Directors" collectively and does not identify any breach Guo himself committed, let alone one of which JZT Fund could have learned through him. (*Id.* ¶ 459.) And even if Guo's knowledge were imputed to JZT Fund, *see* Restatement (Third) of Agency § 5.03, Count 4 would still fail, because, as explained below, nothing in the SAC suggests that JZT Fund knew its own conduct was legally improper or acted to facilitate any director's breach.

JZT Fund is also not alleged to have known their own conduct was legally improper (as required under Delaware law) or to have intended to facilitate the CardioCell directors' breach (as required under California law). *See In re Mindbody, Inc., S'holder Litig.*, 332 A.3d at 391; *Barrett*, 523 F. Supp. 3d at 1145. JZT Fund's alleged refusal to fund Stemedica's September 2019 payment to CardioCell shows at most that JZT Fund knew Stemedica owed CardioCell a payment under their contract and chose not to fund it. (SAC ¶ 290.) It does not show that JZT Fund knew CardioCell's directors were breaching their fiduciary duties, that JZT Fund knew its own refusal was legally improper, or that JZT Fund refused with the intention of facilitating CardioCell directors' breach. *See Casey*, 127 Cal. App. 4th at 1145–46 (knowledge requirement under California law); *Mindbody*, 332 A.3d at 391 (knowledge requirement under Delaware law); *Atl. NWI, LLC v. Carlyle Grp., Inc.*, No. 2021-0944-SG, 2022 Del. Ch. LEXIS 303, at *17–18 (Del. Ch. Oct. 28, 2022) (concluding that, although the plaintiff pleaded circumstantial facts supporting the defendant's knowledge of the contract rights at issue, it did not plead the heightened knowledge required to state a claim for aiding and abetting a breach of fiduciary duty under Delaware law).

Relatedly, though the SAC alleges that "JZT" collectively encouraged the directors not to disclose "Stemedica and JZT's plan . . . to deprive CardioCell of funds and stem cells and prevent the completion of the clinical trials and product commercialization" (SAC

¶ 460(v)), the Court finds that this allegation does not satisfy Rule 8. *See Gibson*, 165 F.4th at 1288 (disapproving pleadings that assert claims "against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" (citation omitted)); *Estate of Bock ex rel. Bock v. Cnty. of Sutter*, No. 2:11-CV-00536-MCE, 2012 WL 423704, at *6 (E.D. Cal. Feb. 8, 2012) (dismissing § 1983 claims where "Plaintiffs . . . directed most of their allegations at 'Defendants' generally, making it impossible to discern which Defendants were responsible for which actions"); *see also Casey*, 127 Cal. App. 4th at 1153 (holding that a general allegation of knowledge was "too generic to satisfy the requirement of actual knowledge of a specific primary violation").

**ii. JZT Maker**

JZT Maker is not alleged to have known of any CardioCell director's breach. Neither its September 2019 refusal to share manufacturing know-how nor its chief executive's seat on Stemedica's board reveals anything about what CardioCell's directors told Plaintiffs or withheld from them. The SAC alleges that JZT refused "on behalf of Stemedica," alongside the Howe brothers' own refusal. (SAC ¶¶ 358–359.) At most, that shows JZT Maker knew the Howe brothers were withholding the know-how too, not that it knew their refusal breached their duties as CardioCell directors. *See Casey*, 127 Cal. App. 4th at 1145; *Malpiede*, 780 A.2d at 1097. Likewise, Gao's dual role as JZT Maker's chief executive and a Stemedica director (SAC ¶ 310) suggests at most that he knew of Stemedica's business decisions, and knowing that Stemedica and CardioCell were at odds is not knowing that CardioCell's directors were breaching their fiduciary duties. *See Casey*, 127 Cal. App. 4th at 1147 (explaining that suspicion does not constitute actual knowledge); *cf. Atl. NWI*, 2022 Del. Ch. LEXIS 303, at *17–18 (constructive knowledge of contractual breaches does not automatically meet the heightened knowledge requirement for breach of fiduciary duty); *see also Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983) (finding there is "no dilution" of the duty of loyalty where a director holds "dual or multiple" fiduciary roles). And the statements at the September 6, 2018 meeting at JZT Maker's office are attributed to "JZT Parent's team," not to JZT Maker. (SAC ¶¶ 278–

279.) Moreover, the SAC does not allege that JZT Maker in particular engaged Guo, describing him only as an agent of "JZT" collectively. (*Id.* ¶¶ 49, 60.)

JZT Maker is also not alleged to have known that its own conduct furthered the directors' breach. The refusal reflects JZT Maker's view that the know-how was its "business secret" (SAC ¶ 359), which it had an obvious commercial reason to protect, not knowledge that the refusal was legally improper or a decision to refuse in order to facilitate the directors' breach. *See Casey*, 127 Cal. App. 4th at 1146; *Mindbody*, 332 A.3d at 391; *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (considering obvious alternative explanations for a defendant's conduct in assessing plausibility). The remaining allegations fail for the reasons discussed above as to JZT Fund. The SAC alleges that "JZT" directed Stemedica to prioritize stem cell deliveries to JZT and encouraged the directors not to answer investors' questions or disclose "Stemedica and JZT's plan" (SAC ¶¶ 287, 460(ii)–(iii), (v)), but it attributes that conduct to the JZT entities collectively, without facts about what JZT Maker knew or did. *See Gibson*, 165 F.4th at 1288.

* * *

Because the SAC does not plausibly allege that JZT Fund or JZT Maker had the requisite knowledge, Count 4 fails to state a claim against either, and the Court need not reach the JZT Defendants' argument that the SAC also fails to allege substantial assistance or participation (Mot. 25:11–24; Reply 10:16–20). *See AngioScore*, 70 F. Supp. 3d at 957.

**B. Count 10: Conspiracy to Violate RICO (JZT Maker)**

Count 10 arises under 18 U.S.C. § 1962(d). To state a claim under § 1962(d), Plaintiffs must allege (1) a conspiracy (2) with the purpose of violating § 1962(c). A violation of § 1962(c), in turn, requires that a conspirator have conducted or participated in the activities of an enterprise through a pattern of racketeering activity. *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993). Plaintiffs must also allege the requisite injury to "business or property" and that the injury was "by reason of" the predicate RICO violation. *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008).

In *Salinas*, the Supreme Court held that a RICO conspiracy defendant need not itself commit or agree to commit the two predicate acts required for a substantive offense under § 1962(c). 522 U.S. at 65. Rather, it is enough that the defendant knew about and agreed to facilitate the scheme. *Id.* Count 10 therefore does not fail, as the JZT Defendants contend, merely because the SAC does not allege that JZT Maker itself committed a substantive RICO violation. (*See* Mot. 24:9–12.)

Count 10 broadly alleges that JZT joined a racketeering enterprise that the Howe brothers ran through Stemedica, and that the enterprise's members agreed that one or more of them would commit at least two predicate acts as part of a scheme to defraud CardioCell's investors. (SAC ¶¶ 499–500, 517–519.) The enterprise allegedly sought to destroy CardioCell by depriving it of stem cells, manufacturing know-how, and funds. (*Id.* ¶ 510.) As the Court has previously described, the scheme sought to induce or coerce Plaintiffs' investment decisions, divert or encumber CardioCell's rights for Stemedica's benefit, and conceal the resulting harm. (ECF No. 62 at 28:27–29:2.)

Count 10 against JZT Maker therefore turns on whether the SAC plausibly alleges that JZT Maker knew of the racketeering scheme the Howe brothers allegedly conducted through Stemedica and agreed to facilitate it. *See Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993). Plaintiffs attempt to allege JZT Maker's knowledge and agreement in two ways: (1) through conclusory allegations that "JZT" joined the enterprise and knew its scope (SAC ¶¶ 366, 500, 520); and (2) through JZT Maker's own conduct, including its September 2019 refusal to share manufacturing know-how and its continued use of the cardiovascular rights (*id.* ¶¶ 278, 308, 310–311, 357–359). Neither suffices.

JZT Maker cannot be tied to the scheme through the SAC's general allegations about "JZT." Those allegations do not distinguish among the three JZT Defendants or identify anything JZT Maker in particular knew or agreed to, *see Gibson*, 165 F.4th at 1288; *Estate of Bock*, 2012 WL 423704, at *6, and they recite the elements of a conspiracy without supporting facts, *see Iqbal*, 556 U.S. at 678.

JZT Maker's own conduct does not suggest that it knew of the scheme, much less that it agreed to further it. Conduct "just as much in line with a wide swath of rational and competitive business strategy" does not suggest an agreement absent some "further circumstance pointing toward a meeting of the minds." *Twombly*, 550 U.S. at 554, 557; *see Eclectic Props.*, 751 F.3d at 996–97 (explaining that allegations consistent with both liability and an obvious lawful alternative explanation do not state a plausible claim). Each act the SAC attributes to JZT Maker has such an explanation, and none comes with facts suggesting that JZT Maker knew of the Howe brothers' fraud on Plaintiffs.

First, JZT Maker's hosting of a September 2018 Beijing meeting at which JZT Parent's team expressed interest in CardioCell (SAC ¶¶ 278–279) reflects ordinary business interest, not knowledge of what the Howe brothers told Plaintiffs. *See Twombly*, 550 U.S. at 554; *Baumer*, 8 F.3d at 1346 (requiring that a RICO conspirator be aware of the essential nature and scope of the enterprise and intend to participate in it).

Second, JZT Maker's September 2019 refusal to share manufacturing know-how, though made "on behalf of Stemedica," protected what JZT Maker regarded as its own "business secret" (SAC ¶ 359), which was an obvious independent reason to refuse. *See Iqbal*, 556 U.S. at 682 (declining to infer wrongdoing given an "obvious alternative explanation"); *Eclectic Props.*, 751 F.3d at 996–97 (affirming dismissal where the defendants' conduct was consistent with an obvious lawful explanation).

Third, JZT Maker's continued use of the cardiovascular rights after Stemedica breached the Sublicense (SAC ¶ 308) makes it at most a beneficiary of the alleged diversion of CardioCell's rights, and benefiting from a transaction is not agreeing to the fraud behind it. *See Salinas*, 522 U.S. at 65 (conspirator must "adopt the goal of furthering or facilitating the criminal endeavor"); *Baumer*, 8 F.3d at 1346 (requiring intent to participate in the enterprise).

Fourth, Gao's May 2020 denial of that use was a self-interested response to CardioCell's cease-and-desist demand, made well after Plaintiffs' investment decisions (SAC ¶¶ 238–240, 284, 309–311), and his seat on Stemedica's board (*id.* ¶ 310) suggests

knowledge of Stemedica's business, not of the Howe brothers' fraud. *See Twombly*, 550 U.S. at 557; *Baumer*, 8 F.3d at 1346 (requiring awareness of the enterprise's essential nature and scope).

Because the SAC does not plausibly allege that JZT Maker knew of the scheme or agreed to further it, Count 10 fails to state a claim against JZT Maker. *See Iqbal*, 556 U.S. at 678 (disregarding "[t]hreadbare recitals" supported by "mere conclusory statements"); *Howard*, 208 F.3d at 751 (requiring facts showing an agreement to violate RICO).[5]

**C. Leave to Amend**

Leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). This is the Court's first ruling on the sufficiency of Plaintiffs' allegations against the JZT Defendants, and the Court cannot say that amendment would be futile. The Court therefore grants leave to amend Count 4 against JZT Fund and JZT Maker and Count 10 against JZT Maker. Any amended pleading should identify which JZT Defendant engaged in which conduct and allege facts, not conclusions, showing that the defendant actually knew of the breach it is alleged to have assisted or agreed to facilitate the scheme it is alleged to have joined.

Any amended Count 4 should also identify the breach the defendant is alleged to have assisted and explain how that breach injured Plaintiffs directly rather than through their interest in CardioCell. (*See* ECF No. 124 at 19:21–21:26 (holding that harm flowing from injury to CardioCell supports only a derivative claim, while harm from being induced to surrender holdings outside CardioCell is direct).) And to the extent the alleged assistance consists of confirming or furthering a director's misrepresentations, it must be

[5] Nor is any of JZT Maker's conduct alleged to be a predicate act. The SAC's twenty predicate acts include neither the September 2019 refusal nor the May 2020 response (SAC ¶ 512), and Plaintiffs characterize those communications as wires "implementing and concealing the scheme" only in their opposition (Opp. 23:5–10), which the Court may not consider, *see Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). In any event, wire fraud requires a specific intent to defraud, *see Eclectic Props.*, 751 F.3d at 997, which the SAC does not allege for the reasons above.

pleaded with particularity. *See* Fed. R. Civ. P. 9(b); (*cf.* ECF No. 124 at 10:19–11:4 (applying Rule 9(b) to fiduciary-breach allegations that rest on misrepresentations).)

## V. CONCLUSION

For the reasons above, the Court **GRANTS** the JZT Defendants' Motion to Dismiss (ECF No. 97) as follows:

1. The Court lacks personal jurisdiction over JZT Parent as to all claims, over JZT Fund as to Counts 9 and 10, and over JZT Maker as to Count 9. Those claims are **DISMISSED WITHOUT PREJUDICE**.

2. Count 4 against JZT Fund and JZT Maker and Count 10 against JZT Maker are **DISMISSED WITH LEAVE TO AMEND** for failure to state a claim.

3. Plaintiffs' request for jurisdictional discovery is **DENIED WITHOUT PREJUDICE**.

If Plaintiffs choose to file a Third Amended Complaint addressing the deficiencies identified in this Order, they must do so **<u>no later than December 14, 2026</u>**. The amended pleading must be complete in itself without reference to the SAC. *See* S.D. Cal. Civ. R. 15.1(a).

**IT IS SO ORDERED.**

**DATED: November 23, 2026**

Cynthia Bashant

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**